UNITED STATES SPECIAL OPERATIONS COMMAND
7701 TAMPA POINT BLVD.
MACDILL AIR FORCE BASE, FLORIDA 33621-5323

# CONTRACTING OFFICER'S STATEMENT

Directorate of Procurement, Procurement Division, SOAL-KR

**Protest B-310018 to the General Accounting Office by
The Protective Group, Inc.,
Concerning Solicitation H92222-07-R-0011,
Body Armor Load Carriage (BALCS)
Family of Ballistic Plates**

## I. INTRODUCTION

The Protective Group, Inc., (hereafter referred to as TPG) has submitted to the General Accounting Office (GAO) a Protest (Tab 18), dated August 15, 2007, against the actions of the Headquarters, United States Special Operations Command (USSOCOM) with respect to Solicitation H92222-07-R-0011, dated 1 August 2006, (Tab 9) for the Body Armor Load Carriage System (BALCS) Family of Ballistic Plates (hereafter referred to as BALCS plates).

## II. BACKGROUND

A. The initial Request for Proposal (RFP) H92222-06-R-0023 for BALCS plates was issued on 1 August 2006 with the proposals due on 6 October 2006. (Tab 3) The solicitation required offerors to submit with their proposals Product Demonstration Models (PDMs), as well as, their independent ballistic test data. Of the four offerors, only three offerors submitted complete proposals: ArmorWorks; Ceradyne, Inc.; and Dynamic Defense Materials, LLC. (Tab 19) The results of the evaluation indicated all offerors failed portions of the Go/No-Go criteria. Consequently, the solicitation was cancelled on January 11, 2007. (Tab 5)

B. Prior to issuing a new RFP, the Contract Specialist sought recommendations from the USSOCOM Small and Disadvantaged Business Utilization Office (SADBU) in accordance with the Small Business Act (SBA). The Contract Specialist appropriately coordinated DD Form 2579 (Tabs 6 and 19), Small Business Coordination Record, on 30 January 2007 with the USSOCOM Small Business Specialist. The presolicitation synopsis was issued on 9 February 2007. (Tab 7) An Industry Day Conference was held March 1-2, 2007, at the Soldiers System Command, Natick, Massachusetts. March 1st began with a briefing by the Special Operations Forces Personal Equipment Advanced Requirement Program Manager (PM) and other team members, followed by one-on-one

meetings between the Government and individual companies. Ten companies attended the first day of the Industry Day conference. Specifically, TPG, was in attendance on March 1st and also in attendance for their scheduled one-on-one at 1030 on March 2nd. Based on the input from Industry, the Government made revisions to their requirement documents. On 9 May 2007, USSOCOM issued a new solicitation, RFP H92222-07-R-0011 (Tab 9), for BALCS plates. Eight companies submitted the required Notice of Intent (NOI) to submit a proposal (hereafter referred to NOI contractors). Several NOI contractors submitted a request for an extension, ranging from two weeks to sixty days. On 1 June 2007, the Contracting Office notified all NOI contractors of a 60-day extension to the proposal closing date from 8 June 2007 to 7 August 2007. In accordance with FAR 15.206(f), this verbal direction was formalized in Amendment 0001 dated 15 June 2007, (Tab 14) which also modified the Performance Specification (Classified as "FOUO") to incorporate velocity ranges for shatter gap testing of the low visibility configuration as well as, correct numbering of paragraphs.

C. A letter dated August 1, 2007 from TPG was received via email and fax on August 2, 2007, after business hours (Tab 16) and received by the contracting office on Friday, 3 August 2007. The Contracting Officer was in the process of developing and finalizing the Government response to TPG when an Agency level protest, dated 6 August 2007 (Monday), (Tab 17) was received. The Agency protest was received by the Contracting Officer via FedEx on the 7th of August, the closing date for the solicitation. While in the process of investigating the allegations of the agency protest, TPG filed a Government Accountability Office (GAO) level protest dated 14 August 2007, received by GAO on 15 August 2007. (Tab 18) This protest was received by the Contracting Officer on 16 August 2007.

## III PROTESTOR'S ALLEGATIONS AND GOVERNMENT'S RESPONSE

**ALLEGATION 1: Violation of the "Rule of Two"** (Tab 18, page 5) in that TPG claimed USSOCOM did not follow the "Rule of Two" in FAR 19.502-2(b), which requires an agency to totally or partially set-aside a procurement for purposes of competition by small business concerns when there is a reasonable expectation that offers at reasonable prices will be submitted by at least two or more responsible small business concerns.

**AGENCY RESPONSE:** The United States Special Operations Command complied with the Small Business Act, specifically adhering to the "Rule of Two," reference FAR 19.502-2(b)(1), which states, "The contracting officer shall set aside … for small business participation when there is a reasonable expectation that (1) offers will be obtained from at least two responsible small business concerns …" Two facts contributed to USSOCOM not setting aside the procurement for small business. First, the initial full and open competition for BALCS plates under RFP H92222-06-R-0023, yielded three complete proposals of which two were from small businesses, but all three of those offerors failed portions of the ballistic plate Go/No-Go evaluation. (Tab 19 Declaration of Verdetta J. Weaver) Due to the lack of acceptable responses, USSOCOM was forced to cancel the solicitation. (Tab 5) Secondly, we considered the current state

of the ballistic plate industry and noted that since 11 September 2001, many small businesses within industry, to include the incumbent, had become large businesses in recent years. The Contract Specialist appropriately coordinated DD Form 2579 (Tab 6), Small Business Coordination Record, on 30 January 2007 with the USSOCOM Small Business Specialist, who concurred with the recommendation not to set aside the procurement for small business in order to meet the Special Operations Forces (SOF) unique requirements. (TAB 19)

**Summary:** The United States Special Operations Command complied with the Small Business Act, adhering to the "Rule of Two," and coordinated the procurement acquisition strategy for full and open competition with the USSOCOM Small Business Specialist. USSOCOM appropriately issued the solicitation for SOF unique family of ballistic plates using full and open competition procedures based on the cancellation of the initial procurement due to lack of acceptable proposals, along with the awareness of the growth of small businesses in the ballistic plate industry causing many small businesses to become large business. Accordingly, this protest ground should be denied.

**ALLEGATION 2: Undue Restrictions on Competition** (Tab 18, page 6)

**ALLEGATION 2.a.:** Separate BALCS Production Facility – TPG asserts that SOCOM has placed an undue burden on competition by indicating that the manufacture of the BALCS ballistic plates must be performed in a facility other than one used by the contractor to manufacture other type of body armor plates.

**Agency Response:** USSOCOM does not require the manufacture of BALCS plates in a facility other than one used by the contractor to manufacture other type of body armor plates as alleged by the protestor. Solicitation H92222-07-R-0011 speaks for itself in identifying all contractual requirements for BALCS plates. There is no record throughout the preproposal process or among the multiple Federal Business Opportunity (FedBizOpps) notices to industry, as well as, the Industry Day Conference briefing (Tab 8), which would indicate a requirement as TPG alleges. *See also*, Declaration from Verdetta Weaver, Contract Specialist. (Tab 19) This protest ground should be denied.

**ALLEGATION 2.b.:** "Shatter Gap" Testing – The Solicitation also imposes an unduly restrictive requirement for the BALCS ballistic plates by requiring "Shatter Gap" testing, a requirement which is not found in any other DOD body armor solicitation or contract.

**Agency Response:** The USSOCOM requirement for "Shatter Gap" testing (Tabs 10 and 11) is a necessary requirement. USSOCOM is specifically chartered to provide "SOF peculiar" items to its operators to meet mission requirements, which cannot be met by service common solutions. The protestor's own statement, "…is not found in any other DOD body armor solicitation or contract" is an admission of the uniqueness of SOF requirements compared to the big services. Specifically, "Shatter Gap" is a well known industry phenomenon that occurs when a hardened (brittle) steel core penetrator impacts and defeats a hard faced material such as ceramic or steel armor plates at velocities

significantly lower than what the armor is designed to defeat. If Shatter Gap is present, it usually occurs at velocities several hundred ft/sec below the velocity the armor was designed to defeat. Velocities several hundred ft/sec below muzzle velocity represent stand-off distances of several hundred meters which are very common on the battlefield. USSOCOM evaluators must determine whether the materials and plates submitted for solicitation H92222-07-R-0011 consist of materials that are subject to Shatter Gap. If Shatter Gap is present, this phenomenon could leave our SOF soldiers unacceptably vulnerable on the battlefield. *See* Declaration of Richard W. Elder (Tab 20). This protest ground should be denied.

**ALLEGATION 2.c. Excessive Number of Ballistic Plate Tests** (Tab 18, page 7) – The Solicitation is further materially defective because it calls for an excessive number of ballistic tests, involving a minimum number of 614 plates. As each plate costs approximately $500, this will require a potential offeror to expend more than $300,000 in material costs simply in order to be able to compete. As TPG noted in its August 1 letter, not only is this a significant economic burden for small business concerns, it is fundamentally unfair and creates a markedly unlevel playing field because presumably the incumbent will not have to incur those costs because it enjoys the benefit of all prior testing data.

This requirement is doubly unfair to TPG which expended more than $500,000 in costs to compete for the subsequently cancelled 2006 BALCS solicitation. Here again, TPG must expend another substantial sum in order to compete for an award where the incumbent alone enjoys every procurement advantage.

**Agency Response:** The ballistic tests and plates required by the RFP are appropriate and adequate to ensure proper evaluation of an offeror's proposal. The RFP identifies three different plate technologies in a variety of cuts. The three configurations are significantly different in thickness, areal density, volume, and in ballistic requirements. Furthermore, the various cuts in each configuration are significantly different, resulting in a reduced strike face area and volume of ballistic material. These differences create a need for offerors to perform ballistic testing and provide ballistic test results on each configuration as well as on each cut. *See* Declaration of Richard W. Elder (Tab 20)

The Government cannot possibly award a contract for a specific configuration without viewing ballistic data in sufficient quantity to establish trends in results. For example, the environmental condition test data requested in solicitation H92222-07-R-0011 represents conditions that are commonly encountered on the battlefield such as hot temperatures, cold temperatures, saltwater immersion, chlorine water (training), motor oil exposure, gasoline exposure, breakfree (multi-purpose lubricant) exposure, and durability (drop test). USSOCOM evaluators must determine the extent to which the proposed materials and plates will not degrade in ballistic performance when exposed to these common battlefield environments. *See* Declaration of Richard W. Elder (Tab 20)

Since offerors are not required to submit a proposal for all configurations and the Government has clearly stated that separate awards may be made for each configuration, the number of PDMs and the amount of ballistic test data submitted with a proposal are reliant on the independent business decision of each offeror in determining the number of configurations for which it will submit a proposal. The protestor's allegation of,

"…expend[ing] more than $500,000 in costs to compete for the subsequently-cancelled 2006 BALCS solicitation" is very surprising since it did not submit an offer in response to the 2006 BALCS solicitation. TPG was not among the offerors that submitted a proposal under solicitation H92222-06-R-0023, which was cancelled (reference paragraph II.A. above).

**Summary:** The ballistic tests and plates required by the RFP are appropriate and adequate to ensure proper evaluation of an offeror's proposal for the SOF unique items. USSOCOM procures specially designed and configured personal protection equipment for our operators to meet the various mission profiles in all environmental extremes while maintaining the necessary agility, mobility, and range of motion required to meet SOF mission standards (Ref Tab 13, Testimony by Col. Noonan to Congress). Because of this mission, SOCOM often places special Advanced Requirements on similar battle gear that is later adopted and/or purchased by other services. The BALCS solicitation incorporates a different requirement for each of the plate configurations, therefore requiring an evaluation of the ballistic results on each of these plates. This is an irrefutable requirement for the selection of the best value proposal. With so many soldiers' lives at risk, the technical evaluation team cannot simply make an educated guess. They need factual data which can only be obtained by the announced level of testing. This protest ground should be denied.

**ALLEGATION 3: Failure to Incorporate Questions and Answers** (Tab 18, pages 7 and 8) Questions and Answers generated during the procurement process to date have in most cases been posted on the website, but have not been formally incorporated into the Solicitation via amendment. As TPG warned the Agency in its August 6 protest, if the Solicitation is not amended to incorporate the Q/As , this will leave the Solicitation and resultant contract dangerously susceptible to potential differing interpretations of several ambiguous but important requirements. For example, Question 47 asked whether offerors would be required to prepare and submit with their proposals certain BALCS armor specific first article, lot test, and quality assurance plans, which only the incumbent presumably has previously prepared. These plans are not required by sections L and M, but SOCOM indicated nonetheless in its answer that these plans were required to be included with and discussed in the proposals. TPG feels their company as well as other potential offerors would need at least 30 days to prepare the specific plans. Accordingly, the procurement must be reopened and the proposal deadline extended. Also, TPG has observed and informed the Agency that Q/As 38-40 have never been published even on the procurement website.

**Agency Response:** In accordance with FAR 15.206(a), USSOCOM has appropriately amended the solicitation when there has been a change in its requirements or terms and conditions (Amendment 0001, TAB 14).

Questions and answers that did not change or affect the requirements or terms and conditions of the solicitation were not required to be incorporated into an amendment. Questions and answers are published on the FedBizOpps website to ensure all potential offerors are provided the same information in regards to the RFP requirements. Specifically, question 47a, concerning the First Article Test (FAT) Plan, SPEAR Unique

Quality Assurance Plan, and the Production Ballistic Lot Test Plan, was published in FBO on 15 June 2007. The answer to question 47a simply reiterated the solicitation requirements, stating that, "A formal complete Quality Assurance Plan is required as part of an offerors proposal. In accordance with the performance specification and requirements matrix, vendors are required to thoroughly discuss their FAT plan and Ballistic Lot Test (BLT) plans. Formal complete FAT and BLT plans shall be submitted in accordance with CDRL A006 and A007 . . ." (Tab 12 and Tab 15) Although the Protestor states it would need 30 days to prepare such plans, at the time the Answer to Question 47a was posted, offerors had 53 days until the due date for proposals.

The Agency acknowledges the unpublished answers to questions 38-40. Since Questions 38-40 were received between 17-24 April 2007, just a few weeks prior to release of the formal solicitation on 9 May 2007, it was determined that responding to questions relating to the DRAFT RFP after release of the formal RFP had no value. (TAB 19, Declaration of Verdetta J. Weaver)

**Summary:** USSOCOM appropriately amended the solicitation when there was a change in its requirements or terms and conditions (Amendment 0001, TAB 14) in accordance with FAR 15.206(a). Question and Answer 47a, was consistent with the solicitation and did not need to be incorporated into an amendment. Also, potential offerors had fifty three (53) days were from date of publication of Question and Answer 47a until the proposal closing date, which is well above the 30 days deemed adequate by TPG to complete the required documentation. Questions 38-40 related to a DRAFT RFP and did not require a response from the Government as they were overcome by events, namely the issuance of the formal solicitation. This protest ground should be denied.

**IV. CONCLUSION:** All of TPG's protest grounds should be denied. The United States Special Operations Command complied with the Rule of Two; did not require the manufacture of BALCS plates in a facility other than one used by the contractor to manufacture other type of body armor plates as alleged by the protestor; acted reasonably in requiring Shatter Gap testing; required a reasonable number of ballistic tests and plates to conduct a meaningful source selection; and followed FAR Part 15.206 in issuing solicitation amendments.

Susan M Griffin
SUSAN M. GRIFFIN 12 Sep 07
Contracting Officer

DEPARTMENT OF THE ARMY
UNITED STATES ARMY LEGAL SERVICES AGENCY
901 NORTH STUART STREET
ARLINGTON, VA 22203-1837
(703) 696-2843; DSN 426; Fax ext. 1537
E-mail: christine.choi@hqda.army.mil

REPLY TO
ATTENTION OF

September 14, 2007

Contract and Fiscal Law Division

Mr. Peter Verchinski, Esquire
Office of the General Counsel
U.S. Government Accountability Office
441 G. Street, NW
Washington, D.C. 20548

Subject: Protest of The Protective Group, Inc., B-310018

Dear Mr. Verchinski:

Enclosed please find the Agency's administrative report responding to the subject protest. Pursuant to 4 Code of Federal Regulations (C.F.R.) § 21.3(c), a copy of the report has been sent to Mr. Richard Moorhouse, Esq., counsel to The Protective Group, Inc. (hereafter "Protester" or "The Protective Group"). This legal memorandum does not contain protected material. The accompanying volume of documents, however, includes two tabs (tabs 10 and 11) containing documents marked "For Official Use Only," and one tab (tab 6) which includes an item of source selection sensitive information. The documents at tabs 10 and 11 have previously been provided to the Protester and are not included in the Protester's volume of documents, as indicated in the index. Further, the source selection sensitive information has been redacted from tab 6 of Protester's volume, as indicated in the index, because a protective order has not been issued in connection with Protest No. B-310018. Any comments by the Protester regarding our report should be sent directly to your office with a copy forwarded to:

Ms. Christine M. Choi
U.S. Army Litigation Center
Contract and Fiscal Law Division, Team I
ATTN: JALS-KFLD
901 North Stuart Street, Suite 500
Arlington, Virginia 22203-1837

## FACTUAL SUMMARY

In a June 6, 2007 statement to the House Armed Services Committee, the Program Executive Officer for Special Operations Forces Warrior Programs provided, in part, the following information regarding the U.S. Special Operations Command ("USSOCOM") Body Armor requirement and material solution:

> The USSOCOM ballistic protection solution is known as the [Special Operations Forces] SOF Personnel Equipment Advanced Requirements (SPEAR) body armor system. The USSOCOM requirement is to provide a level of protection to defeat 2-strike Armor Piercing Munitions. We do this by rapidly fielding successive lightweight and advanced SOF-unique components of clothing and individual equipment while integrating them into a tailorable system.
>
> This tailorable system is called the SPEAR Body Armor/Load Carriage System, or BALCS. It is a family of integrated armor and load carriage systems which provides SOF operators with the modularity required to meet the various mission profiles in all environmental extremes. . . . .
>
> Based on the technology at the time, our initial plate fielded in 1999 was capable of stopping only one strike of Armor Piercing Munitions due to weight constraints. Through Spiral Development, SOF was able to field an armor plate meeting the two strike requirement in 2002. We have been fielding this plate ever since. In addition to the increased ballistic capability, several other BALCS sub-systems have been modified to better support current operations in spiral development through feedback from SOF operators.
>
> . . .
>
> The SPEAR Body Armor system has proven an effective ballistic system in SOF combat operations throughout the world since 2002. There are many documented cases in which the SPEAR body armor system has saved the lives of SOF operators in combat. These results have produced an enormous confidence in SOF operators with regard to their ballistic protection.

> With the assistance of the National Assessment Group and the Army Research Lab, USSOCOM has initiated a threat evaluation of current, emerging, and future battlefield threats to the SOF operators to ensure we are vigilant about their protection. We will continue to test our SPEAR armor system against prioritized battlefield threats . . . .

(AR, tab 13)

USSOCOM issued Solicitation No. H92222-06-R-0023 (the "0023 Solicitation"), on August 1, 2006, with proposals due on October 6, 2006. (AR, tab 1, p. 1; and tab 3) The 0023 Solicitation was for a five-year, indefinite delivery/indefinite quantity type of contract under which firm fixed-price delivery orders would be issued for the Body Armor Load Carriage System (BALCS) family of ballistic plates, including three different plate technologies and a variety of different cuts. The 0023 Solicitation required offerors to submit Product Demonstration Models (PDMs) as well as preliminary ballistic test data as part of their proposals. (AR, tab 3, pp. 101-102)

Four offerors, three of which were small businesses, submitted proposals in response to the 0023 Solicitation. (AR, tab 19) One of the small business offerors submitted an incomplete proposal and was not evaluated. (AR, tab 19) The Protester did not submit a proposal in response to the 0023 Solicitation. (AR, tab 1, p. 5) With respect to the three remaining offerors, all three failed portions of the Go/No-Go criteria set forth in Attachment 2 to the 0023 Solicitation. (AR, tabs 4-5) Consequently, USSOCOM decided on January 11, 2007 to cancel the 0023 Solicitation. (AR tab 5 and tab 19)

Prior to issuing a new solicitation for the BALCS family of ballistic plates, the Contract Specialist coordinated with the USSOCOM Small Business Specialist. The Contract Specialist prepared the DD Form 2579, "Small Business Coordination Record," and recommended that the upcoming solicitation for the BALCS family of ballistic plates be competed using full and open

competition. (AR, tab 6 and tab 19) The Contract Specialist made this recommendation based on the fact that the prior 0023 Solicitation had been cancelled due to the lack of acceptable proposals, and also considered the fact that the increase in demand for ballistic plates since September 11, 2001 had caused many small businesses within the body armor industry to become large businesses. (AR, tab 6 and tab 19) The Contract Specialist believed that "[b]y leaving the playing field open to all business sizes, the risk of cancelling another solicitation would be mitigated and this critical life savings [sic] item could be put into the hands that need it most, our war fighter, in a timely manner." (AR, tab 19) The Small Business Specialist, who in the past had sometimes disagreed with the Contract Specialist's recommendation to use full and open competition, concurred in this instance that the new solicitation for the BALCS family of ballistic plates should be procured under full and open competition rather than being set aside for small businesses. (AR, tab 6 and tab 19)

USSOCOM posted a pre-solicitation synopsis for the new procurement of the BALCS family of ballistic plates on February 9, 2007. (AR, tab 7) An Industry Day conference was held March 1 – 2, 2007, at the Soldiers System Command, Natick, Massachusetts. (AR, tab 1, p. 1; tab 19) The first day began with a briefing by the SPEAR Program Manager and other team members, followed by one-on-one meetings between the Government and individual companies. The Protester was in attendance on March 1, and also in attendance for its scheduled one-on-one with Government representatives on March 2nd. (AR, tab 1, pp. 1-2)

USSOCOM provided a briefing entitled, "SOF Family of Plates Solicitation" during the Industry Day conference. (AR, tab 8) None of the briefing slides indicate a requirement that the BALCS ballistic plates must be manufactured in a facility other than the one used by the contractor to manufacture other types of body armor plates. In addition, the Contract Specialist,

who was responsible for communications between USSOCOM and potential offerors with respect to the 0023 Solicitation and the new solicitation, states that during the Industry Day conference, she did not indicate to the participants that the BALCS ballistic plates must be manufactured in a facility other than the one used by the contractor to manufacture other types of body armor plates, nor did she hear any of the other Government representatives present at Industry Day indicate such a requirement. (AR, tab 19)

USSOCOM issued Solicitation No. H92222-07-R-0011 (the "0011 Solicitation") on May 9, 2007 for the BALCS family of ballistic plates. (AR, tab 9) The 0011 Solicitation, like the previous 0023 Solicitation, was for a five-year, indefinite delivery/indefinite quantity type of contract under which firm fixed-price delivery orders would be issued.

The 0011 Solicitation required all firms planning to submit a proposal to submit a "notice of intent" ("NOI") to the Contract Specialist by May 23, 2007. (AR, tab 9, p. 91) Eight companies submitted a NOI. (AR, tab 1, p. 2) Several of the companies that submitted a NOI requested an extension of the June 8, 2007 due date for proposals, ranging from two weeks to 60 days. (AR, tab 1, p. 2) As a result, on June 1, 2007, the Contracting Officer notified all companies that had submitted a NOI that the due date for proposals would be extended to August 7, 2007, and Amendment No. 0001 was issued on June 8, 2007 providing for an extension of the due date for proposals until August 7, 2007. (AR, tab 1, p. 2; tab 14)

The 0011 Solicitation, like the prior 0023 Solicitation, required offerors to submit PDMs and preliminary ballistic data as part of their proposals. (AR, tab 9, pp. 92-93) Regarding the preliminary ballistic data, the 0011 Solicitation stated in Section L-3.1.1(2) that "[p]rior ballistic test data will give the Government reasonable indication that any system submitted with this offer, when ballistically tested by the Government (both conditioned and unconditioned), will

meet the ballistic requirements shown in the Performance Specification section 3.1" (AR, tab 9, p. 93)

Included among the ballistic data requirements in the 0011 Solicitation was a requirement for "shatter gap" testing." Mr. Richard Elder, Assistant Program Manager in support of the Program Manager for Special Operations Forces Survival Systems, explained the shatter gap phenomenon as follows:

> Shatter gap is a ballistic phenomenon well known to the body armor industry which occurs when hardened (brittle) steel core penetrators impact and defeat hard faced materials such as ceramics and steel armor plates at velocities significantly lower than the armor is designed to defeat. This occurs when the impact energy of the lower projectile velocity does not have enough force to fracture the projectile core as it would when fired at a higher velocity. The projectile core remains relatively intact and is able to penetrate the hardened armor face and backing material. If shatter gap is present, it usually occurs at velocities several hundred ft/sec below the velocity the armor was designed to defeat. Several hundred ft/sec below the velocity the armor was designed to defeat translates to a stand off distance of several hundred meters, which is a common scenario on the battlefield. USSOCOM technical evaluators must determine whether the plates submitted for solicitation H92222-07-R-0011 consist of materials that exhibit shatter gap characteristics. If shatter gap is present in the technologies submitted under the above referenced solicitation, this could potentially leave SOF operators vulnerable in a common battlefield scenario, which is unacceptable. Vulnerability in body armor means potential death.

(AR, tab 20, p. 1)

The 0011 Solicitation required ballistic data from the three different plate technologies in a variety of cuts. Specifically, data was required for the BALCS Baseline Configuration, the Tactical Stand Alone Ballistic Configuration in the SPEAR, Swimmer and Modular Side Armor Protection ("MSAP") cuts, and the Low Visibility Ballistic Configuration in the SPEAR, Swimmer and MSAP cuts. (AR, tab 10, pp. 7-8) As explained by Mr. Elder:

> The three configurations are significantly different in thickness, areal density, volume, and in ballistic requirements. Furthermore, the various cuts in each configuration are significantly different, resulting in a reduced strike face area and

> volume of ballistic material. Because the various cuts in each configuration are significantly different it is unknown whether offerors will submit the same technical design for each cut. Based on the above information, USSOCOM technical evaluators require ballistic data for each configuration as well as each cut.

(AR, tab 20, p. 3)

The 0011 Solicitation required ballistic data for each configuration and each cut to be generated under various environmental and temperature conditions which represent conditions commonly encountered on the battlefield, such as hot temperatures, cold temperatures, saltwater immersion, chlorine water, motor oil exposure, gasoline exposure, breakfree (multi-purpose lubricant) exposure, and durability (drop test). (AR, tab 10, pp. 13 – 18; tab 20, p. 2) As Mr. Elder explains, "[i]f ballistic degradation is present in the technologies submitted under [the 0011 Solicitation] when exposed to common battlefield environments[,] this could potentially leave SOF operators vulnerable in a common battlefield scenario, which is unacceptable . . . vulnerability in body armor means potential death." (AR, tab 20, p. 2)

In total, the requirement for ballistic data across the three technologies and associated cuts requires data from at least 614 plates. (AR, tab 10, pp. 7 – 8) At first glance, this number appears somewhat formidable; however, based on the fact that information is needed for a variety of configurations and cuts across multiple environmental and temperature scenarios, the number is actually quite reasonable. Mr. Elder explains as follows:

> [A] reasonable amount of ballistic data is required to make a technical evaluation. The data must be sufficient enough to establish any negative or positive trends in the performance of the armor samples submitted. To date, the common practice for USSOCOM is that body armor plates statistically demonstrate a lower bound probability of partial penetration of at least 0.9 with an 80% confidence level. This is achieved by testing 16 plates and attaining 16 partial penetrations. Based on the numerous requirements outlined above, and the numerous configurations and cuts, 16 plates for each condition and threat to achieve this desired confidence level was thought to be unreasonable. The amount of data required for this evaluation was well below the desired reliability and confidence levels but sufficient enough

> to make a technical evaluation. For example, 6 plates are the minimum required test data against the APM2 projectile in the environmental conditions outlined above. This data results in a lower bound probability of partial penetration of 0.75 with an 80% confidence level. Against lesser threats at ambient, the minimum required test data is as low as 4 plates. This results in a lower bound probability of partial penetration of 0.65 with an 80% confidence level; again well below the desired reliability and confidence level but sufficient enough to make a technical evaluation. The minimum required test data for the shatter gap requirement is 6 plates in four different velocity ranges. Reducing the number of plates required for testing any further would result in too few data points to be able to make a reasonable assessment of performance of the armor samples.

(AR, tab 20, pp. 2-3)

The 0011 Solicitation provided in Section M-1.5 that "[t]he Government reserves the right to award multiple contracts per each plate technology, a single contract, or no contract." (AR, tab 9, p. 96) As noted by the Contracting Officer, "[s]ince offerors are not required to submit a proposal for all configurations and the Government has clearly stated that separate awards may be made for each configuration, the number of PDMs and the amount of ballistic test data submitted with a proposal are reliant on the independent business decision of each offeror in determining the number of configurations for which it will submit a proposal." (AR, tab 1, p. 4)

Questions and Answers (Qs&As) generated by the 0011 Solicitation were published on the FedBizOpps website. (AR, tab 19) Q&A 47a was posted to the FedBizOpps website on June 15, 2007. (AR, tab 15) Question 47a asked whether offerors were only required to address their "high-level" approaches for the First Article Inspection Plan, the SPEAR Unique Quality Assurance Plan and the Production Ballistic Lot Test (BLT) Plan in their proposals. The answer stated that a formal complete Quality Assurance Plan was required as part of an offeror's proposal, and that offerors were required to "thoroughly discuss" their First Article Test plan and BLT plans, while formal, complete FAT and BLT plans were to be submitted in accordance with Contract Data Requirements List A006 and A007 three days after award. (AR, tab 15)

The answer to question 47a essentially reiterated the requirements already stated in the 0011 Solicitation. In particular, the Requirements Matrix provided that with respect to the First Article Inspection Plan, "the proposal shall thoroughly discuss the offeror's plan for conducting First Article testing, to include as a minimum, the location for testing, planned reports to be submitted and plans to include Government witnesses at all testing." (AR, tab 12, p. 3) With respect to the SPEAR Unique Quality Assurance Plan, the Requirements Matrix provided that the "contractor shall establish, maintain and submit with their proposal a SPEAR Unique Quality Assurance Plan relating to inspection, test methods, and other testing activities used to verify that the specified requirements for this product are met." (AR, tab 12, p. 4) With respect to the BLT plan, the Requirements Matrix provided that the "Government will evaluate the extent to which the proposal thoroughly discusses the offeror's Ballistic Lot Test Plan and provides the Government assurance that a quality product is delivered throughout the life of this contract." (AR, tab 12, p. 4) Potential offerors had 53 days from the date of the publication of Q&A 47a until the due date for proposals. (AR, tab 1, p. 6)

With respect to Qs&As 38 – 40, those questions related to the draft solicitation phase of the BALCS family of ballistic plates procurement. (AR, tab 19) The Contract Specialist inadvertently forgot to post those Qs&As, but in any event, they were overcome by the issuance of the formal 0011 Solicitation. (AR, tab 19)

By letter dated August 2, 2007, the Protester notified the Contracting Officer that it believed corrective action needed to be taken with respect to several aspects of the 0011 Solicitation, and requested a 30-day extension of the closing date for receipt of proposals. (AR, tab 16) By letter dated August 6, 2007, Protester filed an agency-level protest based on the issues raised in its August 2 letter to the Contracting Officer. (AR, tab 17)

Protester filed a GAO protest on August 15, 2007 and listed the following grounds[1]:

a. USSOCOM has imposed an unduly restrictive requirement for the BALCS ballistic plates by requiring "Shatter Gap" testing;

b. USSOCOM placed an undue restriction on competition by calling for an excessive number of ballistic plate tests;

c. USSOCOM violated the "Rule of Two";

d. USSOCOM has placed an undue burden on competition by indicating during Industry Day meetings that a separate BALCS production facility is required; and

e. USSOCOM failed to incorporate Questions and Answers generated during the procurement process into the Solicitation via amendment.

(AR, tab 18)

## ARGUMENT

The Protester alleges that there are several material deficiencies in the 0011 Solicitation and that it provides no lawful basis to make a contract award. However, contrary to the Protester's allegations, the 0011 Solicitation requirements for body armor plates affecting the health and safety of SOF soldiers are reasonable rather than unduly restrictive, USSOCOM acted reasonably in determining not to set aside the 0011 Solicitation for small businesses, and USSOCOM was not required to incorporate Qs&As into amendments where such Qs&As were consistent with solicitation requirements or overcome by events.

### a. USSOCOM has a reasonable basis for imposing the requirement for "Shatter Gap" testing of the BALCS ballistic plates.

On the issue of restrictive specifications, GAO has held that "a contracting agency must specify its needs and solicit offers or quotations in a manner designed to achieve full and open

---

[1] The Agency has rearranged the sequence of the Protester's protest grounds.

competition; restrictive provisions or conditions may be included only to the extent necessary to satisfy those needs." Computers Universal, Inc., B-296501, Aug. 18, 2005, 2005 U.S. Comp. Gen. LEXIS 146 (citation omitted). When a protester alleges that a requirement is unduly restrictive of competition, GAO "will review the record to determine whether the requirement has been justified as necessary to satisfy the agency's actual needs." Id. Further, GAO "has recognized that where solicitation requirements relate to health and safety concerns, an agency has the discretion to set its minimum needs so as to achieve not just reasonable results but the highest possible reliability and effectiveness." Id.

With respect to testing, "[a] contracting agency's responsibility for determining its actual needs includes determining the type and amount of testing necessary to ensure both product compliance with the specifications and that a particular product will meet the government's stated needs." Austin Telecommunications Electrical, Inc., B-256251, May 31, 1994, 94-1 CPD ¶ 331. The fact that some small businesses may have difficulty competing due to the costs associated with the testing requirements, does not establish that the testing requirements are unreasonable. Id.

In the instant situation, the requirement for shatter gap testing is necessary to meet USSOCOM's health and safety concern of protecting the lives of SOF soldiers. As discussed earlier, USSOCOM evaluates current, emerging and future battlefield threats to SOF operators to ensure it is vigilant about their protection, and continues to test its armor system against prioritized battlefield threats. The shatter gap phenomenon is one of those battlefield threats to SOF soldiers. As Mr. Elder explained, shatter gap usually occurs at velocities several hundred ft/sec below the velocity the armor was designed to defeat, which translates to stand off distances of several hundred meters, which is a common scenario on the battlefield. If shatter gap is

present in the plate technologies submitted by offerors under the 0011 Solicitation, this could leave SOF operators unacceptably vulnerable on the battlefield. Although the Protester may consider the inclusion of shatter gap testing an "enormous burden," the testing is reasonable and necessary to protect the lives of SOF soldiers.

The Protester also complains that the shatter gap testing is "a requirement which is not found in any other DoD body armor solicitation or contract." However, as GAO has held previously, "each solicitation stands on its own," and the absence of a particular restriction in prior procurements does not establish its unreasonableness. District Moving & Storage, Inc; Guardian Storage, Inc.; and Quality Transp. Servs., Inc., B-272070, Aug. 9, 1996, 96-2 CPD ¶ 60.

The Protester further complains that the requirement for shatter gap testing is unfair because it places a burden on manufacturers such as the Protester "who have not benefited from the testing data and information the incumbent contractor has learned through its previous sole-source award contracts." However, although "[a] particular offeror may possess unique advantages and capabilities due to its prior experience under a government contract or otherwise[,] . . . the government is not required to attempt to equalize competition to compensate for it, unless there is evidence of preferential treatment or other improper action. Crofton Diving Corporation, B-289271, Jan. 30, 2002, 2002 CPD ¶ 32 (citation omitted). Further, "[t]he existence of this advantage, by itself does not constitute preferential treatment by the agency, nor does it otherwise represent an unfair competitive advantage." Id. Here, the fact that the incumbent may have certain test data as a simple result of its experience as the incumbent, does not constitute preferential treatment by USSOCOM or other unfair competitive advantage and USSOCOM is not required to attempt to compensate for any associated advantage.

Accordingly, for the reasons set forth above, this ground of the protest should be denied.

**b. USSOCOM has a reasonable basis for requiring the number of ballistic plate tests included in the 0011 Solicitation.**

Likewise, USSOCOM has a reasonable basis for requiring the number of ballistic plate tests set forth in the 0011 Solicitation. As explained by Mr. Elder, a reasonable amount of ballistic data is required in order to make a technical evaluation, and the testing of too few plates would result in insufficient data points to be able to make a reasonable assessment of the performance of the armor samples.

USSOCOM demonstrated particular reasonableness in the instant situation. USSOCOM took into consideration the fact that the usual practice of requiring 16 plates for each condition and threat to achieve the desired confidence level might not be reasonable with respect to the 0011 Solicitation because of the multiple configurations and cuts of plates (of varying thickness, areal density and volume) that had to be tested across the various environmental and temperature conditions which represent conditions commonly encountered on the battlefield. As a result, although USSOCOM might have desired the higher reliability and confidence level associated with the usual 16-plate requirement, it acted reasonably in determining instead to require test data from the minimum number of plates per configuration and cut that could still provide sufficient information upon which to make a technical evaluation of the armor sample performance. See Essex Electro Engineers, Inc., B-259832; B-259832.2, May 3, 1995, 95-1 CPD ¶ 228 (where GAO denied a protest objecting to a solicitation's benchmark testing requirements because the agency demonstrated a legitimate need to conduct pre-award testing and the size of the test sample was reasonably related to the agency's minimum needs).

Further, as the Contracting Officer noted, offerors were not required to submit a proposal for all configurations under the 0011 Solicitation. As a result, the number of PDMs and the amount of ballistic test data submitted with an offeror's proposal, would depend on the business decision of the individual offeror concerning the number of configurations for which it decided to submit a proposal. If an offeror chose to submit a proposal for less than all three configurations, then a correspondingly lesser amount of ballistic plate data would be required.[2]

Finally, the Protester also complains that because of the number of ballistic plate tests required, "TPG must expend another substantial sum in order to compete for an award where the incumbent alone enjoys every advantage." As discussed earlier with respect to the Protester's similar complaint regarding shatter gap testing, USSOCOM is not required to compensate for any advantage the incumbent may have that is simply the result of its experience as the incumbent.

Accordingly, for the reasons set forth above, this ground of the protest should be denied.

**c. USSOCOM did not violate the "Rule of Two" because it undertook reasonable efforts to ascertain whether it was likely that two or more responsible small business concerns with the capabilities to perform the work would submit proposals in response to the Solicitation.**

As an initial matter, if GAO determines that USSOCOM's requirements for shatter gap testing and the number of ballistic plate tests are reasonable, then the Protester's protest ground concerning the "Rule of Two" should be dismissed because the Protester has indicated that it is unable to meet these performance requirements[3] and therefore, would not be an "interested party"

---

[2] As noted by the Contracting Officer, the Protester's complaint that it "expended more than $500,000 in costs to compete for the subsequently-cancelled 2006 BALCS solicitation" is surprising in light of the fact that the Protester did not submit an offer in response to the 0023 Solicitation.

[3] The Protester states on page 2 of its GAO protest that it "is a prospective offeror to compete for an award *if the deficiencies which are the subject of this protest are corrected*" (emphasis added) and also states on pages 6 and 7 that such requirements are an "enormous burden" and a "significant economic burden."

within the meaning of 4 C.F.R. § 21.0(a)(1) even if GAO determines that the 0011 Solicitation should be set aside exclusively for small businesses.[4]

FAR 19.501(e) requires the contracting officer to "review acquisitions to determine if they can be set aside for small business, giving consideration to the recommendations of agency personnel having cognizance of the agency's small business programs." For any acquisition over $100,000, FAR 19.502-2(b) requires the contracting officer to set aside such acquisition "for small business participation when there is a reasonable expectation that (1) offers will be obtained from at least two responsible small business concerns offering the products of different small business concerns . . . ; and (2) award will be made at fair market prices."

Generally, GAO regards a determination regarding small business set-aside "to be a matter of business judgment within the contracting officer's discretion, which [GAO] will not disturb unless unreasonable." Matter of American Artisan Productions, Inc., B-292380, Jul. 30, 2003, 2003 CPD ¶ 132 (citation omitted). The "use of any particular method of assessing the availability of small businesses is not required, and measures such as prior procurement history, market surveys, and advice from the SBA may all constitute adequate grounds for a contracting officer's decision not to set aside a procurement. Id. Basically, the contracting officer "must make reasonable efforts to ascertain whether it is likely that offers will be received from at least two small businesses with the capabilities to perform the work." Phoenix Technical Services Corporation, B-274694.2, Mar. 12, 1997, 1997 U.S. Comp. Gen. LEXIS 409.

---

[4] See H.L. Bouton Company, Inc., B-256014.4, Oct. 24, 1994, 94-2 CPD ¶ 149 (where an RFP's interchangeability requirement was determined not to be unduly restrictive, and the protester stated that it could not meet such requirement, GAO noted that the protester "cannot submit a technically acceptable proposal and thus it is not a prospective offeror eligible for award under the RFP" and therefore is not an interested party).

In the instant situation, USSOCOM based its decision not to set aside the 0011 Solicitation for small businesses on reasonable grounds. First, in January 2007, USSOCOM had to cancel the earlier 0023 Solicitation for the family of BALCS ballistic plates due to the fact that none of the offerors passed all portions of the Go/No-Go evaluation. USSOCOM's experience in having to cancel the earlier 0023 Solicitation for lack of acceptable offers is essentially the equivalent of market research which indicated that USSOCOM would not have a reasonable expectation of receiving offers from at least two small businesses with the capabilities to perform the work.[5] Although the Protester asserts that "the Agency knew or should have determined from market research, requests for information ("RFIs"), or similar means that more than one small business concern fully capable of meeting the Solicitation's requirements existed, including TPG itself and at least ArmorWorks, Inc.," USSOCOM's cancellation of the 0023 Solicitation indicated the opposite.

Second, a review of the current state of the ballistic protection industry indicated that many small businesses, including the incumbent, had become large businesses. Accordingly, USSOCOM determined that there was not a reasonable expectation of receiving offers in response to the new solicitation for the family of BALCS ballistic plates from at least two responsible small business concerns with the capabilities to perform the work, and recommended that the 0011 Solicitation be set aside for full and open competition. The Small Business Specialist, who, on certain occasions in the past, had disagreed with the Contract Specialist's

[5] See Phoenix Technical Services Corporation, B-274694.2, Mar. 12, 1997, 1997 U.S. Comp. Gen. LEXIS 409 (GAO denied a protest that a procurement for engineering support services should have been set aside exclusively for small business participation where the agency conducted a market survey to assess the capability of potential offerors to meet the Government's requirements, and of the nine small business respondents to the market survey, four potential offerors were considered capable of performing more than 50% of the work, but only one of the four was identified as capable because it had experience in all of the basic areas.).

recommendation to use full and open competition, concurred in this instance with the decision to proceed with the 0011 Solicitation using full and open competition.

USSOCOM acted reasonably in deciding not to set aside the 0011 Solicitation exclusively for small business concerns and appropriately coordinated this decision with the Small Business Specialist.[6] Accordingly, this ground of the protest should be denied.

**d. USSOCOM did not indicate that a separate BALCS production facility is required.**

Although the Protester asserts that USSOCOM indicated during Industry Day meetings "that the manufacture of the BALCS ballistic plates must be performed in a facility other than one used by the contractor to manufacture other types of body armor plates," the Protester also acknowledges that "[t]he Solicitation does not expressly state this requirement." Moreover, USSOCOM denies that its representatives indicated such a requirement during Industry Day. The Contract Specialist, present during the Industry Day meetings, states that she did not indicate such a requirement, nor did she hear any other Government representative present at Industry Day indicate such a requirement to the vendors. Further, the briefing slides from Industry Day do not reflect such a requirement.

Even if, for the sake of argument, a USSOCOM representative told the Protester during Industry Day of a requirement for contractors to manufacture BALCS plates in a separate facility, such a requirement is contrary to the terms of the 0011 Solicitation, and GAO has held that

[6] See Aerostructures, Inc., B-280284, Sep. 15, 1998, 98-2 CPD ¶ 71 (protest that the Navy improperly withdrew a small business set-aside was denied where the Navy's decision (in which the agency's small and disadvantaged business advocate concurred) was based on the acquisition history reflecting only one small business offer during the past two solicitation cycles, and the technical complexity of the requirement).

"offerors cannot reasonably rely on oral modifications to an RFP which are inconsistent with its written terms, absent a written amendment, or confirmation of the oral modification. S3 LTD, B-287019.2, et al., Sep. 14, 2001, 2001 CPD ¶ 165 (citations omitted) As GAO has noted, "[t]his clear principle provides fairness to all parties by ensuring that competitions are conducted under equal terms, and protects both protesters and agencies from the kind of credibility disputes raised here, as well as protecting the integrity of the procurement process overall." Id.

USSOCOM denies Protester's allegation that it indicated during Industry Day that BALCS plates must be manufactured in a separate manufacturing facility. Even if a USSOCOM representative incorrectly asserted such a requirement during Industry Day meetings, such a requirement is not stated in the 0011 Solicitation, and where oral advice conflicts with a solicitation, it "is not binding on the government and an offeror therefore relies on an oral explanation of a solicitation at its own risk." Diamond Aircraft Industries, Inc., B-289309, Feb. 4, 2002, 2002 CPD ¶ 35 (citation omitted).

For the reasons set forth above, this protest ground should be denied.

**e. USSOCOM is not required to incorporate Questions and Answers generated during the procurement process into the 0011 Solicitation via amendment where such Questions and Answers are consistent with the terms of the solicitation or where the Questions and Answers are overcome by events.**

FAR 15.206(a) provides that the contracting officer shall amend a solicitation "when, either before or after receipt of proposals, the Government changes its requirements or terms and conditions." The Protester complains that USSOCOM's decision not to amend the 0011 Solicitation to incorporate the Qs&As "will leave the Solicitation and resultant contract dangerously susceptible to potential differing interpretations of several ambiguous but important requirements," but the Protester does not, with the exceptions discussed below, specify which

Qs&As are susceptible to differing interpretations and in what manner, and therefore, USSOCOM will only respond to the specific allegations regarding the Qs&As referenced below.

With respect to Q&A 47a,[7] USSOCOM did not amend the 0011 Solicitation to incorporate Q&A 47a because the information contained therein was consistent with the requirements already provided in the 0011 Solicitation.[8] Question 47a asked whether offerors would be correct in assuming that they were only required to address their "high-level approach" for FAT, Quality Assurance, and ballistic testing in the proposal, and that formal, complete plans would be post-award deliverables. The answer to 47a simply reiterated the requirements reflected in the 0011 Solicitation, including the Requirements Matrix, for offerors to submit, with their offer, a SPEAR Unique Quality Assurance Plan, along with a thorough discussion of the FAT plan and the ballistic lot test plan, with the actual FAT and ballistic lot test plans to be provided post-award. Although the Protester asserts in its GAO protest that it would need 30 days to prepare the relevant plans, USSOCOM notes that when Q&A 47a was posted on June 15, 2007, the Protester had 53 days to prepare the required information by the due date for proposals on August 7, 2007.

As reflected by Amendment No. 0001 providing for an extension of the due date for proposals from June 8, 2007 until August 7, 2007 and incorporating velocity ranges for shatter gap testing, USSOCOM did amend the 0011 Solicitation when USSOCOM changed the requirements or the terms and conditions. An amendment incorporating Question 47a, however,

---

[7] Although the Protester complains about Question 47, there is no Question 47 and the Protester appears to be complaining about what is actually Question 47a.

[8] See Shaw Environmental, Inc., B-297294, Dec. 2, 2005, 2005 CPD ¶ 218 (GAO determined that "the RFP requirements remained the same throughout the procurement, so there was no need for the agency to amend the solicitation.").

was not necessary because the answer provided did not change the requirements or the terms and conditions of the 0011 Solicitation.

Finally, as discussed earlier, Qs&As 38 – 40 related to the draft solicitation and were overcome by the issuance of the actual 0011 Solicitation. Therefore, although those Qs&As were never posted, the Protester was not prejudiced by USSOCOM's failure to post the outdated information. OfficeMax, Inc., B- 299340.2, Jul. 19, 2007, 2007 U.S. Comp. Gen. LEXIS 132 (GAO "will not sustain a protest absent a reasonable showing of competitive prejudice.").

Accordingly, this ground of the protest should be denied.

**CONCLUSION**

**WHEREFORE,** for the reasons set forth above, USSOCOM respectfully requests that this protest be denied. If you have any questions regarding this matter, please contact Christine Choi at (703) 696-2843; facsimile (703) 696-1537.

Sincerely,

Christine M. Choi

Christine M. Choi
Trial Attorney
Contract and Fiscal Law Division

Enclosures

Copy Furnished (w/encl):

Protester:
Mr. Richard Moorhouse, Esq.
Greenberg Traurig, LLP
1750 Tysons Boulevard, Suite 1200
McLean, VA 22102
Telephone: 703-749-1300
Facsimile: 703-749-1301

Copies furnished (w/out encl):

Installation Attorney:
OSJA
HQ, U.S. Special Operations Command
ATTN: SOJA-AQ (Christopher Kernan, Esq.)
7701 Tampa Point Blvd.
MacDill AFB, FL 33621-5323
Telephone: 813-826-6695
Facsimile: 813-826-7504/3629

Directorate of Contracting
U.S. Special Operations Command
ATTN: SOAL-K (C. Denise Green-Huneke)
7701 Tampa Point Blvd.
MacDill AFB, FL 33621-5323
Telephone: 831-826-4767
Facsimile: 831-826-7504

Ceradyne, Inc.
Richard B. O'Keeffe, Esq.
Wiley Rein LLP
1776 K Street NW
Washington, DC 20006
Telephone: 202-719-7396
Facsimile: 202-719-7049