# "Intentionally Left Blank"

# TAB 10

# "Intentionally Left Blank"

# TAB 11

# Requirements Matrix

| Characteristic PERF SPEC Reference | Requirement | Verification/Criteria | Supplier Technical/Management Approach And Reference Attachments |
|---|---|---|---|
| Notice of Intent (NOI) to Submit a Proposal<br><br>Reference:<br>Section L-1.1 of the RFP | All firms planning on submitting a proposal(s) (including the required product models) shall inform the contract specialist, Ms. Verdetta Weaver, via email at: weaverv@socom.mil, of their intent to submit a proposal by no later than <u>two (2) weeks after the final solicitation has been posted to Federal Business Opportunities (FedBizOpps)</u>. Offerors shall ensure they receive an acknowledgement of receipt from the contracting office. | The Government will verify that an NOI was submitted and acknowledgement of receipt was provided by the contracting office. | |
| Product Demonstration Model (PDM)<br><br>Reference:<br>Section L-3 Table - 1 of the RFP<br><br>Factor I | ☐ 8 BALCS Ballistic Plates<br>☐ 18 Tactical Ballistic Plates<br>☐ 18 Low Visibility Ballistic Plates | In accordance with the offeror's Notice of Intent, the appropriate number and sizes of PDM's are provided IAW Section L, Table 1 | |
| Preliminary SPEAR Ballistic Test Data<br><br>Reference:<br>PERF SPEC 3.1<br><br>Factor I | **Key Performance Parameter:**<br>The offeror shall provide sufficient ballistic test data to demonstrate that the plate system(s) submitted have been tested in the configuration specified and therefore has a reasonable opportunity to meet the performance requirements shown in paragraph 3.1 when independently tested by the Government. At a minimum to be considered for award the offeror must provide data that meets the criteria in this specification (i.e. SPEAR shot pattern). The systems configurations must be capable of defeating the specified projectiles when tested (per National Institute of Justice (NIJ)-0101.03) listed in section 3.1 (inclusive) and in accordance with the SPEAR configuration requirement. Offerors are encouraged to submit any additional threat data they have in accordance with this specification and this shot pattern as well as threat data in accordance with other shot patterns (e.g. NIJ, closer shot groups, ESAPI). | The Government will verify that test data has been submitted by the offeror and the data is consistent with test requirements shown in Specification paragraph 3.1, Ballistic Performance. Failure to submit the data required will result in a finding of unacceptable and may be immediately removed from consideration for award without evaluation of the remaining parts of the proposal. Minimum data required must be in accordance with SPEAR Performance Specifications. The Government will also verify additional threat data submitted. | |

# Requirements Matrix

| Characteristic PERF SPEC Reference | Requirement | Verification/Criteria | Supplier Technical/Management Approach And Reference Attachments |
|---|---|---|---|
| Weight/Thickness<br><br>Reference:<br>PERF SPEC 3.1, 3.1.1.1, 3.1.1.2, 3.1.2.1, 3.1.2.2, 3.1.3.1, 3.1.3.2<br><br>Factor I | **Key Performance Parameter:**<br>Weight and thickness of each Product Demonstration Model (PDM) shall be measured to the requirements shown in Performance Specification paragraph 3.1. Each size will be assessed for conformance to the Specification. | The PDM ballistic plates shall be weighed on a digital scale to the nearest 0.01 pound to ensure conformance to the performance specification.<br><br>Eight thickness measurements shall be made on each PDM. The thickness shall be measured to the nearest 0.01-in. at each of the following locations of the plate. One measurement shall be made at the center of each of three chamfered edges. One measurement will be made at the center point on three of the six sides of the plate. One measurement will be made at the center location of the plate. The remaining one measurement will be taken 2.0 - 3.0-in. from the center measurement point. All thickness measurements will be averaged to calculate a mean thickness. | |
| Carrier Compatibility / Dimensional Analysis ensuring interoperability with existing fielded SPEAR Equipment<br>Reference:<br>PERF SPEC 3.2.1<br><br>Factor I | **Key Performance Parameter:**<br>Plates shall conform to all measurements and tolerances in the provided drawings, Attachment 07 of the RFP. Each size will be assessed for conformance to the Specification. | Physical measurements of all PDMs will be taken to show that all measurements conform to dimensions and tolerances in Drawings. Plates will be checked by subject matter experts inserted, closed and opened and removed from existing and appropriately sized SPEAR armor carriers and checked for compatibility. | |
| <u>Ballistic Performance:</u><br><br>Reference:<br>PERF SPEC 3.1<br><br>Factor I | SOF is looking to procure a family of ballistic plates, which have been fully tested by the offeror in the configurations shown in the Performance Specification. This prior testing will give the Government reasonable indication that the plate submitted with this offer, when ballistically tested by the Government (both conditioned and unconditioned), will meet the ballistic requirements shown in paragraph 3.1 of the performance specification. The Backface Deformation shall not exceed 1.73 inches (44 mm) per NIJ Standard 0101.03. | A detail review of the ballistic data provided will be conducted. The Government may conduct any or all ballistic testing specified in Performance Specification paragraph 3.1. Ballistic Testing of the BALCS plate system will be completed with the SPEAR Soft Armor Shoot Pack. All offerors that are tested by the Government will be tested in the same way. | |
| <u>Durability:</u><br><br>Reference:<br>PERF SPEC 3.2.2<br><br>Factor I | The materials used to manufacture plates shall be selected to prevent degradation of ballistic performance from typical individual tactical movements, handling and environmental conditions associated with the field. | The Government will conduct the Test Set-up, Test Parameters and Inspection IAW Performance Specification 3.2.2 to verify materials performance. | |

# Requirements Matrix

| Characteristic PERF SPEC Reference | Requirement | Verification/Criteria | Supplier Technical/Management Approach And Reference Attachments |
|---|---|---|---|
| First Article Inspection Plan:<br><br>Reference:<br>PERF SPEC 3.3<br><br>Factor III | The proposal shall thoroughly discuss the offeror's plan for conducting First Article testing, to include as a minimum the location for testing, planned reports to be submitted and plans to include Government witnesses at all testing. | The proposal will be evaluated to determine the extent to which the offeror's plan, processes and methodologies for First Article Test and Inspection will meet the Performance Specification requirements. | |
| Delivery:<br><br>Reference:<br>PERF SPEC 3.4.1<br><br>Factor III | The offeror shall provide a delivery schedule that demonstrates integration of their proposed plate system into its overall business plan for the period of the contract, and clearly identify minimum economical monthly production capacity to maintain continuous production. Offeror's shall propose a minimum delivery per month. Upon release of any delivery order the supplier shall meet the agreed upon minimum monthly delivery. | The Government will evaluate the offerors proposed delivery rates in comparison to the required/desired delivery schedule as set forth in FAR 52.211-8 of the solicitation. | |
| Surge Requirements:<br><br>Reference:<br>PERF SPEC 3.4.2<br><br>Factor III | The offeror shall have the ability to meet surge requirements, or production over normal monthly production rate. Explain how this requirement would be handled. The offeror must propose a percentage above the base delivery base capacity and the overall effect of this surge capacity. | The Government will evaluate the offerors proposed surge capability in comparison to the required/desired delivery schedule as set forth in FAR 52.211-8 of the solicitation. | |
| ISO 9000 or Equivalent Certification<br><br>Reference:<br>PERF SPEC 3.4.3<br><br>Factor III | The Government is looking for no variation in the quality of the individual items delivered under any resultant contract. ISO 9000 or equivalent certifications issued to the offeror shall be provided. | The Government will verify that an ISO 9000 or equivalent certification has been provided. | |

## Requirements Matrix

| Characteristic PERF SPEC Reference | Requirement | Verification/Criteria | Supplier Technical/Management Approach And Reference Attachments |
|---|---|---|---|
| SPEAR Unique Quality Assurance Plan<br><br>Reference:<br>PERF SPEC 3.4.4<br><br>Factor III | The contractor shall establish, maintain and submit with their proposal a SPEAR Unique Quality Assurance Plan relating to inspection, test methods, and other testing activities used to verify that the specified requirements for this product are met. The plan shall address records to be established and shall as a minimum include a) verification of all weight, thickness and dimensional measurements taken from a sampling of finished components, b) Material compliance forms signed by the offeror, each sub-offeror or material supplier, c) Test data generated by the offeror, d) Ballistic performance test data generated for production lot testing, e) Traceability records for every component must be durably marked in such a fashion as to be traceable from production through to the ballistic test records for that lot of components, and f) Serialization of all body armor. | The Government will evaluate the extent to which the plan is thorough and detailed to provide the Government assurance that rigidly enforced manufacturing processes are in place and will remain in place for the life of the contract. | |
| Production Ballistic Lot Test Plan<br><br>Reference:<br>PERF SPEC 3.4.6<br><br>Factor II | Due to its destructive nature and high cost, production ballistic testing of the plate process validation procedure, used in conjunction with other controls, is required to ensure that plates produced subsequently are capable of meeting the ballistic test requirements described in performance specification paragraph 3. Successful ballistic lot testing will be used to demonstrate adequate process controls and indicate the acceptability of a lot. The proposal shall discuss the offeror's recommended frequency lot size for the testing, test methods, techniques or equipment including the application of cost effective sampling procedures. The offeror shall include the location and certification level of the facility which will be used to conduct lot testing. No change may be made to the proposed facility without approval by the Government. | The Government will evaluate the extent to which the proposal thoroughly discusses the offerors' Ballistic Lot Test Plan and provides the Government assurance that a quality product is delivered throughout the life of this contract. | |
| Supply Chain Management<br><br>Reference:<br>PERF SPEC 3.4.7<br><br>Factor III | The proposal shall address all activities pertaining to the flow and transformation of materials from the raw materials stage through to the end user. Supply chain management is the integration of these activities. The activities include developing, planning, sourcing, manufacturing and delivering. The proposal shall discuss relationships with key suppliers and delineate how each offeror has sourced or will source said key suppliers for vital and/or long lead components that are not manufactured in house. | The Government will review the key suppliers and the relationship which exists between the offeror and these suppliers to ensure successful contract performance. | |

## Requirements Matrix

| Characteristic PERF SPEC Reference | Requirement | Verification/Criteria | Supplier Technical/Management Approach And Reference Attachments |
|---|---|---|---|
| Warranty<br><br>Reference:<br>PERF SPEC 3.4.8<br><br>Factor III | Offeror shall submit their best standard warranty. | The Government will evaluate the proposed warranty timeline and terms and conditions to determine the extent to which it will protect the Government from obtaining other than a quality product and not be burdensome/cumbersome on the Government if the warranty needs to be implemented. | |
| Part Numbers<br><br>Reference:<br>PERF SPEC 3.4.9<br><br>Factor III | The contractor shall submit a unique manufacturer's part number for each item submitted. The part number shall not change for the life of the contract without prior approval from the Government. | The Government will evaluate whether the offeror has provided a unique part number for each item proposed. | |
| Program Management<br><br>Reference:<br>PERF SPEC 3.4.10<br><br>Factor III | The offeror shall appoint a single point of contact (POC) for all issues relating to this program. The POC shall be responsible for advising appropriate Government representatives of any delays in deliveries. The offeror shall include in their proposal a resume for the Program Manager selected for this program. | The Government will evaluate the resume to determine the extent to which the single POC has the appropriate education, experience and commitment to customer satisfaction to successfully manage this program and deliver timely, quality products. | |
| Labels, Packaging and Marking<br><br>Reference:<br>PERF SPEC 3.5<br><br>Factor III | The offeror shall properly label all components and mark all containers, to include the submitted PDMs. If the offeror can identify other cost-effective packaging solutions, which may enhance the integrity of the product at destination, the offeror shall recommend an alternative packaging procedure. | The Government will visually inspect the packaging used to ship the PDMs as well as the labels used on the PDMs to determine the extent to which the offeror has complied with the requirements of performance specification paragraph 3.5. Furthermore, the Government will evaluate the offerors packaging plans and also procedures for labeling and marking to determine the extent to which the offeror has assured the unique item identifiers, barcodes and serialization can be consistently met for all shipments. | |

FOR OFFICIAL USE ONLY
UNTIL RELEASED BY THE
HOUSE ARMED SERVICES COMMITTEE

STATEMENT OF

COLONEL KEVIN S. NOONAN, U.S. ARMY

PROGRAM EXECUTIVE OFFICER

SPECIAL OPERATIONS FORCES WARRIOR PROGRAMS

UNITED STATES SPECIAL OPERATIONS COMMAND

BEFORE THE HOUSE ARMED SERVICES COMMITTEE

DEFENSE BODY ARMOR PROGRAMS

JUNE 6, 2007

FOR OFFICIAL USE ONLY
UNTIL RELEASED BY THE
HOUSE ARMED SERVICES COMMITTEE

STATEMENT OF
COLONEL KEVIN S. NOONAN, U.S. ARMY
PROGRAM EXECUTIVE OFFICER
SPECIAL OPERATIONS FORCES WARRIOR PROGRAMS
UNITED STATES SPECIAL OPERATIONS COMMAND

Mr. Chairman and distinguished members of the Committee, it's an honor to appear before this Committee today to report on the United States Special Operations Command's (USSOCOM) Body Armor requirement and material solution.

I am COL Kevin Noonan, the USSOCOM Program Executive Officer for Special Operations Forces (SOF) Warrior Programs within the Command's Acquisition and Logistics Center. I am in charge of acquiring SOF-peculiar solutions for a variety of items including weapons, ammunition, ground mobility, visual augmentation systems, and personal survivability equipment that are not provided by Service-common solutions. To achieve this, we utilize a process that directly teams with our component users from the Army, Navy, Air Force, and Marine Corps Special Operations Commands. Our goal is to maximize the use of Service-common solutions, and we are actively engaged with Service Program Offices to test equipment that can meet SOF requirements.

The USSOCOM ballistic protection solution is known as the SOF Personnel Equipment Advanced Requirements (SPEAR) body armor system. The USSOCOM requirement is to provide a level of protection to defeat 2–strike Armor Piercing Munitions. We do this by rapidly fielding successive lightweight and advanced SOF-unique components of clothing and individual equipment

while integrating them into a tailorable system.

This tailorable system is called the SPEAR Body Armor/Load Carriage System, or BALCS. It is a family of integrated armor and load carriage systems which provides SOF operators with the modularity required to meet the various mission profiles in all environmental extremes. Specifically, USSOCOM requires the ability for the individual operator to tailor his protection and load to meet various mission profiles while maintaining the necessary agility, mobility, and range of motion required to meet SOF mission standards.

The first material solution to meet SPEAR requirements was realized in Fiscal Year 1998 through a Full and Open Competition, involving seven different vendors. Based on the technology at the time, our initial plate fielded in 1999 was capable of stopping only one strike of Armor Piercing Munitions due to weight constraints. Through Spiral Development, SOF was able to field an armor plate meeting the two strike requirement in 2002. We have been fielding this plate ever since. In addition to the increased ballistic capability, several other BALCS sub-systems have been modified to better support current operations in spiral development through feedback from SOF operators.

The SPEAR Body Armor plates are tested using a standard test protocol. In both first article and lot testing, plates are shot with Armor Piercing Munitions, 4 inches apart, 2 shots per plate, in an "around the clock" pattern. The first shot is 1 inch from the edge until we get around the plate once, then we probe other areas of the plate.

This protocol is used during first article testing of SPEAR plates exposed

to ambient, hot and cold temperatures; salt water; chlorine water; and petroleum. Lot testing consists of only Ambient testing using the shot protocol. We have all the Lot testing results from 2002 which substantiate the performance of our plates through the years.

The approved standard USSOCOM SPEAR body armor system includes the Releasable Body Armor Vest (RBAV) made by Eagle Industries in Missouri, GEN II Tactical Plates and Modular Supplemental Armor Protection (MSAP) made by Ceredyne in California, and Soft Ballistic Fillers made by Safariland in California. In accordance with the USSOCOM requirement for modularity and tailorability, the SPEAR body armor system employs a variety of pockets, pouches, harnesses, and an additional plate carrier o meet various SOF mission scenarios.

USSOCOM uses the SPEAR Body Armor system because it has been successfully tested and has been proven to meet the 2-strike Armor Piercing Munitions requirement since 2002. Additionally, the SPEAR Body Armor system has maintained its operational suitability and effectiveness as demonstrated in robust independent operational evaluation and combat operations.

The SPEAR Body Armor system has proven an effective ballistic system in SOF combat operations throughout the world since 2002. There are many documented cases in which the SPEAR body armor system has saved the lives of SOF operators in combat. These results have produced an enormous confidence in SOF operators with regard to their ballistic protection.

With the assistance of the National Assessment Group and the Army

Research Lab, USSOCOM has initiated a threat evaluation of current, emerging, and future battlefield threats to the SOF operators to ensure we are vigilant about their protection. We will continue to test our SPEAR armor system against prioritized battlefield threats. USSOCOM continually searches for new technologies that support our SOF missions. We recognize that in order to meet the needs of our SOF warrior, we must continue to work to reduce the weight of our body armor while increasing ballistic protection. We have challenged industry to meet this requirement in our current solicitation for the SPEAR "Family of Ballistic Plates," which was released this month. In response to industry requests, we have extended the response date of the solicitation 60 days to August 7th to allow all vendors to provide the robust test data we have required of them. We expect to award this contract no later than the second quarter of Fiscal Year 2008.

Mr. Chairman, I want to thank you and the members of the House Armed Services Committee for your continued support of our SOF soldiers, sailors, airmen, marines, and our dedicated USSOCOM civilians. In particular, I would like to thank you for your support of the SPEAR program, and request your continued support as it has proven to save the lives of SOF operators over the years.

# AMENDMENT OF SOLICITATION/MODIFICATION OF CONTRACT

| 1. CONTRACT ID CODE | PAGE OF PAGES |
|---|---|
| J | 1 \| 3 |

| 2. AMENDMENT/MODIFICATION NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | 5. PROJECT NO.(If applicable) |
|---|---|---|---|
| 0001 | 08-Jun-2007 | BALCS2 | |

| 6. ISSUED BY CODE H92222 | 7. ADMINISTERED BY (If other than item 6) CODE |
|---|---|
| HQ USSOCOM SOAL-K<br>ATTN: DEE GREEN-HUNEKE<br>7701 TAMPA POINT BLVD<br>MACDILL AFB FL 33621 | See Item 6 |

8. NAME AND ADDRESS OF CONTRACTOR (No., Street, County, State and Zip Code)

CODE | FACILITY CODE

| | |
|---|---|
| X | 9A. AMENDMENT OF SOLICITATION NO. H92222-07-R-0011 |
| X | 9B. DATED (SEE ITEM 11) 09-May-2007 |
| | 10A. MOD. OF CONTRACT/ORDER NO. |
| | 10B. DATED (SEE ITEM 13) |

### 11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

[X] The above numbered solicitation is amended as set forth in Item 14. The hour and date specified for receipt of Offer [X] is extended, [ ] is not extended.

Offer must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended by one of the following methods: (a) By completing Items 8 and 15, and returning 1 copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (If required)

### 13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS. IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

[ ] A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.

[ ] B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(B).

[ ] C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF:

[ ] D. OTHER (Specify type of modification and authority)

E. IMPORTANT: Contractor [ ] is not, [ ] is required to sign this document and return ____ copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

See Continuation Sheet

Except as provided herein, all terms and conditions of the document referenced in Item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

| 15A. NAME AND TITLE OF SIGNER (Type or print) | | 16A. NAME AND TITLE OF CONTRACTING OFFICER (Type or print)<br>TEL: EMAIL: | |
|---|---|---|---|
| 15B. CONTRACTOR/OFFEROR<br>(Signature of person authorized to sign) | 15C. DATE SIGNED | 16B. UNITED STATES OF AMERICA<br>BY<br>(Signature of Contracting Officer) | 16C. DATE SIGNED<br>15-Jun-2007 |

SECTION SF 30 BLOCK 14 CONTINUATION PAGE

**SUMMARY OF CHANGES**

SECTION A - SOLICITATION/CONTRACT FORM

The required response date/time has changed from 08-Jun-2007 02:00 PM to 07-Aug-2007 02:00 PM.

The 'issued by' organization has changed

**From:**

HQ USSOCOM/SOAL-K
ATTN: VERDETTA WEAVER
7701 TAMPA POINT BLVD.
MACDILL AFB FL 33621-5323

**To:**

HQ USSOCOM SOAL-K
ATTN: DEE GREEN-HUNEKE
7701 TAMPA POINT BLVD
MACDILL AFB FL 33621

SECTION J – LIST OF DOCUMENTS, EXHIBITS AND OTHER ATTACHMENTS

1. Attachment 01, Performance Specification has been modified to incorporate velocity ranges for shatter gap testing of the low visibility configuration as well as, correct numbering of paragraphs.

2. The date and number of pages to Attachment 01, Performance Specification, has been modified as follows:

**From:**

| Attachment Number | Description | Date | No. of Pages |
|---|---|---|---|
| 01 | Performance Specification | 04/10/07 | 29 |

**To:**

| Attachment Number | Description | Date | No. of Pages |
|---|---|---|---|
| 01 | Performance Specification | 06/13/07 | 30 |

SECTION L - INSTRUCTIONS, CONDITIONS AND NOTICES TO BIDDERS

SECTION L-1.1 has been modified

**From:**

L-1.1 Notice of Intent (NOI) to Submit a Proposal. To allow the government to allocate manpower, schedule necessary test facilities, etc., all firms planning on submitting a proposal(s) (including the required product models) shall inform the contract specialist, Ms. Verdetta Weaver, via email at: weaverv@socom.mil, of their intent to submit a proposal by no later than **23 May 2007**. If the offeror intends to submit an alternative proposal, in addition to its proposed package for the specified requirements of this solicitation, it must be submitted as a complete and separate proposal package. Offerors shall notify the contract specialist, and provide a complete NOI for each alternative proposal package to be submitted. It is the Government's intention to release the following documents only to those vendor's who have submitted an NOI: Attachment 01, "Performance Specification", Attachment 07, "Technical Drawings", and Attachment 06, " Proper Handling of Attachments 01, Performance Specification, and 07, Technical Drawings." Distribution of these documents will be within two (2) days of the NOI submission or within two (2) days of RFP release, whichever is later. Proposals will be due no later than 2:00 p.m. local Tampa, FL, time, **8 June 2007**.

**To:**

L-1.1 Notice of Intent (NOI) to Submit a Proposal. To allow the government to allocate manpower, schedule necessary test facilities, etc., all firms planning on submitting a proposal(s) (including the required product models) shall inform the contract specialist, Ms. Dee Green-Huneke, via email at: cdenise.green-huneke@socom.mil, of their intent to submit a proposal by no later than **22 June 2007**. If the offeror intends to submit an alternative proposal, in addition to its proposed package for the specified requirements of this solicitation, it must be submitted as a complete and separate proposal package. Offerors shall notify the contract specialist, and provide a complete NOI for each alternative proposal package to be submitted. It is the Government's intention to release the following documents only to those vendor's who have submitted an NOI: Attachment 01, "Performance Specification", Attachment 07, "Technical Drawings", and Attachment 06, " Proper Handling of Attachments 01, Performance Specification, and 07, Technical Drawings." Distribution of these documents will be within two (2) days of the NOI submission or within two (2) days of RFP release, whichever is later. Proposals will be due no later than 2:00 p.m. local Tampa, FL, time, **7 August 2007**.

(End of Summary of Changes)

BALCS Family of Ballistic Plates
Solicitation H92222-07-R-0011
Questions and Answers

QUESTION 47a: The Attachment 2 Requirements Matrix states that the Government will evaluate an Offeror's First Article Inspection Plan, SPEAR Unique Quality Assurance Plan, and Production Ballistic Lot Test Plan as part of their proposal. Given that the Technical/Management Volume is restricted to 50 pages and that CDRLs for those plans require post-award deliveries, are we correct in assuming that Offerors are only required to address their high-level approach for FAT, Quality Assurance, and ballistic testing in the proposal and that formal complete plans will be post-award deliverables?

**GOVERNMENT RESPONSE FOR QUESTION 47a:** No. A formal complete Quality Assurance Plan is required as part of an offerors proposal. In accordance with the performance specification and requirements matrix, vendors are required to thoroughly discuss their FAT plan and Ballistic Lot Test (BLT) plans. Formal complete FAT and BLT plans shall be submitted in accordance with CDRL A006 and A007, three (3) days after award and will be reviewed during the post-award conference.

QUESTION 47b: Does the 50 page limitation of the Tech/Mgmt volume take into consideration the required plans and/or discussions thereof?

**GOVERNMENT RESPONSE FOR QUESTION 47b:** The 50 page limitation does not include the required plans.

QUESTION 48: In section 3.1 of the current Performance Specification it lists 3 tables for the qualification of Ballistic Performance of each "Family of Parts". The total number of plates to be tested appears to be approximately 800 each. This includes testing from all 3 "Family of Parts" tables and estimated plates for V50 testing. It is estimated that the cost of this testing will be approximately $700,000, which will include plates, shoot packs, environmental testing and range time. Are these assumptions for quantities correct and if so, is the Government willing to offer any cost sharing for this testing?

**GOVERNMENT RESPONSE FOR QUESTION 48:** The total number of plates to be tested for all configurations is 614. The performance specification has been updated to reflect this total. The "Family of Plates" solicitation is for three different configurations of plates with three different cuts for Stand Alone and Low Visibility. Due to the numerous and different configurations and cuts, ballistic data is required for all. Offerors have the option to submit for one, two, or three configurations. The Government will not provide any cost sharing for testing in support of the solicitation.

QUESTION 49: In the test tables it calls out a requirement for each "cut" to be tested separately. If the design make up is the same for all the Tactical and Low Visibility "cuts", does each need to be tested separately as called out in the table? If these could be combined, the numbers as noted in 1 would actually be approximately 360 units to be tested.

**GOVERNMENT RESPONSE FOR QUESTION 49:** The Government does not have extensive data as to whether the final cut makes a significant difference in ballistic performance of plates of the same design. Therefore, ballistic testing is required for all cuts.

QUESTION 50: Is there a size requirement for the plates to be tested?

**GOVERNMENT RESPONSE FOR QUESTION 50:** There is not a size requirement for the plates to be tested. If the Government chooses to perform additional ballistic testing, samples of any size may be used. During First Article Testing plates of all sizes will be used in ballistic testing.

QUESTION 51: The original Draft Performance Specification listed in sections 3.1.4.1 and 3.1.4.2 an expected probability for both first and second shot performance. The current Specification does not list an expected probability. What is the expected performance probability for first shot (BALCS, Tactical and Low Visibility) and second shot (BALCS) ballistic testing?

**GOVERNMENT RESPONSE FOR QUESTION 51:** The expected performance probability is the same for the first and second shot. Acceptability of 1st shots and 2nd shots is indicated by the tested plates configuration statistically demonstrating a lower bound probability of partial penetration of at least 0.9 with an 80% confidence level. This is achieved by testing 16 plates (in conjunction with soft armor panel) and attaining 16, 1st and 2nd shot partial penetrations.

QUESTION 52: The Low Visibility Configuration requires shatter gap testing with the BZ projectile, but does not list the velocity ranges to be tested. Please provide velocity ranges for this testing.

**GOVERNMENT RESPONSE FOR QUESTION 52:** The first 6 plates will be tested in accordance with the performance specification except the projectile velocities will be between 1800 - 1900 ft/sec. The next 6 plates will be tested at velocities between 1900 - 2000 ft/sec, the next 6 between 2000 - 2100 ft/sec and the last 6 between 2100 – 2200 ft/sec. If any penetrations occur during these tests the armor will fail to meet the performance specification requirements.

The above velocity ranges were not included in the Performance Specification, consequently the Performance Specification will be amended to reflect this information.

QUESTION 53: If testing listed in the current Performance Specification tables has been previously completed, will this data be accepted? For instance, in Table 1 there is a requirement for 6 units to be tested against Sea Water requirements. If two units were previously tested, will an additional 4 units along with the previous two be considered a total of 6, or will 6 new units need to be tested?

**GOVERNMENT RESPONSE FOR QUESTION 53:** If previous tests have been completed in accordance with the current Performance Specification the data will be accepted under the following conditions: All test data must be from an NIJ certified laboratory or signed off by a Government representative at an independent laboratory, and all previous samples tested must be of the exact same design and configuration as the proposed samples. Evidence must be submitted to confirm that previous test samples are of the exact same design and configuration as the newly proposed samples.

QUESTION 54: Given the amount of testing now required for the current Performance Specification, an extension of 60 days is requested to allow time for plate production and testing.

**GOVERNMENT RESPONSE FOR QUESTION 54:** The Government agreed to a one time only 60 day extension to 7 August 2007. An amendment identifying this revised proposal due date is forthcoming.

**Choi, Christine M Ms OTJAG**

**From:** Scott McMichael [Scott@protectmat.com]
**Sent:** Thursday, August 02, 2007 5:54 PM
**To:** Green-Huneke, C D CIV USSOCOM HQ
**Cc:** Pera, Karen L Mrs CIV USSOCOM HQ; Mike Clark; Clarice Torneiro
**Subject:** BALCS

**Importance:** High

**Attachments:** BALCS LTR 080207.pdf

BALCS LTR 080207.pdf (2 MB)

Dear Ms. Green-Huneke:

Please find our official request for clarification. A confirming hard copy is being faxed to your attention for delivery tomorrow morning. We look forward to a timely response. Should you have any questions on this, please contact me directly at (305) 820-4270, ext. 214.

Scott J. McMichael, Chief Operating Officer

The Protective Group, Inc.

Miami Lakes, FL 33014

(305) 820-4270, ext. 214

THE PROTECTIVE GROUP, INC.

August 2, 2007

VIA FEDERAL EXPRESS

Ms. Denise Green-Huneke
Contracting Officer
U.S. Special Operations Command
Headquarters, Procurement Division
7701 Tampa Point Boulevard
MacDill AFB, FL 33621-5323

Re: Solicitation No. H92222-07-R-0011

Dear Ms. Huneke:

This letter follows our earlier e-mail and phone conversations regarding the referenced SOCOM solicitation for a family of ballistic plates for the body armor load carriage system ("BALCS").

As you know from our prior discussions, The Protective Group ("TPG") is heavily involved in producing state-of-the-art body armor for the U.S. Warfighter. TPG is, for example, currently the second largest supplier of ESAPI body armor to the U.S. Army. TPG intends to bid on the solicitation and submitted our notice of intent to submit a BALCS proposal, as required by the RFP. TPG believes, however, that several aspects of the BALCS solicitation require your immediate attention and corrective action in order for us to continue our participation in this important program. As we have previously explained, these items include:

1. It was expressed to us during the One-On-One Vendor Sessions that the manufacturing for BALCS body armor occur in a facility other than one used to manufacture ESAPI or XSAPI body armor. To date, this requirement has yet to be documented in the solicitation documents. If this is a requirement or desire by the government, it places an enormous burden on small businesses that do not have the multiple manufacturing sites available to some of the large businesses; some of whom have benefited from multiple sole source SPEAR contracts from the government.

Chieftain Safety Manufacturing

14040 N.W. 58th Court, Miami Lakes, FL 33014 / Tel: (305) 820-4240 / Fax: (305) 820-4290
www.protectivegroup.com

Protective Materials Company

2. The solicitation recently added Shatter Gap Testing, which constitutes excessively restrictive BALCS body armor testing requirements that are not found in any other DOD body armor solicitation or contract. In order to meet this requirement, contractors must run numerous additional tests at a variety of velocities. This requirement places an enormous and unfair burden on those manufacturers who have not benefited from the no-bid awards given to the incumbent. Leveling the playing field requires that no manufacturer, including the incumbent, benefit from inside knowledge or use of test data from previous no-bid contracts.

3. We clearly understand that it is not a requirement to respond to all three configurations. This program includes a restrictive requirement for an excessive number of ballistic tests (a minimum of 614 plates). Since these plates are priced at approximately $500 each, this requirement will necessitate an excessive investment by a prospective contractor new to the BALCS Program of a minimum of $300,000 in material costs alone. This is a substantial investment, especially for a small business , and, perhaps more importantly, an investment not required of the incumbent contractor who has the benefit of prior test results paid for by government. Also of note: Offerors such as ourselves already participated in the 2006 BALCS solicitation, subsequently cancelled in late 2006, and invested more than $500,000 in material and manpower costs without a contract ever being awarded by SOCOM. TPG is being required to invest a comparable sum again in order to compete for the BALCS Program with no assurance of a contract award. We believe this is excessive and unnecessary for SOCOM to make an informed selection.

4. The "Questions and Answers" are not official and binding on either the Government or the contractor because they have not been published in amendments to the RFP, as required. This oversight, if unresolved prior to bid closing, will leave the RFP and contract susceptible to potential differing interpretations of several ambiguous requirements, including those that dealt with Section L and M. In short, it is impossible to fully comply with both the RFP and the questions and answers.

5. Question 47 has never been incorporated into the RFP and is in conflict with the RFP. Because the questions have not been incorporated by amendment, no one other than the incumbent has been obliged to prepare a SPEAR specific Quality Assurance Plan, a SPEAR specific FAT plan overview, and a SPEAR specific Lot Test Plan overview. These plans are not required by sections L and M. If the government does in fact require these plans to be submitted with proposals, industry needs at least 30 days to prepare these specific plans.

6. The BALCS procurement has not been set side for small businesses. In this case, the so-called "Rule of Two" is met (see FAR 19.502-2(b)). Nonetheless, the procurement is unrestricted. In comparison, other DOD body armor programs with similar end items and much higher quantities have been at least partially set-aside for small businesses. For example, the Army, which is buying very large quantities of body armor, uses a mix of small and large businesses to meet its total requirements.

This procurement, given the relatively modest number of plates required, should harness the creativity of small business by setting aside 100% of the contract for small businesses.

7. Questions 38-40 are not published on FEDBIZ OPS. Without the information contained in these questions we are unable to fully understand the government's requirements, and, as a result, risk submitting a proposal that will be downgraded or even eliminated by the source selection evaluation team.

In summary, TPG believes that several aspects of the BALCS procurement, as currently structured, are seriously flawed and must be addressed before the solicitation closing date. TPG respectfully renews its request that the closing date be extended by at least 30 days to address these matters and that this procurement be set aside in whole for small business.

Sincerely,

Scott J. McMichael
Chief Operating Officer
The Protective Group, Inc.

cc:
Karen Pera
Office of Small Business Programs
USSOCOM (SOAL-KS)

**Greenberg Traurig**

**Transmittal Cover Sheet**

| **From:** | **Tel:** | **E-Mail:** |
|---|---|---|
| **Richard Moorhouse** | **703.749.1311** | **Moorhouser@gtlaw.com** |

| **To:** | **Fax No:** | **Company:** | **Phone No.:** |
|---|---|---|---|
| Ms. Denise Green-Huneke | (813)826-7504 | U.S. Special Operations Command (SOCOM) | (813)826-4767 |

**File No.:** 073290.021600 (User No. 015334)

**Re:** Solicitation no. H92222-07-R-0011

**Date:** August 6, 2007 04:00 PM

**No. Pages:** Including Cover Sheet **10**

If you do not receive all pages properly, please call (703) 749-1381.

**Notes:**

**Also sent via:** ☐ US Mail ☐ Overnight ☐ Messenger ☐ Email ☒ No Other

The information contained in this transmission is attorney privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone collect and return the original message to us at the address below via the U.S. Postal Service. We will reimburse you for your postage. Thank you.

1750 Tysons Boulevard, Suite 1200, McLean, Virginia 22102 Phone: 703.749.1300 Fax: 703.749.1301

Greenberg Traurig

Richard Moorhouse
Tel. 703.749.1311
Fax 703.714.8308
Moorhouser@gtlaw.com

August 6, 2007

**VIA E-MAIL, FACSIMILE, AND FEDERAL EXPRESS**

Ms. C. Denise Green-Huneke
Contracting Officer
U.S. Special Operations Command (SOCOM)
HQ, Procurement Division
7701 Tampa Point Boulevard
MacDill AFB, FL 33621-5323
Tel.: 813-826-4767
Fax: 813-826-7504
E-mail: c.denise.green-huneke@socom.mil

**Re: Solicitation No. H92222-07-R-0011**

**AGENCY-LEVEL PROTEST UNDER FAR § 33.103**

Dear Ms. Huneke:

The Protective Group, Inc., 14040 N.W., 58th Court, Miami Lakes, FL 33014 ( Tel: 305-820-4240) ("TPG"), through its undersigned counsel, in accordance with FAR § 33.103 (e), hereby timely protests the issuance and further conduct of any acquisition under Solicitation No H92222-07-R-0011 for a family of ballistic plates for the Body Armor Load Carriage System ("BALCS") on the grounds that the Solicitation is materially defective, unduly restrictive of competition, and, therefore, does not provide a proper and lawful basis for award. This protest is timely submitted prior to the August 7, 2007 2:00 p.m. deadline for receipt of proposals. Id.

ALBANY
AMSTERDAM
ATLANTA
BOCA RATON
BOSTON
BRUSSELS*
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON*
LOS ANGELES
MIAMI
MILAN*
NEW JERSEY
NEW YORK
ORANGE COUNTY
ORLANDO
PHILADELPHIA
PHOENIX
ROME*
SACRAMENTO
SILICON VALLEY
TALLAHASSEE
TOKYO*
TYSONS CORNER
WASHINGTON, D.C.
WEST PALM BEACH
ZURICH
*Strategic Alliance
Tokyo-Office/Strategic Alliance

This protest immediately follows upon the Agency's (or "SOCOM") determination on August 6, 2007 to deny TPG's August 1, 2007 request for a 30-day extension in the current August 7 date for receipt of proposals in order for the Agency to take corrective action and to remedy the Solicitation's deficiencies, as discussed in TPG's August 1 letter (Attachment 1) and herein raised as specific grounds of protest. In accordance with FAR § 33.103 (f)(1) and the Competition In Contracting Act ("CICA"), 31 U.S.C. § 3553 (c) no award may be made until SOCOM resolves this protest.

## A. GROUNDS OF PROTEST

### 1. Violation of the "Rule of Two"

The so-called "Rule of Two", FAR § 19.502-2(b), requires an agency to totally or partially set aside a procurement for purposes of competition by small business concerns when there is a reasonable expectation that offers at reasonable prices will be submitted by at least two or more responsible small business concerns. As required by the terms of the Solicitation, TPG, a small business concern, notified the Agency of its intent to submit an offer. On information and belief, at least one other small business concern submitted a similar notice of intent.

Moreover, before issuing the Solicitation on a non-set aside basis, the Agency knew or should have determined from market research, requests for information ("RFIs"), or similar means that more than one small business concern fully capable of meeting the Solicitation's requirements existed, including among that number at least TPG itself and likely ArmorWorks, Inc., of Tempe, Arizona, which frequently competes against TPG in body armor procurements.

The Rule of Two is mandatory, not permissive. The Army has frequently set aside at least a portion of its large body armor procurements for small business competition. Because of that procurement precedent, and the existence of at least two fully capable potential small business offerors here, SOCOM must now amend the Solicitation to set it aside for exclusive small business competition. See Rochester Optical Mfg. Co., B-292247, et al., August 6, 2003, 2003 CPD ¶ 138.

**2. Undue Restrictions on Competition**

**a. Separate BALCS Production Facility**

SOCOM has placed an undue burden on competition by indicating during the one-on-one sessions with vendors that the manufacture of the BALCS ballistic plates must be performed in a facility other than one used to manufacture ESAPI or XSAPI body armor. While the Solicitation does not expressly state this requirement, the fact that SOCOM stated it as such during the vendor sessions has created confusion and ambiguity. If it is not a requirement, the Solicitation must be amended and clarified to that effect. If it is a requirement, TPG complains that it is unduly restrictive by placing an enormous burden on small business concerns that do not have the multiple manufacturing sites available to potential large business offerors.

**b. Scatter Gap Testing**

The Solicitation also imposes an unduly restrictive requirement for the BALCS ballistic plates to be subjected to Scatter Gap Testing, a requirement which is not found in any other DOD body armor solicitation or contract. As TPG pointed out in its August 1 letter,

contractors must run numerous additional tests at a variety of velocities to comply, placing an enormous and unfair burden on those manufacturers such as TPG who have not benefited from the testing data and information the incumbent contractor has learned through its previous sole-source award contracts, data and information which certainly has not been made available to the potential offerors here. The Solicitation must be amended to either delete the Scatter Gap Testing requirement or to disclose and provide the testing data and information to which only the incumbent has had access.

**c. Excessive Number of Ballistic Plate Tests**

The Solicitation is further materially defective because it calls for an excessive number of ballistic tests, involving a minimum of 614 plates. As each plate costs approximately $500, this will require a potential offeror to expend more than $ 300,000 in material costs simply in order to be able to compete. As TPG noted in its August 1 letter, not only is this a significant economic burden for small business concerns, it is fundamentally unfair and creates a markedly unlevel playing field because presumably the incumbent will not have to incur those costs because it enjoys the benefit of all prior testing data.

This requirement is doubly unfair to TPG which expended more than $500,000 in costs to compete for the subsequently-cancelled 2006 BALCS solicitation. Here, again, TPG must expend another substantial sum in order to compete for an award where the incumbent enjoys every procurement advantage. TPG complains that the testing of 614 or more plates is unnecessary and imposes an undue restriction on competition.

**3. Failure to Incorporate Questions and Answers**

Questions and answers ("Q/As") generated during the procurement process to date have in most cases (see below) been posted on FedBizops but have **not** been formally incorporated into the Solicitation via amendment as required by FAR § 15.206, again not a permissive or discretionary provision. In practical effect, if the Solicitation is not immediately amended to incorporate the Q/As prior to the closing date, this will leave the Solicitation and resultant contract dangerously susceptible to potential differing interpretations of several ambiguous but important requirements.

For example, Question 47 asked whether offerors would be required to prepare and submit with their proposals certain BALCS body armor-specific first article, lot test, and quality assurance plans which only the incumbent presumably has previously prepared. These plans are not required by sections L and M, but SOCOM indicated nonetheless in its answer that these plans were required to be included with and discussed in the proposals.

However, without formal incorporation, the Q/As simply are not binding upon the offerors. If SOCOM does in fact require the plans addressed in Q/A 47 to be submitted with proposals, TPG and all other potential offerors besides the incumbent will need at least 30 days to prepare these specific plans. Accordingly, the proposal deadline must be extended for this reason as well. Moreover, TPG complains that Q/As 38-40 have never been published, either in FedBizOps or via Solicitation amendment.

**B. CONCLUSION**

For the foregoing reasons, TPG requests that SOCOM sustain this protest on all grounds, suspend the receipt and evaluation of proposals, amend the Solicitation to extend the due date by at least 30 days, amend the Solicitation to make it a total small business set aside competition, and further amend the Solicitation to correct the material defects and deficiencies alleged in this protest.

Respectfully submitted,

Richard L. Moorhouse
John G. Stafford
David T. Hickey

Counsel for The Protective Group, Inc.

TPG

PROTECTING PATRIOTS

# THE PROTECTIVE GROUP, INC.

August 2, 2007

**VIA FEDERAL EXPRESS**

Ms. Denise Green-Huneke
Contracting Officer
U.S. Special Operations Command
Headquarters, Procurement Division
7701 Tampa Point Boulevard
MacDill AFB, FL 33621-5323

Re: Solicitation No. H92222-07-R-0011

Dear Ms. Huneke:

This letter follows our earlier e-mail and phone conversations regarding the referenced SOCOM solicitation for a family of ballistic plates for the body armor load carriage system ("BALCS").

As you know from our prior discussions, The Protective Group ("TPG") is heavily involved in producing state-of-the-art body armor for the U.S. Warfighter. TPG is, for example, currently the second largest supplier of ESAPI body armor to the U.S. Army. TPG intends to bid on the solicitation and submitted our notice of intent to submit a BALCS proposal, as required by the RFP. TPG believes, however, that several aspects of the BALCS solicitation require your immediate attention and corrective action in order for us to continue our participation in this important program. As we have previously explained, these items include:

1. It was expressed to us during the One-On-One Vendor Sessions that the manufacturing for BALCS body armor occur in a facility other than one used to manufacture ESAPI or XSAPI body armor. To date, this requirement has yet to be documented in the solicitation documents. If this is a requirement or desire by the government, it places an enormous burden on small businesses that do not have the multiple manufacturing sites available to some of the large businesses; some of whom have benefited from multiple sole source SPEAR contracts from the government.

Chieftain Safety Manufacturing
14040 N.W. 58th Court, Miami Lakes, FL 33014 / Tel: (305) 820-4240 / Fax: (305) 820-4290
www.protectivegroup.com
Protective Materials Company

ATTACHMENT A

2. The solicitation recently added Shatter Gap Testing, which constitutes excessively restrictive BALCS body armor testing requirements that are not found in any other DOD body armor solicitation or contract. In order to meet this requirement, contractors must run numerous additional tests at a variety of velocities. This requirement places an enormous and unfair burden on those manufacturers who have not benefited from the no-bid awards given to the incumbent. Leveling the playing field requires that no manufacturer, including the incumbent, benefit from inside knowledge or use of test data from previous no-bid contracts.

3. We clearly understand that it is not a requirement to respond to all three configurations. This program includes a restrictive requirement for an excessive number of ballistic tests (a minimum of 614 plates). Since these plates are priced at approximately $500 each, this requirement will necessitate an excessive investment by a prospective contractor new to the BALCS Program of a minimum of $300,000 in material costs alone. This is a substantial investment, especially for a small business, and, perhaps more importantly, an investment not required of the incumbent contractor who has the benefit of prior test results paid for by government. Also of note: Offerors such as ourselves already participated in the 2006 BALCS solicitation, subsequently cancelled in late 2006, and invested more than $500,000 in material and manpower costs without a contract ever being awarded by SOCOM. TPG is being required to invest a comparable sum again in order to compete for the BALCS Program with no assurance of a contract award. We believe this is excessive and unnecessary for SOCOM to make an informed selection.

4. The "Questions and Answers" are not official and binding on either the Government or the contractor because they have not been published in amendments to the RFP, as required. This oversight, if unresolved prior to bid closing, will leave the RFP and contract susceptible to potential differing interpretations of several ambiguous requirements, including those that dealt with Section L and M. In short, it is impossible to fully comply with both the RFP and the questions and answers.

5. Question 47 has never been incorporated into the RFP and is in conflict with the RFP. Because the questions have not been incorporated by amendment, no one other than the incumbent has been obliged to prepare a SPEAR specific Quality Assurance Plan, a SPEAR specific FAT plan overview, and a SPEAR specific Lot Test Plan overview. These plans are not required by sections L and M. If the government does in fact require these plans to be submitted with proposals, industry needs at least 30 days to prepare these specific plans.

6. The BALCS procurement has not been set side for small businesses. In this case, the so-called "Rule of Two" is met (see FAR 19.502-2(b)). Nonetheless, the procurement is unrestricted. In comparison, other DOD body armor programs with similar end items and much higher quantities have been at least partially set-aside for small businesses. For example, the Army, which is buying very large quantities of body armor, uses a mix of small and large businesses to meet its total requirements.

This procurement, given the relatively modest number of plates required, should harness the creativity of small business by setting aside 100% of the contract for small businesses.

7. Questions 38-40 are not published on FEDBIZ OPS. Without the information contained in these questions we are unable to fully understand the government's requirements, and, as a result, risk submitting a proposal that will be downgraded or even eliminated by the source selection evaluation team.

In summary, TPG believes that several aspects of the BALCS procurement, as currently structured, are seriously flawed and must be addressed before the solicitation closing date. TPG respectfully renews its request that the closing date be extended by at least 30 days to address these matters and that this procurement be set aside in whole for small business.

Sincerely,

Scott J. McMichael
Chief Operating Officer
The Protective Group, Inc.

cc:
Karen Pera
Office of Small Business Programs
USSOCOM (SOAL-KS)