# Greenberg Traurig

## Transmittal Cover Sheet

| From: | Tel: | E-Mail: |
|---|---|---|
| Richard Moorhouse | 703.749.1311 | Moorhouser@gtlaw.com |

| To: | Fax No: | Company: | Phone No.: |
|---|---|---|---|
| Office of the General Counsel | (202)512-9749 | U.S. Government Accountability Office (GAO) | (202)512-3000 |
| Ms. Denise Green-Huneke | (813)826-7504 | U.S. Special Operations Command (SOCOM) | (813)826-4767 |

**File No.:** 073290.021600 (User No. 015334)

**Re:** Protest of The Protective Group Under U.S. Special Operations Command Solicitation No. H92222-07-R-0011

**Date:** August 14, 2007

**No. Pages:** Including Cover Sheet 19

If you do not receive all pages properly, please call (703) 749-1381.

**Notes:**

**Also sent via:** ☐ US Mail ☐ Overnight ☐ Messenger ☐ Email ☒ No Other

The information contained in this transmission is attorney privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone collect and return the original message to us at the address below via the U.S. Postal Service. We will reimburse you for your postage. Thank you.

1750 Tysons Boulevard, Suite 1200, McLean, Virginia 22102 Phone: 703.749.1300 Fax: 703.749.1301

*MIA 179705570v1 8/14/2007*

Greenberg Traurig

Richard Moorhouse
Tel. 703.749.1311
Fax 703.714.8308
Moorhouser@gtlaw.com

August 14, 2007

**VIA FACSIMILE (202) 512-9749**

Office of the General Counsel
U.S. Government Accountability Office (GAO)
441 G Street, N.W.,
Washington, D.C. 20548

Attn: Procurement Law Control Group (PLCG)

Re: **Protest of The Protective Group Under U.S. Special Operations Command Solicitation No. H92222-07-R-0011**

**PREAWARD PROTEST/CICA STAY OF AWARD REQUIRED**

Dear Sirs:

The Protective Group, Inc., 14040 N.W., 58th Court, Miami Lakes, FL 33014 (Tel: 305-820-4240) ("TPG"), through its undersigned counsel, hereby protests the failure of the U.S. Special Operations Command (the "Agency" or "SOCOM") to take action to correct the material deficiencies contained in the subject Solicitation as raised by TPG in its agency-level protest filed with SOCOM on August 6, 2007. Attachment A. TPG's agency-level protest followed closely upon TPG's letter of August 1 to the SOCOM contracting officer requesting relief and an extension of 30 days in the due date for receipt of proposals from the scheduled August 7, 2:00 p.m. date and time. Attachment B. This extension was also sought by TPG in its agency-level protest.

The Agency took no corrective action and there was no extension of the as-scheduled proposal submission deadline. Therefore, since it appears that SOCOM has received and

ALBANY
AMSTERDAM
ATLANTA
BOCA RATON
BOSTON
BRUSSELS*
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON*
LOS ANGELES
MIAMI
MILAN*
NEW JERSEY
NEW YORK
ORANGE COUNTY
ORLANDO
PHILADELPHIA
PHOENIX
ROME*
SACRAMENTO
SILICON VALLEY
TALLAHASSEE
TOKYO*
TYSONS CORNER
WASHINGTON, D.C.
WEST PALM BEACH
ZURICH
*Strategic Alliance
Tokyo-Office/Strategic Alliance

intends to evaluate proposals under a solicitation which TPG has alleged provides no lawful basis to make a contract award, TPG timely files this protest with your Office within 10 days of the Agency's apparent initial adverse action, its failure to extend the August 7 proposal closing date. 4 CFR § 21.2 (a) (3); *see* Lifecare Management Partners, B-297078, B-297078.2, Nov. 21, 2005, 2006 CPD ¶ 8.

TPG is a prospective offeror to compete for an award if the deficiencies which are the subject of this protest are corrected. 4 CFR § 21.0 (a). The grounds for this protest to your Office are essentially the same as set forth in TPG's August 6 agency-level protest.

A complete copy of the protest with all attachments is being simultaneously served on the contracting officer:

Ms. C. Denise Green-Huneke
U.S. Special Operations Command
HQ, Procurement Division
7701 Tampa Point Boulevard
MacDill AFB, FL 33621-5323
Tel.: 813-826-4767
Fax: 813-826-7504

Since this protest is filed prior to award, the Agency is precluded from making any award until your Office issues your decision. 4 CFR § 21.6; 31 U.S.C. § 3553 (c).

## A. BACKGROUND

The procurement is for the acquisition of a family of ballistic armor plates used in the Body Armor Load Carriage System ("BALCS"). The subject Solicitation No. H92222-07-R-0011 was originally issued by SOCOM on May 9, 2007, with a proposal closing date of June 8, 2007. By subsequent amendment, the closing date was extended until August 7. The

Solicitation calls for the award of a single or multiple contracts within SOCOM's discretion over a total five-year period to supply BALCS ballistic plates in various sizes and configurations ("cuts") on an indefinite delivery/indefinite quantity ("ID/IQ") basis. First article testing is required for ballistic plates to be delivered during the first ordering period. Award(s) will be made on a best value basis under the following three major criteria: (1) Technical/Management (comprising three subfactors: Product Demonstration Models, Technical Approach, and Management Approach); (2) Past Performance; and (3) Price. Technical Management is stated to be significantly more important than Past Performance, which in turn is stated to be significantly more important than Price.

The Solicitation is being conducted on an unrestricted basis and has not been set aside either in whole or in part for small business competition. The Solicitation required all potential offerors to submit a Notice of Intent ("NOI") regarding their intended participation, and no offer could be made absent the submission of an NOI. TPG submitted an NOI.

At the outset of the procurement and before issuance of the Solicitation, SOCOM conducted an "Industry Day" meeting with potential offerors which resulted in numerous questions being generated by the offerors to which SOCOM responded. These questions and answers ("Q/As") were published on the website SOCOM maintained for the procurement but have not been incorporated into the Solicitation via formal amendment.

On August 1, 2007, TPG expressed its concerns to SOCOM that the Solicitation had not been set aside for small business competition. Attachment B. TPG is a small business concern and made its status known to SOCOM. TPG believed that other small business concerns were

interested in participating on a set aside basis and in fact had submitted NOIs or at least other expressions of interest on the website. TPG was also concerned that the Solicitation was imposing various testing and other requirements which would be onerous to small business concerns especially if they had to compete on an unrestricted basis with large business concerns. These requirements had not been previously imposed in any other body armor procurements, and TPG believed that they would only serve to favor the incumbent contractor, a large business concern, because it would already have in its possession the requisite test data that all other offerors could only generate through expensive test procedures.

TPG also expressed concern that a number of the Q/As published on the website conveyed information which was inconsistent with or made ambiguous requirements set forth in the Solicitation, but that the Q/As had not been formally incorporated into the Solicitation so as to obligate the offerors or otherwise to establish any sort of order of precedence between the requirements as stated in the Solicitation and as addressed in the Q/As. TPG requested a 30-day extension in order to be able to prepare and submit a competitive proposal and to afford SOCOM the opportunity to address the small business set aside issue.

When the Agency indicated it would not extend the Solicitation, TPG filed a timely agency-level protest on August 6. Attachment A. Since there is no indication that the Agency has or will take any corrective action, and the Solicitation was not extended, with the August 7 closing date for receipt of proposals apparently occurring as scheduled, this protest to your Office now follows.

**B. GROUNDS OF PROTEST**

**1. Violation of the "Rule of Two"**

SOCOM has clearly violated the so-called "Rule of Two," FAR § 19.502-2(b), which requires an agency to totally or partially set aside a procurement for purposes of competition by small business concerns when there is a reasonable expectation that offers at reasonable prices will be submitted by at least two or more responsible small business concerns. As required by the terms of the Solicitation, TPG, a small business concern, notified the Agency of its intent to submit an offer via the requisite NOI. On information and belief, at least one other small business concern submitted an NOI.

Moreover, before issuing the Solicitation on a non-set aside basis, the Agency knew or should have determined from market research, requests for information ("RFIs"), or similar means that more than one small business concern fully capable of meeting the Solicitation's requirements existed, including TPG itself and at least ArmorWorks, Inc., of Tempe, Arizona, as well, which frequently competes against TPG in body armor procurements, if not other potential small business offerors. As TPG reminded the Agency, the Rule of Two is mandatory, not permissive. The Army has frequently set aside at least a portion of its large body armor procurements for small business competition. Because of that procurement precedent, and the existence of at least two fully capable potential small business offerors here, SOCOM must now amend the Solicitation to set it aside for exclusive small business competition. *See* Rochester Optical Mfg. Co., B-292247, *et al.*, August 6, 2003, 2003 CPD ¶ 138. This ground of protest must be sustained.

2. Undue Restrictions on Competition

a. Separate BALCS Production Facility

TPG asserts that SOCOM has placed an undue burden on competition by indicating during the Industry Day meetings with vendors that the manufacture of the BALCS ballistic plates must be performed in a facility other than one used by the contractor to manufacture other types of body armor plates. The Solicitation does not expressly state this requirement, but the fact that SOCOM stated it as such during the Industry Day meetings has created confusion and ambiguity. If it is not a requirement, the Solicitation must be amended and clarified to that effect. If it is intended to be a material performance requirement, TPG complains that it is unduly restrictive by placing an enormous burden on small business concerns that do not have the multiple manufacturing sites otherwise available to potential large business offerors. This ground of protest must also be sustained.

b. "Shatter Gap" Testing

The Solicitation also imposes an unduly restrictive requirement for the BALCS ballistic plates by requiring "Shatter Gap" testing, a requirement which is not found in any other DOD body armor solicitation or contract. This type of testing requires a ballistic plate to be struck ("shot") by bullets traveling at different velocities. As TPG pointed out in its August 1 letter and in its agency-level protest, this now requires offerors to run numerous additional tests at a variety of velocities in order to comply. This is unfair because it places an enormous burden on those manufacturers such as TPG who have not benefited from the testing data and information the incumbent contractor has learned through its previous sole-source award contracts. Such

data certainly has not been made available to the potential offerors here. The Solicitation must be amended to either delete the Shatter Gap testing requirement or be amended to provide the testing data and information to which only the incumbent has had access.

**c. Excessive Number of Ballistic Plate Tests**

The Solicitation is further materially defective because it calls for an excessive number of ballistic tests, involving a minimum number of 614 plates. As each plate costs approximately $500, this will require a potential offeror to expend more than $300,000 in material costs simply to be able to qualify to compete. As TPG noted in its August 1 letter and in its protest, not only is this a significant economic burden for small business concerns, it is fundamentally unfair and places an undue restriction on competition. Presumably the incumbent will not have to incur those costs because it enjoys the benefit of all prior test data.

This requirement is even more unfair to TPG which expended more than $500,000 in costs to compete for the subsequently-cancelled 2006 BALCS solicitation. Here, again, TPG must expend another substantial sum in order to compete for an award where the incumbent alone enjoys every advantage. TPG complains that the testing of 614 or more plates is unnecessary and imposes an undue restriction on competition. This ground of protest must also be sustained.

**3. Failure to Incorporate Questions and Answers**

As noted, Q/As generated during the procurement process to date have in most cases (see below) been posted on the website but have not been formally incorporated into the Solicitation via amendment. As TPG warned the Agency in its August 6 protest, if the

Solicitation is not amended to incorporate the Q/As, this will leave the Solicitation and resultant contract dangerously susceptible to potential differing interpretations of several ambiguous but important requirements. For example, Question 47 asked whether offerors would be required to prepare and submit with their proposals certain BALCS body armor-specific first article, lot test, and quality assurance plans which only the incumbent presumably has previously prepared. These plans are not required by sections L and M, but SOCOM indicated nonetheless in its answer that these plans were required to be included with and discussed in the proposals.

However, without formal incorporation, the Q/As simply are not binding upon the offerors. If SOCOM does in fact require the plans addressed in Q/A 47 to be submitted with proposals, TPG and all other potential offerors besides the incumbent will need at least 30 days to prepare these specific plans. Accordingly, the procurement must be reopened and the proposal deadline extended. Also, TPG has observed and informed the Agency that Q/As 38-40 have never been published even on the procurement website. This ground of protest must also be sustained.

C. **CONCLUSION**

For the foregoing reasons, TPG requests that the Comptroller General sustain this protest on all grounds and direct SOCOM to: reopen the procurement; amend the Solicitation to make it a total small business set aside and to correct the material deficiencies noted in this protest; extend the due date by at least 30 days; and to make an award consistent with applicable law and regulation. 4 CFR § 21.8. In sustaining the protest, the Comptroller

General is also requested to award TPG its costs of filing and pursuing the protest, including attorneys' fees. Id.

Respectfully submitted,

Richard L. Moorhouse
John G. Stafford
David T. Hickey
Sean M. Connolly

Counsel for The Protective Group, Inc.

cc: **Via Facsimile and Federal Express**

Ms. C. Denise Green-Huneke
Contracting Officer
U.S. Special Operations Command (SOCOM)
HQ, Procurement Division
7701 Tampa Point Boulevard
MacDill AFB, FL 33621-5323
Tel.: 813-826-4767
Fax: 813-826-7504

# ATTACHMENT A

Greenberg Traurig

Richard Moorhouse
Tel. 703.749.1311
Fax 703.714.8308
Moorhouser@gtlaw.com

August 6, 2007

VIA E-MAIL, FACSIMILE, AND FEDERAL EXPRESS

Ms. C. Denise Green-Huneke
Contracting Officer
U.S. Special Operations Command (SOCOM)
HQ, Procurement Division
7701 Tampa Point Boulevard
MacDill AFB, FL 33621-5323
Tel.: 813-826-4767
Fax: 813-826-7504
E-mail: c.denise.green-huneke@socom.mil

Re: **Solicitation No. H92222-07-R-0011**

**AGENCY-LEVEL PROTEST UNDER FAR § 33.103**

Dear Ms. Huneke:

The Protective Group, Inc., 14040 N.W., 58th Court, Miami Lakes, FL 33014 ( Tel: 305-820-4240) ("TPG"), through its undersigned counsel, in accordance with FAR § 33.103 (e), hereby timely protests the issuance and further conduct of any acquisition under Solicitation No H92222-07-R-0011 for a family of ballistic plates for the Body Armor Load Carriage System ("BALCS") on the grounds that the Solicitation is materially defective, unduly restrictive of competition, and, therefore, does not provide a proper and lawful basis for award. This protest is timely submitted prior to the August 7, 2007 2:00 p.m. deadline for receipt of proposals. Id.

ALBANY
AMSTERDAM
ATLANTA
BOCA RATON
BOSTON
BRUSSELS*
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON*
LOS ANGELES
MIAMI
MILAN*
NEW JERSEY
NEW YORK
ORANGE COUNTY
ORLANDO
PHILADELPHIA
PHOENIX
ROME*
SACRAMENTO
SILICON VALLEY
TALLAHASSEE
TOKYO*
TYSONS CORNER
WASHINGTON, D.C.
WEST PALM BEACH
ZURICH
*Strategic Alliance
Tokyo-Office/Strategic Alliance

This protest immediately follows upon the Agency's (or "SOCOM") determination on August 6, 2007 to deny TPG's August 1, 2007 request for a 30-day extension in the current August 7 date for receipt of proposals in order for the Agency to take corrective action and to remedy the Solicitation's deficiencies, as discussed in TPG's August 1 letter (Attachment 1) and herein raised as specific grounds of protest. In accordance with FAR § 33.103 (f)(1) and the Competition In Contracting Act ("CICA"), 31 U.S.C. § 3553 (c) no award may be made until SOCOM resolves this protest.

A. **GROUNDS OF PROTEST**

**1. Violation of the "Rule of Two"**

The so-called "Rule of Two", FAR § 19.502-2(b), requires an agency to totally or partially set aside a procurement for purposes of competition by small business concerns when there is a reasonable expectation that offers at reasonable prices will be submitted by at least two or more responsible small business concerns. As required by the terms of the Solicitation, TPG, a small business concern, notified the Agency of its intent to submit an offer. On information and belief, at least one other small business concern submitted a similar notice of intent.

Moreover, before issuing the Solicitation on a non-set aside basis, the Agency knew or should have determined from market research, requests for information ("RFIs"), or similar means that more than one small business concern fully capable of meeting the Solicitation's requirements existed, including among that number at least TPG itself and likely ArmorWorks, Inc., of Tempe, Arizona, which frequently competes against TPG in body armor procurements.

The Rule of Two is mandatory, not permissive. The Army has frequently set aside at least a portion of its large body armor procurements for small business competition. Because of that procurement precedent, and the existence of at least two fully capable potential small business offerors here, SOCOM must now amend the Solicitation to set it aside for exclusive small business competition. See Rochester Optical Mfg. Co., B-292247, et al., August 6, 2003, 2003-CPD ¶ 138.

**2. Undue Restrictions on Competition**

**a. Separate BALCS Production Facility**

SOCOM has placed an undue burden on competition by indicating during the one-on-one sessions with vendors that the manufacture of the BALCS ballistic plates must be performed in a facility other than one used to manufacture ESAPI or XSAPI body armor. While the Solicitation does not expressly state this requirement, the fact that SOCOM stated it as such during the vendor sessions has created confusion and ambiguity. If it is not a requirement, the Solicitation must be amended and clarified to that effect. If it is a requirement, TPG complains that it is unduly restrictive by placing an enormous burden on small business concerns that do not have the multiple manufacturing sites available to potential large business offerors.

**b. Scatter Gap Testing**

The Solicitation also imposes an unduly restrictive requirement for the BALCS ballistic plates to be subjected to Scatter Gap Testing, a requirement which is not found in any other DOD body armor solicitation or contract. As TPG pointed out in its August 1 letter,

contractors must run numerous additional tests at a variety of velocities to comply, placing an enormous and unfair burden on those manufacturers such as TPG who have not benefited from the testing data and information the incumbent contractor has learned through its previous sole-source award contracts, data and information which certainly has not been made available to the potential offerors here. The Solicitation must be amended to either delete the Scatter Gap Testing requirement or to disclose and provide the testing data and information to which only the incumbent has had access.

**c. Excessive Number of Ballistic Plate Tests**

The Solicitation is further materially defective because it calls for an excessive number of ballistic tests, involving a minimum of 614 plates. As each plate costs approximately $500, this will require a potential offeror to expend more than $ 300,000 in material costs simply in order to be able to compete. As TPG noted in its August 1 letter, not only is this a significant economic burden for small business concerns, it is fundamentally unfair and creates a markedly unlevel playing field because presumably the incumbent will not have to incur those costs because it enjoys the benefit of all prior testing data.

This requirement is doubly unfair to TPG which expended more than $500,000 in costs to compete for the subsequently-cancelled 2006 BALCS solicitation. Here, again, TPG must expend another substantial sum in order to compete for an award where the incumbent enjoys every procurement advantage. TPG complains that the testing of 614 or more plates is unnecessary and imposes an undue restriction on competition.

3. Failure to Incorporate Questions and Answers

Questions and answers ("Q/As") generated during the procurement process to date have in most cases (see below) been posted on FedBizops but have **not** been formally incorporated into the Solicitation via amendment as required by FAR § 15.206, again not a permissive or discretionary provision. In practical effect, if the Solicitation is not immediately amended to incorporate the Q/As prior to the closing date, this will leave the Solicitation and resultant contract dangerously susceptible to potential differing interpretations of several ambiguous but important requirements.

For example, Question 47 asked whether offerors would be required to prepare and submit with their proposals certain BALCS body armor-specific first article, lot test, and quality assurance plans which only the incumbent presumably has previously prepared. These plans are not required by sections L and M, but SOCOM indicated nonetheless in its answer that these plans were required to be included with and discussed in the proposals.

However, without formal incorporation, the Q/As simply are not binding upon the offerors. If SOCOM does in fact require the plans addressed in Q/A 47 to be submitted with proposals, TPG and all other potential offerors besides the incumbent will need at least 30 days to prepare these specific plans. Accordingly, the proposal deadline must be extended for this reason as well. Moreover, TPG complains that Q/As 38-40 have never been published, either in FedBizOps or via Solicitation amendment.

**B. CONCLUSION**

For the foregoing reasons, TPG requests that SOCOM sustain this protest on all grounds, suspend the receipt and evaluation of proposals, amend the Solicitation to extend the due date by at least 30 days, amend the Solicitation to make it a total small business set aside competition, and further amend the Solicitation to correct the material defects and deficiencies alleged in this protest.

Respectfully submitted,

Richard L. Moorhouse
John G. Stafford
David T. Hickey

Counsel for The Protective Group, Inc.

# ATTACHMENT B

TPG

THE PROTECTIVE GROUP, INC.

August 2, 2007

**VIA FEDERAL EXPRESS**

Ms. Denise Green-Huneke
Contracting Officer
U.S. Special Operations Command
Headquarters, Procurement Division
7701 Tampa Point Boulevard
MacDill AFB, FL 33621-5323

Re: Solicitation No. H92222-07-R-0011

Dear Ms. Huneke:

This letter follows our earlier e-mail and phone conversations regarding the referenced SOCOM solicitation for a family of ballistic plates for the body armor load carriage system ("BALCS").

As you know from our prior discussions, The Protective Group ("TPG") is heavily involved in producing state-of-the-art body armor for the U.S. Warfighter. TPG is, for example, currently the second largest supplier of ESAPI body armor to the U.S. Army. TPG intends to bid on the solicitation and submitted our notice of intent to submit a BALCS proposal, as required by the RFP. TPG believes, however, that several aspects of the BALCS solicitation require your immediate attention and corrective action in order for us to continue our participation in this important program. As we have previously explained, these items include:

1. It was expressed to us during the One-On-One Vendor Sessions that the manufacturing for BALCS body armor occur in a facility other than one used to manufacture ESAPI or XSAPI body armor. To date, this requirement has yet to be documented in the solicitation documents. If this is a requirement or desire by the government, it places an enormous burden on small businesses that do not have the multiple manufacturing sites available to some of the large businesses; some of whom have benefited from multiple sole source SPEAR contracts from the government.



Attachment A

2. The solicitation recently added Shatter Gap Testing, which constitutes excessively restrictive BALCS body armor testing requirements that are not found in any other DOD body armor solicitation or contract. In order to meet this requirement, contractors must run numerous additional tests at a variety of velocities. This requirement places an enormous and unfair burden on those manufacturers who have not benefited from the no-bid awards given to the incumbent. Leveling the playing field requires that no manufacturer, including the incumbent, benefit from inside knowledge or use of test data from previous no-bid contracts.

3. We clearly understand that it is not a requirement to respond to all three configurations. This program includes a restrictive requirement for an excessive number of ballistic tests (a minimum of 614 plates). Since these plates are priced at approximately $500 each, this requirement will necessitate an excessive investment by a prospective contractor new to the BALCS Program of a minimum of $300,000 in material costs alone. This is a substantial investment, especially for a small business, and, perhaps more importantly, an investment not required of the incumbent contractor who has the benefit of prior test results paid for by government. Also of note: Offerors such as ourselves already participated in the 2006 BALCS solicitation, subsequently cancelled in late 2006, and invested more than $500,000 in material and manpower costs without a contract ever being awarded by SOCOM. TPG is being required to invest a comparable sum again in order to compete for the BALCS Program with no assurance of a contract award. We believe this is excessive and unnecessary for SOCOM to make an informed selection.

4. The "Questions and Answers" are not official and binding on either the Government or the contractor because they have not been published in amendments to the RFP, as required. This oversight, if unresolved prior to bid closing, will leave the RFP and contract susceptible to potential differing interpretations of several ambiguous requirements, including those that dealt with Section L and M. In short, it is impossible to fully comply with both the RFP and the questions and answers.

5. Question 47 has never been incorporated into the RFP and is in conflict with the RFP. Because the questions have not been incorporated by amendment, no one other than the incumbent has been obliged to prepare a SPEAR specific Quality Assurance Plan, a SPEAR specific FAT plan overview, and a SPEAR specific Lot Test Plan overview. These plans are not required by sections L and M. If the government does in fact require these plans to be submitted with proposals, industry needs at least 30 days to prepare these specific plans.

6. The BALCS procurement has not been set side for small businesses. In this case, the so-called "Rule of Two" is met (see FAR 19.502-2(b)). Nonetheless, the procurement is unrestricted. In comparison, other DOD body armor programs with similar end items and much higher quantities have been at least partially set-aside for small businesses. For example, the Army, which is buying very large quantities of body armor, uses a mix of small and large businesses to meet its total requirements.

This procurement, given the relatively modest number of plates required, should harness the creativity of small business by setting aside 100% of the contract for small businesses.

7. Questions 38-40 are not published on FEDBIZ OPS. Without the information contained in these questions we are unable to fully understand the government's requirements, and, as a result, risk submitting a proposal that will be downgraded or even eliminated by the source selection evaluation team.

In summary, TPG believes that several aspects of the BALCS procurement, as currently structured, are seriously flawed and must be addressed before the solicitation closing date. TPG respectfully renews its request that the closing date be extended by at least 30 days to address these matters and that this procurement be set aside in whole for small business.

Sincerely,

Scott J. McMichael
Chief Operating Officer
The Protective Group, Inc.

cc:
Karen Pera
Office of Small Business Programs
USSOCOM (SOAL-KS)

**Declaration of Richard W. Elder**

**GAO Bid Protest B-310018**

I, Richard W. Elder, declare as follows, pursuant to 28 U.S.C. § 1746;

1. During the period of 3 AUG 2007, through the present, I have served as an Assistant Program Manager in support of the Program Manager Special Operations Forces (SOF) Survival Systems working in direct support of the United States Special Operations Command (USSOCOM). My duties have included work in the acquisition, test and evaluation, development, and sustainment of individual protection systems utilized by the SOF personnel, specifically ballistic protection. With regards to Solicitation H92222-07-R-0011, I have served as the Assistant Program Manager (APM) and member of the Source Selection Evaluation Board (SSEB) for this solicitation and fulfill the duties assigned to the SSEB Test Activity as outlined in the Source Selection Plan (SSP).

2. The end product sought by this solicitation is a family of ballistic plates which meet the specific performance requirements outlined in support of USSOCOM. The performance required of this equipment is specifically tied to mission profiles and a designated threat matrix which makes this equipment truly SOF unique. It is the diverse mission profiles found in a command consisting of special operators from four different military services which mandates the ballistic capabilities requested in Solicitation H92222-07-R-0011.

3. The following is a technical description of the testing required in order to ensure performance in all USSOCOM mission profiles and terrestrial extremes.

A. Shatter gap is a ballistic phenomenon well known to the body armor industry which occurs when hardened (brittle) steel core penetrators impact and defeat hard faced materials such as ceramics and steel armor plates at velocities significantly lower than the armor is designed to defeat. This occurs when the impact energy of the lower projectile velocity does not have enough force to fracture the projectile core as it would when fired at a higher velocity. The projectile core remains relatively intact and is able to penetrate the hardened armor face and backing material. If shatter gap is present, it usually occurs at velocities several hundred ft/sec below the velocity the armor was designed to defeat. Several hundred ft/sec below the velocity the armor was designed to defeat translates to a stand off distance of several hundred meters, which is a common scenario on the battlefield. USSOCOM technical evaluators must determine whether the plates submitted for solicitation H92222-07-R-0011 consist of materials that exhibit shatter gap characteristics. If shatter gap is present in the technologies submitted under the above referenced solicitation, this could potentially leave SOF operators vulnerable in a common battlefield scenario, which is unacceptable. Vulnerability in body armor means potential death.

B. USSOCOM technical evaluators also require test data that show the plates and materials submitted under the above solicitation do not degrade in ballistic performance when exposed to common battlefield environments. These environments include:

Hot "high" condition: the armor samples will be placed in an oven at 160+5 degrees Fahrenheit for a minimum of 24 hours and tested immediately upon removal from the oven.

Cold "low" condition: the armor samples will be placed in a cold box at -60-5 degrees Fahrenheit for a minimum of 24 hours and tested immediately upon removal from the cold box.

Saltwater immersion: the armor samples will be submerged in saltwater for a minimum of 24 hours and tested within 24 hours from removal.

Chlorine water (training): the armor samples will be submerged in chlorine water for a minimum of 24 hours and tested within 24 hours from removal.

Motor oil exposure: the armor samples will be submerged in 10w-40w motor oil for a minimum of 8 hours and tested within 24 hours from removal.

Gasoline exposure: the armor samples will be submerged in gasoline for a minimum of 8 hours and tested within 24 hours from removal.

Breakfree (multi-purpose lubricant) exposure: the armor samples will be submerged in breakfree for a minimum of 8 hours and tested within 24 hours from removal.

Durability (drop test): the armor samples will be subjected to drop test both inside and outside of the vest carrier. Following the second drop outside the carrier the armor sample will undergo a ballistic test.

If ballistic degradation is present in the technologies submitted under the above referenced solicitation when exposed to common battlefield environments this could potentially leave SOF operators vulnerable in a common battlefield scenario, which is unacceptable. As stated above, vulnerability in body armor means potential death.

4. Based on all of the above information, a reasonable amount of ballistic data is required to make a technical evaluation. The data must be sufficient enough to establish any negative or positive trends in the performance of the armor samples submitted. To date, the common practice for USSOCOM is that body armor plates statistically demonstrate a lower bound probability of partial penetration of at least 0.9 with an 80% confidence level. This is achieved by testing 16 plates and attaining 16 partial penetrations. Based on the numerous requirements outlined above, and the numerous configurations and cuts, 16

plates for each condition and threat to achieve this desired confidence level was thought to be unreasonable. The amount of data required for this evaluation was well below the desired reliability and confidence levels but sufficient enough to make a technical evaluation. For example, 6 plates are the minimum required test data against the APM2 projectile in the environmental conditions outlined above. This data results in a lower bound probability of partial penetration of 0.75 with an 80% confidence level. Against lesser threats at ambient, the minimum required test data is as low as 4 plates. This results in a lower bound probability of partial penetration of 0.65 with an 80% confidence level; again well below the desired reliability and confidence level but sufficient enough to make a technical evaluation. The minimum required test data for the shatter gap requirement is 6 plates in four different velocity ranges. Reducing the number of plates required for testing any further would result in too few data points to be able to make a reasonable assessment of performance of the armor samples.

5. The USSOCOM requirement is for a family of ballistic plates which consists of three different plate technologies in a variety of cuts. The three different configurations are as follows: BALCS Baseline Configuration, Tactical Stand Alone Ballistic Configuration and Low Visibility Ballistic Configuration. The three configurations are significantly different in thickness, areal density, volume, and in ballistic requirements. Furthermore, the various cuts in each configuration are significantly different, resulting in a reduced strike face area and volume of ballistic material. Because the various cuts in each configuration are significantly different it is unknown whether offerors will submit the same technical design for each cut. Based on the above information, USSOCOM technical evaluators require ballistic data for each configuration as well as each cut.

Executed on September 12, 2007, Tampa, Florida.

Richard W. Elder
APM-SOF Warrior
PM-SSS

# Declaration of Verdetta J. Weaver

## GAO Bid Protest B-310018

I, Verdetta J. Weaver, declare as follows, pursuant to 28 U.S.C. § 1746;

Manufacture of BALCS Ballistic Plates:

1. During the period 2004 through 2005, I served as a Contract Specialist, and from 2005 to the present, I have served as a Warranted Contract Specialist for the Directorate of Procurement, for the United States Special Operations Command (USSOCOM). My duties include executing and administering contracts.

2. I supported the Special Operations Forces Personal Equipment Advanced Requirement (SPEAR) Program, as the Contract Specialist, from April 2004 through June 2007.

3. I prepared Solicitation H92222-07-R-0011 for the SPEAR Body Armor Load Carriage System (BALCS) Family of Ballistic Plates requirement. While preparing the solicitation, I collaborated and communicated daily with the SPEAR Project Management Officer (PMO).

4. Additionally, I prepared Solicitation H92222-06-R-0023 for the SPEAR BALCS Family of Ballistic Plates requirement. This solicitation preceded Solicitation H92222-07-R-0011 and was cancelled upon completion of the preliminary evaluation of the Go/No Go criteria. Cancellation was due to the lack of acceptable responses in meeting the Government's requirements.

5. I controlled communications between the Government and Industry for both solicitations. At no point during my communications with Industry did I ever give direction that insinuated that the manufacture of the BALCS ballistic plates must be performed in a facility other than one used by the contractor.

6. On March 1-2, 2007, I participated in industry one-on-one vendor sessions for the SPEAR BALCS Family of Ballistic Plates requirement. I did not specify to any vendor during these sessions that the manufacture of the BALCS ballistic plates must be performed in a facility other than one used by the contractor, nor did I hear any of the other Government representatives present at Industry Day indicate such a requirement to the vendors.

Full and Open Competition:

1. In 1998 USSOCOM set aside its ballistic plate requirement for small businesses. Based on my experience from working in the SPEAR program and from my discussions with other contracting personnel working in the SPEAR program, I am aware that since

11 September 2001 (9/11), the need for ballistic plates has increased significantly and business for ballistic protection manufacturers has boomed. As a result, several companies from the small business community, to include Point Blank Body Armor, Protech Armored Products, and Ceradyne, who were small businesses at the time of the 1998 set aside, have since become large businesses. Additionally I am aware that a large business, Armor Holdings, purchased a former small business, Simula, several years ago.

2. Market research for Solicitation H92222-07-R-0011 was essentially accomplished through our experiences with Solicitation H92222-06-R-0023. Solicitation H92222-06-R-0023 generated four proposals. Of the four proposals received, three were from small businesses. One of the offerors, a small business, submitted an incomplete proposal as it did not provide the required Product Demonstration Models (PDMs) by the required date and time. The offeror was notified, in writing, that it was considered non-compliant. Consequently, this proposal was not evaluated. None of the remaining three offerors passed all portions of the Go/No-Go criteria and we consequently cancelled Solicitation H92222-06-R-0023.

3. I prepared the DD Form 2579, "Small Business Coordination Record," and recommended that the upcoming Solicitation H92222-07-R-0011 be competed using full and open competition due to the lack of acceptable responses to Solicitation H92222-06-R-0023, from small business and large business alike, in meeting the Government's requirements, and considering the fact that many small businesses in the body armor industry were becoming large businesses. By leaving the playing field open to all business sizes, the risk of cancelling another solicitation would be mitigated and this critical life savings item could be put into the hands that need it most, our war fighter, in a timely manner.

4. I forwarded the DD Form 2579 to USSOCOM's Small Business Specialist. There have been occasions in the past when the Small Business Specialist has disagreed with my recommendation to use full and open competition, but in this instance, the Small Business Specialist concurred that full and open competition should be utilized.

<u>Federal Business Opportunities (FBO) Posting of Questions and Answers (Q&A) 38 to 40</u>:

Questions and answers one through forty arose during the draft solicitation phase of the SPEAR BALCS Family of Ballistic Plates requirement. While making final edits to the formal solicitation documents, I inadvertently did not post questions 38 to 40 in FBO. Since questions 38 to 40 were submitted during the draft solicitation phase, they were overcome by events when the formal solicitation was posted to FBO. Although these questions were not directly answered in the Q&A format, I believe they were answered clearly in the formal solicitation. All questions submitted, 41 to 55, in response to the final solicitation were answered and posted to FBO prior to the closing date of the solicitation.

Executed on September 12, 2007.

Verdetta Weaver

VERDETTA J. WEAVER
Contract Specialist
USSOCOM Directorate of Procurement

# SBA Profile

Privacy Statement

## Identification, Location & Contacts

| | |
|---|---|
| This profile was last updated: | 03/01/2007 |
| Name of Firm: | DYNAMIC DEFENSE MATERIALS LLC |
| Trade Name ("Doing Business As ..."): | |
| Main office or branch office?: | Main |
| Address, line 1: | 1515 GARNET MINE ROAD |
| Address, line 2: | |
| City: | BOOTHWYN |
| State: | PA |
| Zip: | 19061-2000 |
| Phone Number: | 610-558-4084 x130 |
| Fax Number: | 610-558-4087 |
| E-mail Address: | kleighton@ddmat.com |
| WWW Page: | http://www.ddmat.com |
| E-Mall (electronic mall selling firm's products): | HTTP://WWW.DDMAT.COM |
| Contact Person: | KATHERINE LEIGHTON |
| County Code (3 digit): | 045 |
| Congressional District: | 07 |
| Metropolitan Statistical Area: | 6160 |
| DUNS Number: | 171948594 |
| CAGE Code: | 34UV5 |
| Year Established: | 2004 |
| Accepts Government Credit Card?: | [X] Yes [ ] No |
| GSA Advantage Contract(s): | |

## Organization, Ownership & Certifications

| | |
|---|---|
| Legal Structure: | LLC |
| Minority Code: | |
| Women Owned?: | [ ] Yes [X] No |
| Veteran?: | [ ] Yes [X] No |
| Service Disabled Veteran?: | [ ] Yes [X] No |

**Current Principals:** (Name, Title)
ROBERT LIPINSKI, OWNER
JOHN YARSINSKI, CFO

**"Business Development Servicing Office"**
(for certifications):
PHILADELPHIA DISTRICT OFFICE (SBA office code 0303)

**8(a) Certification:**
SBA 8(a) Case Number:
SBA 8(a) Entrance Date:
SBA 8(a) Exit Date:

**Small Disadvantaged Business Certification:**
SDB Entrance Date:
SDB Exit Date:

**HUBZone Certification:**

| | |
|---|---|
| HUBZone Certified?: | [ ] Yes [X] No |
| HUBZone Certification Date: | N/A |

**8(a) Joint Venture Certification:**
8(a) JV Entrance Date:
8(a) JV Exit Date:

**DBE Certifications (and State):**
(none)

**Non-Federal-Government Certifications:**
(none given)

## Products & Services

## Capabilities Narrative:

ARMOR,, BODY ARMOR, APPENDAGE ARMOR, PORTABEL ARMOR WALL SYSTEM, WAVE ARMOR. ADVANCED LIGHWEIGHT MULTI-HIT DURABLE ARMOR SYSTEMS FOR PERSONNEL, VEHCILE, ROTORCRAFT, AIRCRAFT

## Special Equipment/Materials:

CERAMICS, COMPOSITES

| | |
|---|---|
| **Business Type Percentages:** | Manufacturing (70 %)<br>Research & Development (30 %) |

## Bonding Levels

Construction Bonding Level (per contract)

Construction Bonding Level (aggregate)

Service Bonding Level (per contract)

Service Bonding Level (aggregate)

## NAICS Codes and Keywords:

| Primary? | Code | NAICS Code's Description | "Buy Green"? (1) | Small? (2) | Emerging? (3) |
|---|---|---|---|---|---|
| | 332999 | All Other Miscellaneous Fabricated Metal Product Manufacturing | | Yes | No |

(1) By entering Yes for "Buy Green", the firm asserts that it obeys EPA guidelines for environmental friendliness for this NAICS code. Note, EPA guidelines do not exist for every NAICS code.
(2) If Yes, the firm's revenues/number of employees do not exceed the NAICS code's small business size standard.
(3) If Yes, the firm's revenues/number of employees do not exceed the NAICS code's special small business size standard for the Compositeness Demonstration Program (FAR 19-10). Note, not all NAICS codes are applicable to this program.
(4) "Pending" means that the firm's size for the NAICS code is pending a manual determination by the SBA.

| | |
|---|---|
| Keywords: | ARMOR, BODY ARMOR, PANEL ARMOR, BALLISTIC, FRAGMENTATION, ROTORCRAFT, AEROCRAFT, VEHICLE, BOAT, WATERCRAFT, CERAMICS, COMPOSITES, METAL MATRIX, APPENDAGE, PORTABLE ARMOR WALL |

## Miscellaneous:

| | |
|---|---|
| Quality Assurance Standards: | (none given) |
| Electronic Data Interchange capable?: | [ ] Yes [X] No |

## Export Profile (Trade Mission Online)

| | |
|---|---|
| Exporter?: | [ ] Yes [ ] No [X] Wants To Be |
| • Export Business Activities: | Manufacturer, Consultant |
| • Exporting to: | (none given) |
| • Desired Export Business Relationships: | Direct export sales, Distributor/Importer, Licensing, Contract manufacturing, Joint venture/coventure |
| • Description of Export Objective(s): | PRODUCT SALES UNDER LICENSE |

## Performance History (References)

### References

(none given)

The structure of this page was last updated 08/10/2007, as part of Small Business Source System 6.3.2.