Greenberg Traurig

Richard Moorhouse
Tel. 703.749.1311
Fax 703.714.8308
Moorhouser@gtlaw.com

September 24, 2007

**VIA FACSIMILE (202) 512-9749**

Mr. Peter Verchinski, Esq.
Office of the General Counsel
U.S. Government Accountability Office (GAO)
Procurement Law Control Group
441 G Street, N.W.
Washington, DC 20548

Attn.: Procurement Law Control Group (PLCG)

Re: **Protest of The Protective Group, Inc. Under Solicitation No. H92222-07-R-0011 B-310018**

**PROTESTER'S COMMENTS ON THE AGENCY REPORT**

Dear Mr. Verchinski:

The Protective Group, Inc. ("TPG"), 14040 N.W., 58th Court, Miami Lakes, FL 33014 (Tel: 305-820-4240), through its undersigned counsel, hereby timely responds to the Agency Report and especially the Memorandum of Law ("MOL") filed by the Agency (or "SOCOM") on September 14, 2007.

## A. Introduction

SOCOM has conveniently reordered TPG's protest grounds in its discussion to support its assertion that TPG may not be an interested party. However, the Agency's argument that TPG would not be an interested party as to the "Rule of Two" protest ground "if GAO determines that US SOCOM's requirements for shatter gap testing and the number of ballistic plate tests are reasonable" is unreasonable. TPG's protest statement that it is a prospective offeror **if the procurement deficiencies are corrected** is an obvious condition embraced by all

ALBANY
AMSTERDAM
ATLANTA
BOCA RATON
BOSTON
BRUSSELS*
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON*
LOS ANGELES
MIAMI
MILAN*
NEW JERSEY
NEW YORK
ORANGE COUNTY
ORLANDO
PHILADELPHIA
PHOENIX
ROME*
SACRAMENTO
SILICON VALLEY
TALLAHASSEE
TAMPA
TOKYO*
TYSONS CORNER
WASHINGTON, D.C.
WEST PALM BEACH
ZURICH
*Strategic Alliance
Tokyo-Office/Strategic Alliance

pre-award protesters.[1] Nevertheless, while TPG's protest grounds with regard to shatter gap testing and the number of ballistic tests required do state that such requirements would be economically burdensome to TPG as a small business concern ("SBC"), such statements are not an indication, and TPG has not stated, that it is **unable** to meet those or any other particular requirement. In addition, the Agency completely overlooks TPG's alternative argument that "[t]he Solicitation must be amended to either delete the Shatter Gap testing requirement **or be amended to provide the testing data and information to which only the incumbent has had access**." (AR, Tab 18, Page 7.) (Emphasis added.)

As for the Rule of Two, the Contracting Officer's Statement, the MOL, and the Small Business Coordination Record, DA Form 2579, (AR, Tabs 1, 2, and 6) which set forth SOCOM's two reasons for avoiding a small business set-aside, are unreasonably based on the Contracting Specialist's (mis)impression of the BALCS small business market and an old, cancelled solicitation containing somewhat different standards than the procurement at issue. From the record here, GAO must find that the Agency violated the Rule of Two, sustain the protest, and require the Agency to resolicit this procurement as a small business set-aside in whole or in part.

**B. Violation of the "Rule of Two"**

The Agency's explanation of why a small business set-aside is inappropriate for this procurement is faulty and illogical. When there is a reasonable expectation that at least two

[1] See Tumpane Services Corp., B-220465, June 28, 1986, 86-1 CPD ¶ 95 at 2. GAO found that "Tumpane's interest as a potential competitor if the protest is successful is sufficient for it to be considered an interested party." (citation omitted)

**responsible** small business concerns will submit offers for an acquisition over $100,000, an agency **must** set aside the acquisition for small business participation. FAR §19.502-2(b). The agency is obligated as a matter of law and regulation to create a set aside unless it can determine that there is an absence of small business competition, and the Contracting Officer must "document why a small business set-aside is inappropriate when an acquisition is not set aside for small business..." FAR §19.501(c).

Here, while the Agency Report includes a Small Business Coordination Record, DA Form 2579, (AR, Tab 6), the Contracting Officer apparently did not actually complete the required documentation and left the writing of the justification not to set aside the procurement to the Contracting Specialist. Regardless, the Contracting Officer's Statement, the MOL, the DA Form 2579, and the Contract Specialist's Declaration (AR Tab 19), show that the two rationales for avoiding a small business set aside, (1) the lack of acceptable responses under Solicitation No. H92222-06-R-0023, and (2) the Contract Specialist's generic "awareness" that "several companies from the small business community,...who were small businesses at the time of the 1998 set aside, have become large businesses, " are inadequate and unsupportable. (AR, Tab 1, Pages 2-3, Tab 2, Page 16, Tab 6, and Tab 19, Page 2.) Neither of these rationales are credible nor supported by any reasonable method of assessing the availability of small businesses competition. Accordingly, SOCOM's decision to forego making the subject Solicitation ("Solicitation -0011") now under protest a small business set aside is not reasonably based and is in violation of FAR § 19.502-2(b).

1. **The responses to Solicitation -0023 refute the Agency's determination that at least two small businesses will not submit acceptable offers in response to Solicitation -0011.**

On August 1, 2006, the Agency requested proposals as a full and open competition under Solicitation No. H92222-06-R-0023 ("Solicitation -0023") for Body Armor Load Carriage System (BALCS) plates. (AR, Tabs 1 and 3.) The Agency received four proposals, **only one** of which was from a business that the Agency classified as large, the incumbent, Ceradyne. (AR, Tab 1) Of the four proposals, one was not considered because the Agency found it to be incomplete. All three remaining proposals including the proposal submitted by Ceradyne failed portions of the Go/No-Go criteria.[2] The Agency then cancelled the Solicitation. Id.

The Agency now argues that its experience in having to cancel Solicitation -0023 due to a lack of acceptable offers is the market research it used to conclude it would not have a reasonable expectation of receiving offers from at least two responsible small businesses under Solicitation -0011. (AR, Tab 2, Page 16) Its reliance is misplaced. The Agency issued Solicitation -0023 as a full and open competition, drawing only one offer from a non-SBC, the incumbent. Thus, **75 percent** of the Agency's offers under Solicitation -0023 actually came from SBC's. As such, the true "market research" which should have been used here for Solicitation -0011 demonstrated that the Rule of Two was clearly applicable and that a set aside was required.

---

[2] Solicitation -0023 included a "Go/No-Go Matrix" and required offerors to submit a completed Go/No-Go Matrix with a discussion of how it would pass each criteria. (AR, Tab 3, Page 101 and Tab 4) The Solicitation also provided that "[o]fferors not successfully passing these criteria shall be eliminated from further consideration for award." (AR, Tab 3, Page 105) The Go/No-Go Matrix was not included in the current Solicitation -0011 and, accordingly, neither was the concomitant provision requiring proposal rejection for failing to pass those criteria.

The Agency argues that the outcome of Solicitation -0023 is a reliable basis to determine that there would not be adequate competition for Solicitation -0011 because no small business offeror submitted a technically acceptable (i.e., "responsive") offer under the earlier procurement. Even if the Agency's determinations regarding the acceptability of those offers was reasonable, however, **technical acceptability** is **not** the standard required by FAR § 19.502-2(b). The standard rather was whether there was a reasonable expectation of at least two **responsible** small businesses that would compete and would submit offers at reasonable prices. Responsibility is a fundamental principle of procurement law which concerns the contractor's basic technical and financial capacities as a business organization to successfully perform the intended contract, not the acceptability, technical compliance, or "responsiveness" of a particular offer. FAR Subpart 9.1.

While SOCOM highlights that all of the small business offerors under Solicitation -0023 failed the Go/No-Go criteria, so did the one and only large business offeror, the incumbent, Ceradyne. In addition, as the Source Selection Authority noted, "[r]evisions to the Government's requirements [were] processed" following the cancellation of Solicitation -0023 (AR, Tab 5); consequently, by the Agency's own admission, the requirements under Solicitation -0011 are not the same. As already noted, Solicitation -0023 included a Go/No-Go Matrix and **required** the elimination of any offeror which did not pass the criteria. Solicitation -0011 does not include such a matrix nor, of course, a requirement for elimination. Moreover, the Agency has not advanced any argument that Solicitation -0023's Go/No-Go criteria in fact were reasonable, nor made any showing that its decision under Solicitation -0023 to eliminate

all the offerors, both large and small, as well was reasonable. Consequently, it is implausible for the Agency to now rely on its elimination of offerors based on criteria notably absent from the real solicitation in issue.

Rather than supporting SOCOM's claim that Solicitation -0011 should be full and open, the response by offerors to Solicitation -0023 actually demonstrates not only that a full and open competition did not yield technically acceptable competitors, large or small, but also that the Contract Specialist has unreasonably concluded that a full and open competition would mitigate against the risk of cancelling another solicitation. (See AR, Tab 19, Paragraph 3.) Even more importantly, the outcome Solicitation -0023, when correctly and logically viewed, demonstrates that there were **at least three** responsible SBCs that would likely submit offers to Solicitation -0011.

2. **The Contract Specialist's generic awareness regarding small businesses and large businesses in the BALCS community is an unreasonable basis for foregoing the small business set-aside requirement.**

The Contract Specialist states in her declaration that based on her experience and discussions with other contracting personnel, she is aware that, based on the increased need for ballistic plates since September 11, 2001, "several companies from the small business community,...who were small businesses at the time of the 1998 set aside, have since become large businesses." (AR, Tab 19, Paragraph 1.) That may be true, but it does not mean that at least two responsible SBCs were not available to compete for Solicitation -0011. Unfortunately, the Contracting Officer's statement , the MOL, and the Small Business Coordination Record all rely upon apply the Contract Specialist's "awareness" to justify

foregoing the small business set-aside requirement. (AR, Tab 19, Page 2; see also Tab 1, Pages 2-3 and Tab 2, Page 16, Tab 6.)

While GAO generally allows the Contracting Officer significant discretion in making small business set aside determinations as a matter of case law, and requires no particular method of assessing small business availability, at least some reasonable and defensible methodology is still required. Here, the Contract Specialist points to no real method of assessing small business availability. The Small Business Specialist's concurrence with the Contract Specialist on the DD Form 2579 in this situation (AR, Tab 6) as compared to other procurements in which there was admitted disagreement within the Agency over the decision not to make a set aside (AR, Tab 19, Paragraph 4) does not indicate any meaningful measure of small business availability either. In fact, the Contracting Specialist's "awareness" of existing small business availability is in error. As well as TPG itself, at least ArmorWorks, Armacel Armor Corporation, Composix, and Dynamics Defense Materials, LLC (a competitor under Solicitation No. -0023, AR, Tab 1, at 1), continue to remain SBCs. See Attachment A.

The case at hand is very similar to Rochester Optical Manufacturing Company, B-292247 et al., Aug. 6, 2003, 2003 U.S. Comp. Gen. LEXIS 116. In sustaining the protest, GAO found that "the assessment [to forego the small business set-aside requirement] must be based on sufficient facts so as to establish its reasonableness." Id. citing McSwain & Assocs., Inc.; Shel-Ken Props., Inc.; and Elaine Dunn Realty, B-271071 et al., May 20, 1996, 96-1 CPD ¶ 255 at 3-4. There, as here, the small business specialist concurred with the decision not to set aside the procurement for SBCs, and the Department of Veterans Affairs "believed, based on

the prior small business set-aside procurement, that it would not receive offers from at least two "responsible" small business concerns." Id. But, GAO found the grounds asserted by the VA to be unreasonable and its determination seriously flawed. GAO also found the VA's market research inadequate in its failure to support the determination where the Contracting Officer limited her search to one state and incorrectly entered the applicable NAICS code's average annual gross revenue.

SOCOM's misplaced reliance on a general "awareness' that some armor plate small business manufacturers have now become large does not negate the small business set aside requirement nor support SOCOM's decision to forego making one. Here, as in Rochester Optical Manufacturing Company, the Agency's market research was deficient; in fact, it did not conduct any market research, but unreasonably relied on its previous solicitation in determining that it would not likely receive fair market price offers from at least two responsible SBC's.

**C. Other Issues**

TPG continues to maintain that the requirements for shatter gap testing and the number of BALCs plates required for testing in all configurations and in all different cuts remain unduly burdensome for SBCs. Those requirements were imposed when the Agency decided -- erroneously -- not to make Solicitation -0011 a set aside. Therefore, because the Agency had no basis for its decision, these testing requirements are likewise invalid. If the procurement is now set aside in whole or in part for small business competition, the Agency should eliminate

those requirements or at a minimum fairly assess whether those requirements may be imposed on SBC offerors the same as large business offerors.

The Agency argues that the response to question 47a in particular need not have been formally incorporated into Solicitation -0011 because the response did not change the stated requirements for a First Article Testing Plan, a SPEAR-unique Quality Assurance Plan, and the Production Lot Test Plan. (AR, Tab 1, at 5-6.) The Agency overlooks a fundamental legal point. While the response to question 47a may not have **changed** the requirements stated in the Solicitation, it nonetheless interpreted and confirmed them. Without an actual incorporation of the response via amendment (which the Agency in fact told TPG would occur), there would be no basis to resolve a conflict as to those requirements should one arise, i.e., whether the stated requirements would be controlling over the response to question 47a. If a new set aside solicitation is issued, the Agency must make sure that all responses to offerors' questions are formally incorporated.

This also applies to the issue of a requirement for a separate BALCS production facility. TPG asserts that this was the information conveyed by the Agency during the Industry Day one-on-one meetings. The Agency denies that such a statement was made, and that it would have been erroneous in any event as confirmed by the fact that Solicitation -0011 does not impose any such requirement. Again, however, TPG asserts that there is an ambiguity which must be addressed by the Agency, and presumably can be addressed in a reissued set aside solicitation

**D. Conclusion**

For the foregoing reasons, TPG's protest should be sustained. In addition, GAO should recommend to the Agency that it resolicit this procurement as a small business set-aside, or at the very minimum, as a partial small business set-aside, and, because the shatter gap and ballistic plate testing requirements in Solicitation -0011 as it now stands as an unrestricted competition place an undue burden on small business concerns vis-à-vis large business competitors, further recommend that SOCOM eliminate them from the new set-aside procurement or the set-aside portion thereof. Since TPG argues for a resolicitation, the remaining issues of protest concerning the proper incorporation of questions and answers and the ambiguity regarding a separate production facility to meet the requirements for this acquisition as indicated can be readily addressed if a new solicitation is issued. GAO is also requested to recommend should also recommend that TPG be reimbursed its costs of filing and pursuing the protest, including reasonable attorney's fees.

Respectfully submitted,

Richard L. Moorhouse
John G. Stafford
David T. Hickey
Sean M. Connolly

Enclosures

cc: **Via Facsimile and Overnight FEDEX Mail**

Christine M. Choi
Trial Attorney
U.S. Army Litigation Center
Contract and Fiscal Law Division, Team I
ATTN: JALS-KFLD
901 North Stuart Street
Arlington, Virginia 22203-1837
Tel.: 703-696-2843
Fax: 703-696-1537

# SBA Profile

Privacy Statement

## Identification, Location & Contacts

| | |
|---|---|
| This profile was last updated: | 05/07/2007 |
| Name of Firm: | THE PROTECTIVE GROUP INC |
| Trade Name ("Doing Business As ..."): | PROTECTIVE MATERIALS CO |
| Main office or branch office?: | Main |
| Address, line 1: | 14000 NW 58TH CT |
| Address, line 2: | |
| City: | HIALEAH |
| State: | FL |
| Zip: | 33014-3117 |
| Phone Number: | 305-820-4266 |
| Fax Number: | |
| E-mail Address: | iescalan@protectmat.com |
| WWW Page: | http:///www.protectmat.com |
| E-Mall (electronic mall selling firm's products): | |
| Contact Person: | IRVING ESCALANTE |
| County Code (3 digit): | 086 |
| Congressional District: | 21 |
| Metropolitan Statistical Area: | 5000 |
| DUNS Number: | 088577903 |
| CAGE Code: | 3U457 |
| Year Established: | 1977 |
| Accepts Government Credit Card?: | [X] Yes [ ] No |
| GSA Advantage Contract(s): | GS-07F-9489G |

## Organization, Ownership & Certifications

ATTACHMENT A.

| | |
|---|---|
| Legal Structure: | Subchapter S Corporation |
| Minority Code: | |
| Women Owned?: | [ ] Yes [X] No |
| Veteran?: | [ ] Yes [X] No |
| Service Disabled Veteran?: | [ ] Yes [X] No |

**Current Principals:** (Name, Title)
Melvyn Miller, Owner

**"Business Development Servicing Office"**
(for certifications):
SOUTH FLORIDA DISTRICT OFFICE (SBA office code 0455)

**8(a) Certification:**
SBA 8(a) Case Number:
SBA 8(a) Entrance Date:
SBA 8(a) Exit Date:

**Small Disadvantaged Business Certification:**
SDB Entrance Date:
SDB Exit Date:

**HUBZone Certification:**

| | |
|---|---|
| HUBZone Certified?: | [ ] Yes [X] No |
| HUBZone Certification Date: | N/A |

**8(a) Joint Venture Certification:**
8(a) JV Entrance Date:
8(a) JV Exit Date:

**DBE Certifications (and State):**
(none)

**Non-Federal-Government Certifications:**
(none given)

## Products & Services

## Capabilities Narrative:
(none given)

## Special Equipment/Materials:
(none given)

## Business Type Percentages:
(none given)

## Bonding Levels

Construction Bonding Level (per contract)

Construction Bonding Level (aggregate)

Service Bonding Level (per contract)

Service Bonding Level (aggregate)

## NAICS Codes and Keywords:

| Primary? | Code | NAICS Code's Description | "Buy Green"? (1) | Small? (2) | Emerging? (3) |
|---|---|---|---|---|---|
| Yes | 315225 | Men's and Boys' Cut and Sew Work Clothing Manufacturing | | Yes | No |
| | 315211 | Men's and Boys' Cut and Sew Apparel Contractors | | Yes | No |
| | 315212 | "Women's, Girls', and Infants' Cut and Sew Apparel Contractors" | | Yes | No |
| | 315222 | "Men's and Boys' Cut and Sew Suit, Coat, and Overcoat Manufacturing" | | Yes | No |
| | 315234 | "Women's and Girls' Cut and Sew Suit, Coat, Tailored Jacket, and Skirt Manufacturing" | | Yes | No |
| | 315239 | Women's and Girls' Cut and Sew Other Outerwear Manufacturing | | Yes | No |
| | 315299 | All Other Cut and Sew Apparel Manufacturing | | Yes | No |
| | 315999 | Other Apparel Accessories and Other Apparel Manufacturing | | Yes | No |
| | 326199 | All Other Plastics Product Manufacturing | Yes | Yes | No |
| | 327112 | "Vitreous China, Fine Earthenware, | | Yes | No |

| | | | | | |
|---|---|---|---|---|---|
| | | and Other Pottery Product Manufacturing" | | | |
| | 327125 | Nonclay Refractory Manufacturing | | Yes | No |
| | 339113 | Surgical Appliance and Supplies Manufacturing | | Yes | No |

(1) By entering Yes for "Buy Green", the firm asserts that it obeys EPA guidelines for environmental friendliness for this NAICS code. Note, EPA guidelines do not exist for every NAICS code.
(2) If Yes, the firm's revenues/number of employees do not exceed the NAICS code's small business size standard.
(3) If Yes, the firm's revenues/number of employees do not exceed the NAICS code's special small business size standard for the Compositeness Demonstration Program (FAR 19-10). Note, not all NAICS codes are applicable to this program.
(4) "Pending" means that the firm's size for the NAICS code is pending a manual determination by the SBA.

Keywords: Turn-out Gear

## Miscellaneous:

Quality Assurance Standards: ISO-9000 Series

Electronic Data Interchange capable?: [ ] Yes [X] No

# Export Profile (Trade Mission Online)

Exporter?: [X] Yes [ ] No [ ] Wants To Be

- Export Business Activities: Manufacturer
- Exporting to: Mexico
- Desired Export Business Relationships: Contract manufacturing
- Description of Export Objective(s): Continued business growth

# Performance History (References)

## References

(none given)

The structure of this page was last updated 08/10/2007, as part of Small Business Source System 6.3.2.

330

# SBA Profile

Privacy Statement

## Identification, Location & Contacts

| | |
|---|---|
| This profile was last updated: | 11/10/2006 |
| Name of Firm: | ARMACEL ARMOR CORPORATION |
| Trade Name ("Doing Business As ..."): | |
| Main office or branch office?: | Main |
| Address, line 1: | 2255 PLEASANT VALLEY RD E |
| Address, line 2: | |
| City: | CAMARILLO |
| State: | CA |
| Zip: | 93012-8569 |
| Phone Number: | 805-482-0016 |
| Fax Number: | 805-987-5877 |
| E-mail Address: | info@armacelarmorcorp.com |
| WWW Page: | http://www.armacelarmorcorp.com |
| E-Mall (electronic mall selling firm's products): | http://www.armacelarmorcorp.com |
| Contact Person: | ASIA FERNANDEZ |
| County Code (3 digit): | 111 |
| Congressional District: | 24 |
| Metropolitan Statistical Area: | 8735 |
| DUNS Number: | 074568432 |
| CAGE Code: | 1S5U0 |
| Year Established: | 1997 |
| Accepts Government Credit Card?: | [X] Yes [ ] No |
| GSA Advantage Contract(s): | |

## Organization, Ownership & Certifications

| | |
|---|---|
| Legal Structure: | Corporation |
| Minority Code: | |
| Women Owned?: | [X] Yes [ ] No |
| Veteran?: | [ ] Yes [X] No |
| Service Disabled Veteran?: | [ ] Yes [X] No |

**Current Principals:** (Name, Title)

Arturo Sidransky, Secretary
David Fernandez, Director
Asia Fernandez, President/CEO
James Kadin, Treasurer

**"Business Development Servicing Office"**
(for certifications):
LOS ANGELES DISTRICT OFFICE (SBA office code 0914)

**8(a) Certification:**
SBA 8(a) Case Number:
SBA 8(a) Entrance Date:
SBA 8(a) Exit Date:

**Small Disadvantaged Business Certification:**
SDB Entrance Date:
SDB Exit Date:

**HUBZone Certification:**

| | |
|---|---|
| HUBZone Certified?: | [ ] Yes [X] No |
| HUBZone Certification Date: | N/A |

**8(a) Joint Venture Certification:**
8(a) JV Entrance Date:
8(a) JV Exit Date:

**DBE Certifications (and State):**
(none)

**Non-Federal-Government Certifications:**
(none given)

# Products & Services

## Capabilities Narrative:

Protective inserts for Armor Vests Panels and Floor Armor. Armor Vests. Any other ballistic applications.

## Special Equipment/Materials:

| | |
|---|---|
| **Business Type Percentages:** | Manufacturing (75 %)<br>Research & Development (25 %) |

## Bonding Levels

| | |
|---|---|
| Construction Bonding Level (per contract) | $0 |
| Construction Bonding Level (aggregate) | $0 |
| Service Bonding Level (per contract) | $0 |
| Service Bonding Level (aggregate) | $0 |

## NAICS Codes and Keywords:

| Primary? | Code | NAICS Code's Description | "Buy Green"? (1) | Small? (2) | Emerging? (3) |
|---|---|---|---|---|---|
| Yes | 336992 | "Military Armored Vehicle, Tank, and Tank Component Manufacturing" | | Yes | No |
| | 339113 | Surgical Appliance and Supplies Manufacturing | | Yes | No |

(1) By entering Yes for "Buy Green", the firm asserts that it obeys EPA guidelines for environmental friendliness for this NAICS code. Note, EPA guidelines do not exist for every NAICS code.
(2) If Yes, the firm's revenues/number of employees do not exceed the NAICS code's small business size standard.
(3) If Yes, the firm's revenues/number of employees do not exceed the NAICS code's special small business size standard for the Compositeness Demonstration Program (FAR 19-10). Note, not all NAICS codes are applicable to this program.
(4) "Pending" means that the firm's size for the NAICS code is pending a manual determination by the SBA.

| | |
|---|---|
| Keywords: | armor, SAPI, E-SAPI, body armor, armor panels, floor armor, shields, armor shields |

## Miscellaneous:

| | |
|---|---|
| Quality Assurance Standards: | (none given) |
| Electronic Data Interchange | [ ] Yes [X] No |

333

capable?:

## Export Profile (Trade Mission Online)

Exporter?: (firm hasn't answered this question yet)

- Export Business Activities: (none given)
- Exporting to: (none given)
- Desired Export Business Relationships: (none given)
- Description of Export Objective(s):

## Performance History (References)

### References

| | |
|---|---|
| Name: | Sutter County Sheriffs Office |
| Contract: | C3 |
| Start: | 02/01/2001 |
| End: | 03/15/2001 |
| Value: | 14,250.00 |
| Contact: | Captian Jeff Pierce |
| Phone: | 530-822-7307 |

| | |
|---|---|
| Name: | Instant Armor |
| Contract: | 2004 |
| Start: | 07/15/2000 |
| End: | 10/09/2000 |
| Value: | $78,000.00 |
| Contact: | Eric Michaelson |
| Phone: | 805-526-3046 |

The structure of this page was last updated 08/10/2007, as part of Small Business Source System 6.3.2.

# SBA Profile

**Privacy Statement**

## Identification, Location & Contacts

| | |
|---|---|
| This profile was last updated: | 05/30/2007 |
| Name of Firm: | ARMORWORKS, INC |
| Trade Name ("Doing Business As ..."): | |
| Main office or branch office?: | Main |
| Address, line 1: | 305 N 54 ST |
| Address, line 2: | |
| City: | CHANDLER |
| State: | AZ |
| Zip: | 85226-2402 |
| Phone Number: | 480-598-5707 |
| Fax Number: | 480-598-5739 |
| E-mail Address: | jlichtsinn@armorworks.com |
| WWW Page: | |
| E-Mall (electronic mall selling firm's products): | |
| Contact Person: | JOHN LICHTSINN |
| County Code (3 digit): | 013 |
| Congressional District: | 05 |
| Metropolitan Statistical Area: | 6200 |
| DUNS Number: | 133503743 |
| CAGE Code: | 06DJ7 |
| Year Established: | 1996 |
| Accepts Government Credit Card?: | [X] Yes [ ] No |
| GSA Advantage Contract(s): | |

## Organization, Ownership & Certifications

Legal Structure: LLC
Minority Code:
Women Owned?: [ ] Yes [X] No
Veteran?: [X] Yes [ ] No
Service Disabled Veteran?: [ ] Yes [X] No

**Current Principals:** (none given)

**"Business Development Servicing Office"**
(for certifications):
ARIZONA DISTRICT OFFICE (SBA office code 0988)

**8(a) Certification:**
SBA 8(a) Case Number:
SBA 8(a) Entrance Date:
SBA 8(a) Exit Date:

**Small Disadvantaged Business Certification:**
SDB Entrance Date:
SDB Exit Date:

**HUBZone Certification:**
HUBZone Certified?: [ ] Yes [X] No
HUBZone Certification Date: N/A

**8(a) Joint Venture Certification:**
8(a) JV Entrance Date:
8(a) JV Exit Date:

**DBE Certifications (and State):**
(none)

**Non-Federal-Government Certifications:**
(none given)

**Products & Services**

## Capabilities Narrative:
(none given)

## Special Equipment/Materials:
(none given)

**Business Type Percentages:** (none given)

## Bonding Levels

| | |
|---|---|
| Construction Bonding Level (per contract) | unknown |
| Construction Bonding Level (aggregate) | unknown |
| Service Bonding Level (per contract) | unknown |
| Service Bonding Level (aggregate) | unknown |

## NAICS Codes and Keywords:

| Primary? | Code | NAICS Code's Description | "Buy Green"? (1) | Small? (2) | Emerging? (3) |
|---|---|---|---|---|---|
| | 332995 | Other Ordnance and Accessories Manufacturing | | Yes | No |
| | 335991 | Carbon and Graphite Product Manufacturing | | Yes | No |
| | 335999 | All Other Miscellaneous Electrical Equipment and Component Manufacturing | | Yes | No |
| | 336992 | "Military Armored Vehicle, Tank, and Tank Component Manufacturing" | | Yes | No |
| | 339113 | Surgical Appliance and Supplies Manufacturing | | Yes | No |

(1) By entering Yes for "Buy Green", the firm asserts that it obeys EPA guidelines for environmental friendliness for this NAICS code. Note, EPA guidelines do not exist for every NAICS code.
(2) If Yes, the firm's revenues/number of employees do not exceed the NAICS code's small business size standard.
(3) If Yes, the firm's revenues/number of employees do not exceed the NAICS code's special small business size standard for the Compositeness Demonstration Program (FAR 19-10). Note, not all NAICS codes are applicable to this program.
(4) "Pending" means that the firm's size for the NAICS code is pending a manual determination by the SBA.

Keywords: (none given)

## Miscellaneous:
Quality Assurance Standards: (none given)

337

Electronic Data Interchange capable?: [X] Yes [ ] No

## Export Profile (Trade Mission Online)

Exporter?: (firm hasn't answered this question yet)

- Export Business Activities: (none given)
- Exporting to: (none given)
- Desired Export Business Relationships: (none given)
- Description of Export Objective(s):

## Performance History (References)

### References

(none given)

The structure of this page was last updated 08/10/2007, as part of Small Business Source System 6.3.2.

# SBA Profile

Privacy Statement

## Identification, Location & Contacts

| | |
|---|---|
| This profile was last updated: | 12/29/2006 |
| Name of Firm: | COMPOSIX CO. |
| Trade Name ("Doing Business As ..."): | |
| Main office or branch office?: | Main |
| Address, line 1: | 23 SISAL ST |
| Address, line 2: | |
| City: | NEWARK |
| State: | OH |
| Zip: | 43055-5831 |
| Phone Number: | 740-345-5574 x22 |
| Fax Number: | 740-345-0154 |
| E-mail Address: | larry@composix.com |
| WWW Page: | |
| E-Mall (electronic mall selling firm's products): | |
| Contact Person: | LAWRENCE J DICKSON |
| County Code (3 digit): | 089 |
| Congressional District: | 18 |
| Metropolitan Statistical Area: | 1840 |
| DUNS Number: | 185068350 |
| CAGE Code: | 0RYL9 |
| Year Established: | 1986 |
| Accepts Government Credit Card?: | [X] Yes [ ] No |
| GSA Advantage Contract(s): | |

## Organization, Ownership & Certifications

| | |
|---|---|
| Legal Structure: | Subchapter S Corporation |
| Minority Code: | |
| Women Owned?: | [ ] Yes [X] No |
| Veteran?: | [ ] Yes [X] No |
| Service Disabled Veteran?: | [ ] Yes [X] No |

**Current Principals:** (Name, Title)
DONALD L. BLAKE, VICE PRESIDENT
LAWRENCE J. DICKSON, PRESIDENT

**"Business Development Servicing Office"**
(for certifications):
COLUMBUS DISTRICT OFFICE (SBA office code 0593)

**8(a) Certification:**
SBA 8(a) Case Number:
SBA 8(a) Entrance Date:
SBA 8(a) Exit Date:

**Small Disadvantaged Business Certification:**
SDB Entrance Date:
SDB Exit Date:

**HUBZone Certification:**

| | |
|---|---|
| HUBZone Certified?: | [ ] Yes [X] No |
| HUBZone Certification Date: | N/A |

**8(a) Joint Venture Certification:**
8(a) JV Entrance Date:
8(a) JV Exit Date:

**DBE Certifications (and State):**
(none)

**Non-Federal-Government Certifications:**
(none given)

## Products & Services

## Capabilities Narrative:

A privately held company is a specialty OEM producer of advanced composite laminates, machined metallic parts and specialty products. Manufacture of a variety of lightweight parts of applications in ranging from transportation, military to aircraft.

## Special Equipment/Materials:

Variety of press sizes, pre-preg machines, ovens, Fabrication equipment, laminate lay-up equipment, CNC maching center, overhead bridge crane, one-ton mobile crane

| | |
|---|---|
| **Business Type Percentages:** | Manufacturing (80 %)<br>Research & Development (20 %) |

## Bonding Levels

| | |
|---|---|
| Construction Bonding Level (per contract) | $0 |
| Construction Bonding Level (aggregate) | $0 |
| Service Bonding Level (per contract) | $0 |
| Service Bonding Level (aggregate) | $0 |

## NAICS Codes and Keywords:

| Primary? | Code | NAICS Code's Description | "Buy Green"? (1) | Small? (2) | Emerging? (3) |
|---|---|---|---|---|---|
| Yes | 325211 | Plastics Material and Resin Manufacturing | | Yes | No |
| | 326199 | All Other Plastics Product Manufacturing | | Yes | No |
| | 327999 | All Other Miscellaneous Nonmetallic Mineral Product Manufacturing | | Yes | No |

(1) By entering Yes for "Buy Green", the firm asserts that it obeys EPA guidelines for environmental friendliness for this NAICS code. Note, EPA guidelines do not exist for every NAICS code.
(2) If Yes, the firm's revenues/number of employees do not exceed the NAICS code's small business size standard.
(3) If Yes, the firm's revenues/number of employees do not exceed the NAICS code's special small business size standard for the Compositeness Demonstration Program (FAR 19-10). Note, not all NAICS codes are applicable to this program.
(4) "Pending" means that the firm's size for the NAICS code is pending a manual determination by the SBA.

Keywords: Manufacturer, Composite Materials

## Miscellaneous:

Quality Assurance Standards: MIL-STD-45662A

| | |
|---|---|
| Electronic Data Interchange capable?: | [ ] Yes [X] No |

# Export Profile (Trade Mission Online)

| | |
|---|---|
| Exporter?: | (firm hasn't answered this question yet) |
| • Export Business Activities: | (none given) |
| • Exporting to: | (none given) |
| • Desired Export Business Relationships: | (none given) |
| • Description of Export Objective(s): | |

# Performance History (References)

## References

| | |
|---|---|
| Name: | INGALLS SHIPBUILDING |
| Contract: | T9-05441-031 |
| Start: | 12/01/1996 |
| End: | 07/01/1997 |
| Value: | 1,155,276 |
| Contact: | MR. ERNEST MOSLEY |
| Phone: | 601-935-5824 |

| | |
|---|---|
| Name: | GENERAL DYNAMICS AMPHIBIOUS SYSTEMS |
| Contract: | EAV001502 |
| Start: | 05/03/2002 |
| End: | 06/30/2003 |
| Value: | 400,656 |
| Contact: | MS. DONNA DYSON |
| Phone: | 703-490-6029 |

| | |
|---|---|
| Name: | O'GARA-HESS & EISENHARDT ARMORING CO. |

| | |
|---|---|
| Contract: | AF2123 |
| Start: | 07/01/1998 |
| End: | 03/01/1999 |
| Value: | 545,916 |
| Contact: | MR. ROBERT SOUTH |
| Phone: | 513-881-5418 |

| | |
|---|---|
| Name: | GENERAL DYNAMICS AMPHIBIOUS SYSTEMS |
| Contract: | AAV003054 |
| Start: | 10/01/1999 |
| End: | 09/01/2000 |
| Value: | 253,829 |
| Contact: | MS. DONNA DYSON |
| Phone: | 703-490-6029 |

The structure of this page was last updated 08/10/2007, as part of Small Business Source System 6.3.2.

G A O
Accountability * Integrity * Reliability

United States Government Accountability Office
Washington, DC 20548

# Facsimile Transmission Sheet

**Date:** October 4, 2007

Number of pages, including this cover sheet: 47

If transmission problems occur, please call 202-512-4738.
Our fax number is 202-512-9749.

**Re:** B-310018
The Protective Group

**From:** Peter Verchinski, Esq.
(202) 512-6173

**To:**

| Name | Firm/Agency | Phone | Fax |
|---|---|---|---|
| Richard L. Moorhouse | Greenberg Traurig | 703-749-1311 | 703-714-8308 |
| Kenneth W. Dodds | Small Business Administration | 202-619-1766 | 202-481-2950 |
| Christine Choi | Department of the Army | 703-696-2843 | 703-696-1537 |

**Comments:**

[NOTE: Only this cover page is being sent to the protester and the agency.]

Here is the protest, the agency's legal memo and the contracting officer's statement, as well as the protester's comments on the agency's report, for the protest of The Protective Group.

We ask that the Small Business Administration please comment on the protester's allegation that the agency failed to follow the Small Business Administration's "rule of two."

If you have any questions, please feel free to contact me. Thank you.

Peter Verchinski

G A O
Accountability * Integrity * Reliability

United States Government Accountability Office
Washington, DC 20548

# Facsimile Transmission Sheet

**Date:** October 4, 2007

Number of pages, including this cover sheet: 1

If transmission problems occur, please call 202-512-4788.
Our fax number is 202-512-9749.

**Re:** B-310018
The Protective Group

**From:** Peter Verchinski, Esq.
(202) 512-6173

**To:**

| Name | Firm/Agency | Phone | Fax |
|---|---|---|---|
| Richard L. Moorhouse | Greenberg Traurig | 703-749-1311 | 703-714-8308 |
| Kenneth W. Dodds | Small Business Administration | 202-619-1766 | 202-481-2950 |
| Christine Choi | Department of the Army | 703-696-2843 | 703-696-1537 |

**Comments:**

As discussed by conference call today, GAO asks that the agency please provide our Office with an explanation for why it believes it has complied with the "rule of two" in the protested procurement here.

We ask that the agency provide our Office (and the SBA) with these comments by close of business, Tuesday, October 9, 2007. The protester will then have one day to respond to the agency's comments.

At the same time the protester responds, we ask that it also comment on its intentions with regard to this procurement (also, as discussed in today's conference call). Specifically, we ask the protester to comment on whether it will compete for the items being procured here, regardless of whether or not the contested testing requirements remain in the solicitation.

GAO
Accountability • Integrity • Reliability

United States Government Accountability Office
Washington, DC 20548

# Facsimile Transmission Sheet

**Date:** October 4, 2007

Number of pages, including this cover sheet: 8

If transmission problems occur, please call 202-512-4788.
Our fax number is 202-512-9749.

**Re:** B-310018
The Protective Group

**From:** Peter Verchinski, Esq.
(202) 512-6173

**To:**

| Name | Firm/Agency | Phone | Fax |
|---|---|---|---|
| Richard L. Moorhouse | Greenberg Traurig | 703-749-1311 | 703-714-8308 |
| Kenneth W. Dodds | Small Business Administration | 202-619-1766 | 202-481-2950 |
| Christine Choi | Department of the Army | 703-696-2843 | 703-696-1537 |

**Comments:**

[NOTE: Only this cover page is being sent to the protester and the agency.]

Per the SBA's request, we are sending a copy of the Agency Report, Tab 6 (4 pages), and Agency Report, Tab 19 (3 pages) to the SBA.

Also, the SBA has requested that it submit its comments by October 15, 2007. Consequently, we ask that the protester, to the extent it would like to comment on the SBA's submission, that it do so by October 17, 2007.

DEPARTMENT OF THE ARMY
UNITED STATES ARMY LEGAL SERVICES AGENCY
901 NORTH STUART STREET
ARLINGTON, VA 22203-1837
(703) 696-2843; DSN 426; Fax ext. 1537
E-mail: christine.choi@hqda.army.mil

REPLY TO
ATTENTION OF

October 9, 2007

Contract and Fiscal Law Division

Peter Verchinski, Esquire
Office of the General Counsel
U.S. Government Accountability Office
441 G. Street, NW
Washington, D.C. 20548

Subject: Protest of The Protective Group, Inc., B-310018

Dear Mr. Verchinski:

Enclosed please find the Agency's written comments supplementing the information contained in its Agency Report of September 14, 2007 explaining why the Agency believes it complied with the "rule of two" in the protested procurement. Copies of this correspondence and the enclosed written comments have been sent to Richard Moorhouse, Esq., counsel to The Protective Group, Inc. (hereafter "Protester" or "The Protective Group") and Kenneth W. Dodds Esq., Small Business Administration.

Any comments by the Protester regarding our written comments should be sent directly to

your office with a copy forwarded to:

Ms. Christine M. Choi
U.S. Army Litigation Center
Contract and Fiscal Law Division, Team I
ATTN: JALS-KFLD
901 North Stuart Street, Suite 500
Arlington, Virginia 22203-1837

Sincerely,

Christine M. Choi
Trial Attorney
Contract and Fiscal Law Division

Enclosures

Copies Furnished (w/encl):

Protester:
Richard Moorhouse, Esq.
Greenberg Traurig, LLP
1750 Tysons Boulevard, Suite 1200
McLean, VA 22102
Telephone: 703-749-1300
Facsimile: 703-749-1301

Small Business Administration
Kenneth W. Dodds, Esq.
Telephone: 202-619-1766
Facsimile: 202-481-2950

Copies furnished (w/out encl):

Installation Attorney:
OSJA
HQ, U.S. Special Operations Command
ATTN: SOJA-AQ (Christopher Kernan, Esq.)
7701 Tampa Point Blvd.
MacDill AFB, FL 33621-5323

Telephone: 813-826-6695
Facsimile: 813-826-7504/3629

Directorate of Contracting
U.S. Special Operations Command
ATTN: SOAL-K (C. Denise Green-Huneke)
7701 Tampa Point Blvd.
MacDill AFB, FL 33621-5323
Telephone: 831-826-4767
Facsimile: 831-826-7504

UNITED STATES SPECIAL OPERATIONS COMMAND
7701 TAMPA POINT BLVD.
MACDILL AIR FORCE BASE, FLORIDA 33621-5323
9 October 2007

**CONTRACTING OFFICER'S STATEMENT**
Directorate of Procurement, Procurement Division, SOAL-KR

**Additional information provided for Protest B-310018 to the General Accounting Office by The Protective Group, Inc., Concerning Solicitation H92222-07-R-0011 Body Armor Load Carriage (BALCS) Family of Ballistic Plates**

## I. INTRODUCTION

GAO has requested further clarification supporting the agency's compliance with the Small Business Act, specifically adhering to the "Rule of Two," reference FAR 19.502-2(b)(1), which states, "The contracting officer shall set aside … for small business participation when there is a reasonable expectation that (1) offers will be obtained from at least two responsible small business concerns …"

## II. FINDINGS

A. Reference is made to the Contacting Officer's original statement identifying the initial full and open competition for BALCS plates under RFP H92222-06-R-0023, yielding three unacceptable proposals. After cancelling the solicitation, reviewing the Special Operations Forces (SOF) specific requirements, and holding an industry day, a decision was approved by the USSOCOM Office of Small Business Programs (OSBP) not to set aside the procurement for small business in order to meet SOF unique requirements.

B. The USSOCOM Program Management Office for the SOF Survival Systems (PM-SOF Survival Systems) frequently reviewed the requirements to ensure articulation of necessary threshold requirements to ensure success of SOF missions. As indicated by the market research completed by PM-SOF Survival Systems (See Declaration of Rick Elder attached), multiple small businesses' capabilities were investigated. The PM-SOF Survival Systems' standard practice is to conduct a continual survey of the Industry providing their type of products. This particular research covers the August 2006 through March 2007 timeframe, specifically for Body Armor Load Carriage (BALCS) Family of Ballistic Plates. It is clearly evident, due to the failure of the first solicitation and the market research by the PM-SOF Survival Systems that it was not reasonable to expect offers from at least two responsible small businesses that would meet USSOCOM's requirements for this life saving, mission critical system, which is completely distinct from any other standard product in the market place. Although, TPG would argue that USSOCOM would receive offers from at

least two small businesses, the current solicitation did not yield any offers from small businesses. Indeed, even the Protestor complained in the subject protest that the specifications could not be met by TPG. The Declaration of Rick Elder sets forth in detail the results of the evaluation of the identified small businesses considered in making the determination that there was not two small businesses which could provide the SOF warrior with the essential body armor that would meet the soldier's wartime requirements.

C. The mission of the USSOCOM OSBP Office is to provide maximum practical opportunities in USSOCOM acquisitions to small businesses, small disadvantaged businesses, women-owned small businesses, veteran small businesses, HubZones, and historically black colleges and universities and minority institutions. The OSBP maintains a close working relationship with the USSOCOM contracting office, as well as the small businesses in the Industry. This specific solicitation was discussed with the Supervisor, Ms. Karen Pera (See, Declaration of Karen Pera attached), prior to coordinating DD Form 2579, Small Business Coordination Record, on 30 January 2007. Additionally, while reviewing the DD Form 2579, the Small Business Specialist identified small businesses based on the specific NAICS code 327112, which were immediately examined for consideration by the PM-SOF Survival Systems for their continual market research. (See, Declaration of Verdetta Weaver attached).

**III. CONCLUSION**

The United States Special Operations Command made an immense effort to ensure a successful acquisition of SOF unique items following a failed solicitation. The effort to include small businesses to the maximum extent practical was initiated by the PM SOF Survival Systems and fully supported by the Contracting Officer. The OSBP was also actively engaged in the pursuit of small businesses to accomplish this requirement. Limiting competition to only small businesses would have only lead to another failed solicitation as evident by the number of small business offers received. USSOCOM no longer has a contractual vehicle to supply SOF with this protection and we can not delay while waiting for small businesses to obtain the technology and manufacturing capabilities to meet our needs. All actions, (a) the initial failed solicitation, (b) the market research by the PM SOF Survival Systems, (c) the research by the USSOCOM OSBP, and, finally, (d) the results of the current solicitation, all indicate USSOCOM judiciously did not set aside the requirement for small business. USSOCOM clearly complied with the Small Business Act, specifically adhering to the "Rule of Two." This protest ground should be denied.

Susan M. Griffin

SUSAN M. GRIFFIN
Contracting Officer

**Declaration of Richard W. Elder**

**GAO Bid Protest B-310018**

I, Richard W. Elder, declare as follows, pursuant to 28 U.S.C. § 1746;

During the period of 3 AUG 2007, through the present, I have served as an Assistant Program Manager in support of the Program Manager Special Operations Forces (SOF) Survival Systems working in direct support of the United States Special Operations Command (USSOCOM). My duties have included work in the acquisition, test and evaluation, development, and sustainment of individual protection systems utilized by the SOF personnel, specifically ballistic protection. With regards to Solicitation H92222-07-R-0011, I have served as the Assistant Program Manager (APM) and member of the Source Selection Evaluation Board (SSEB) for this solicitation and fulfill the duties assigned to the SSEB Test Activity as outlined in the Source Selection Plan (SSP).

Small Business Body Armor Market Research

In August 2006 a RFP was released for a family of ballistic plates and closed in January 2007. This solicitation was very similar to the current solicitation requirements. Market research was conducted prior to this solicitation and no small businesses were known to meet the requirement. This RFP went out Full and Open to all interested businesses. Two small businesses submitted proposals under this solicitation and did NOT meet the minimum requirements of the solicitation. This reinforced the information collected during the market research prior to the FY06 solicitation. No small business is known to meet the USSOCOM body armor requirements.

A pre-solicitation was released openly on FedBizOps on February 9, 2007 only one month after the close of the previous solicitation. A notification for an Industry Day Conference was posted on FedBizOps to all interested businesses (large or small) so the Government could conduct market research prior to releasing a final solicitation. An Industry Day Conference was held on March 1-2, 2007 giving any company (large or small) the ability to discuss their body armor technology and their ability/interest to meet the USSOCOM body armor requirement. Nine companies attended the Industry Day briefing and eight companies participated in one-on-one discussions with the Government and displayed an interest in providing body armor to meet the requirement. Of the eight companies interested, five companies were small businesses.

1. MSA Paraclete (small business) – This company provided a catalog of their military products. They did not provide any data or indication they could meet the USSOCOM body armor requirement for any configuration. The catalog and website indicate the company provides Enhanced Small Arms Protective Inserts (ESAPI) plates. ESAPI plates do not meet the USSOCOM weight, thickness, and ballistic requirements. No information was provided in either the one-on-one

meeting with the company or in the catalog or on the website that demonstrated the company could produce plates that meet USSOCOM specification. It is also believed that the company is not the original equipment manufacturer (OEM) for some of their body armor plates and they are a distributor (SOF MK II, IMP/ACT plates). The company did not provide any indication that they could or intended to try to meet the Government's requirements. www.MSAnet.com

2. Dynamic Defense Materials (small business) – This company submitted a proposal and products for the USSOCOM RFP that was released in October 2006 and cancelled in January 2007. This company did not meet the USSOCOM body armor requirement in the Oct06-Jan07 solicitation and the Industry Day conference was held only a few months later. During the Industry Day conference the company did not provide any data or indication they could meet the USSOCOM body armor requirement for any configuration or demonstrate an improved product from the Oct06-Jan07 solicitation. The website for this company does not provide any information on personal body armor plates. The company did not provide any indication that they could or intended to try to meet the Government's requirements. http://www.ddmat.com/

3. First Choice Armor (small business) – Researched this company at the Shotshow Conference January 11th-14th, 2007 and reviewed company catalog and body armor products. Plates did not seem to meet the weight or thickness requirement for the BALCS type plate. The plates were level IV certified which means only a single strike capability against the APM2. It is doubtful that this product will meet the 4" multi-strike APM2 requirement. This company also attended Industry Day and did not provide any data or indication they could meet the USSOCOM weight, thickness, or ballistic body armor requirement for any configuration. The company did not provide any indication that they could or intended to try to meet the Government's requirements. www.firstchoicearmor.com

4. ArmorWorks (small business) - This company attended Industry Day and provided a catalog of their military products. They did not provide any data or indication they could meet the USSOCOM body armor requirement for any configuration. The catalog and website indicate the company provides Small Arms Protective Inserts (SAPI) plate, Enhanced Small Arms Protective Inserts (ESAPI) plates, and Improved Small Arms Protective Inserts (ISAPI). The SAPI, ESAPI, and ISAPI plates do not meet the USSOCOM weight, thickness, and ballistic requirements. No information was provided in either the one-on-one meeting with the company or in the catalog or on the website that demonstrated the company could produce plates that meet USSOCOM specification. The company did not provide any indication that they could or intended to try to meet the Government's requirements. www.armorworks.com

5. The Protective Group, Inc. (small business) – This company attended Industry Day and did not provide any data or indication they could meet the USSOCOM body armor requirement for any configuration. The company indicated that they

are currently a provider of Enhanced Small Arms Protective Inserts (ESAPI) plates for United States Army. ESAPI plates do not meet the USSOCOM weight, thickness, and ballistic requirements. No information was provided in either the one-on-one meeting with the company or on the website that demonstrated the company could produce plates that meet USSOCOM specification. The company did not provide any indication that they could or intended to try to meet the Government's requirements. www.protectmat.com

Other small businesses have been researched at trade shows and online.

6. DefensTech International (small business) – Met at Surefire Antiterrorism Conference and reviewed company catalog and body armor products. Plates did not seem to meet the USSOCOM weight requirement. Data did not seem to suggest that plates could meet the multi-strike APM2 requirement at 4" apart. Company did not seem to have the manufacturing capability to produce body armor in the quantity required. The company did not provide any indication that they could or intended to try to meet the Government's requirements. www.defenstech.com

7. Armor Express (small business) - Met at Shotshow Conference January 11th-14th, 2007 and reviewed company catalog and body armor products. The company seems to mainly deal with the Law Enforcement Community only. The company did not have a NIJ Level IV (APM2) plate that is used in conjunction with soft armor. This means the company does the not have the ability to meet the Baseline Configuration requirement. The only NIJ Level IV plate the company had was a stand alone plate. This plate was a 10"x12" that weighed 7 pounds. This plate would not meet the USSOCOM weight requirement. The only size plate that company seemed to have was a 10"x12" and the company did not demonstrate the ability to make complex geometries or different sizes. www.armorexpress.com

Section L-1.1.1 of the RFP states that offerors must be the original equipment manufacturer (OEM) and have an existing U.S. verifiable production line for any product proposed under this solicitation. Many small business body armor companies distribute body armor but are not the actual original equipment manufacturer.

Small business market research has been conducted at tradeshows such as The Shotshow, Surefire Antiterrorism Conference, AUSA, American Ceramics Society (ACERS), NDIA Small Arms, etc., as well as online. From the previous solicitation market research, Industry Day market research, online market research, tradeshow market research, and job experience, I am currently unaware of any small business that can meet the USSOCOM body armor requirement. No small business has submitted any data to show that they can satisfy all the necessary requirements to justify a contract award. While small businesses have successfully met the requirements for other services, it is unknown

whether small businesses can meet the body armor requirements of USSOCOM. The USSOCOM overall requirements are significantly different in the area of weight, thickness, and ballistics from other services. It is unknown that a single small business company (never mind two) can meet the USSOCOM requirement; this procurement should not be aside for small business.

Richard W. Elder
APM-SOF Warrior
PM-SSS

**Declaration of Verdetta J. Weaver**

**GAO Bid Protest B-310018**

I, Verdetta J. Weaver, Contract Specialist, declare as follows, pursuant to 28 U.S.C. § 1746;

Market Research:

Upon receipt of the SPEAR BALCS Family of Ballistic plate requirement, I explored all available known resources to identify at least two small businesses that could meet the requirement. I was unable to successfully identify any small businesses to meet this requirement. The following depicts market research performed:

On March 30, 2006, I coordinated the requirement for ballistic plates with the small business (SB) specialist, Angela Mitchell.

On March 31, 2006, Ms. Mitchell provided me with a list of armor companies she found when performing internet research, in addition to a link with internet sites she searched. I forwarded both the list and links on to my Program Management Officer (PMO), Jon Laplume, to identify which were armor plate manufacturers. At this time I communicated to my PMO that it is my responsibility to ensure there are not at least two small businesses capable of meeting our needs.

On April 03, 2006, after conducting internet market research, the SB specialist indicated that the SB office would like to pursue this action as a SB set aside.

On April 03, 2006, Mr. Laplume, upon reviewing the list of vendors and links provided by the SB specialist, communicated that many of the companies on the list deal/supply plates. Moreover, all the companies he surveyed on the link are buying their plates from other manufacturers and then reselling them. Mr. Laplume's concerns at this time were SB ability to meet our production requirements and performance requirements given the Aerial Density we have requested. Mr. Laplume stated, "I am currently unaware of any SB that can fulfill the requirements that we are trying to satisfy within my experience at this job, past and current. There are only two PLATE MANUFACTURERS not DISTRIBUTORS that can answer our demand, of those two, I believe that only one of them has the technological know how to produce and quality assure the specific product that SOF requires to meet there need."

On April 04, 2006 an additional inquiry came in from the SB specialist regarding several contracts that had been awarded to small businesses for Small Arms Protective Inserts (SAPI) and Interceptor Body Armor Extremity Protection Deltoid and Axillary Protectors. Once again, I forwarded this inquiry on to my PMO for feedback.

On April 5, 2006, Jon Laplume indicated that, "SAPI does not measure up to the SPEAR/BALCS requirement so we do not buy it, many vendors make SAPI that does not mean they are qualified to make SPEAR. Equate it to just because you are a mechanic does not mean you can work on a Porsche! The extremity efforts are all soft armor and do not meet our SPEAR requirement for protection from Rifle Fire."

On April 05, 2006 the SB specialist, relying on the expertise of the SPEAR PMOs knowledge of both the SOF requirement and the armor market place, concurred to pursue full and open competition.

On February 9, 2007, solicitation H92222-06-R-0023 was canceled due to no acceptable offers.

Further market research was performed by USSOCOM in March 2007 during Industry Day.

Executed on October 09, 2007.

Verdetta Weaver

VERDETTA J. WEAVER
Contract Specialist
USSOCOM Directorate of Procurement

**Declaration of Karen L. Pera**

**GAO Bid Protest B-310018**

I, Karen L. Pera, declare as follows, pursuant to 28 U.S.C. § 1746;

Procurement of BALCS Ballistic Plates:

1. The decision to procure Body Armor Load Carriage System (BALCS) Ballistic Plate Sets as a full and open procurement was based on my personal knowledge of the market trends at that point in time for the body armor industry. The United States Special Operations Command (USSOCOM) has been procuring ballistic plates for the last 8 years, and I have been the Small Business Advisor for that entire period of time.

2. Prior to 9/11, the armor plate manufacturing industry was comprised of several small business manufacturers. Essentially it was a niche industry, perfect for small business. USSOCOM procured its first ballistic armor as a small business set-aside. USSOCOM awarded the contract to Ceredyne after months of testing. Since then, the demand for the Ceredyne product, the primary supplier of body armor to USSOCOM up to this solicitation, has increased greatly. The primary reason for this increased demand by USSOCOM for this particular product is to protect our operators in their pursuit of the global war on terror, Ceredyne's capability to meet the USSOCOM armor requirements in a timely fashion, and the ability of Ceredyne's products to meet NIJ criteria. As USSOCOM, the Department of Defense, Executive Departments (CIA, FBI, etc.), civilian law enforcement agencies, and Homeland Security continued to procure body armor; Ceredyne, originally a small business, became so successful that it no longer qualified for NAICS code 327112, and is now a large business. Were there not a war, the growth for ballistic armor would have continued at a modest trend and continued to be a small business niche industry.

3. The global war on terror in Afghanistan and Iraq has made ballistic armor products for personal safety and vehicles a hot commodity. Big business has taken note of this trend and is busy acquiring ballistic armor companies. This trend has also caused the consolidation of the industry. However, the majority of the members of this industry cannot meet the NIJ criteria, which is a primary requirement for equipping Special Operations Forces.

4. I have held my current position since May 1996 and have attended a minimum of six trade fairs a year and a minimum of three Small Business Innovation Research events a year. (I was also the SBIR Program Manager from May 1996 to May 2006.) During that time I have met several small and large armor manufacturing businesses that were interested in selling their ballistic plates to USSOCOM. I always ask them if their product meets the NIJ criteria. Typically I am told they are selling their products to the FBI and the police. They state that their products are on GSA schedule. This conversation continues until they admit that their

products have not met the NIJ test. No matter what the size of the business, the problem is that few in the industry can meet the NIJ requirements. This is not dependent on the size of the business, but rather based on the DESIGN of the plates. The Contracting Officer's review of the marketplace; input from Natick, a Senior Department of Defense testing agency in combination with the fact that the three offerors that responded to the 2006 USSOCOM armor solicitation could not meet the requirements conclusively demonstrate that there was not two small businesses capable of providing a product that met the requirements of the solicitation. These facts and my personal knowledge of the market place was the basis for utilizing full and open competition for this procurement.

Executed on October 9, 2007.

Karen L Pera

KAREN L. PERA
DEP DIR, OFFICE OF SMALL
BUSINESS PROGRAMS
US Special Operations Command