**Greenberg Traurig**

**Transmittal Cover Sheet**

**From:** Richard Moorhouse **Tel:** 703.749.1311 **E-Mail:** Moorhouser@gtlaw.com

| To: | Fax No: | Company: | Phone No.: |
|---|---|---|---|
| Peter Verchinski, Senior Attorney | (202)512-9749 | U.S. Government Accountability Office (GAO) | (202)512-4788 |
| Christine M. Choi, Trial Attorney | (703)696-1537 | U.S. Army Litigation Center Contract and Fiscal Law Division, Team I | (703)696-2843 |

**File No.:** 073290.023100 (User No. **015334**)

**Re:** Protest of The Protective Group, Inc. Under Solicitation No. USA-SNOTE-070813-005; B-310018

**Date:** October 10, 2007 4:00 PM

**No. Pages:** Including Cover Sheet

<u>If you do not receive all pages properly, please call (703) 749-1381</u>.

**Notes:**

**Also sent via:** ☐ US Mail ☐ Overnight ☐ Messenger ☐ Email ☒ No Other

The information contained in this transmission is attorney privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone collect and return the original message to us at the address below via the U.S. Postal Service. We will reimburse you for your postage. Thank you.

1750 Tysons Boulevard, Suite 1200, McLean, Virginia 22102 Phone: 703.749.1300 Fax: 703.749.1301

*MIA 179740786v3 9/24/2007*

**Greenberg Traurig**

Richard Moorhouse
Tel. 703.749.1311
Fax 703.714.8308
Moorhouser@gtlaw.com

October 10, 2007

**VIA FACSIMILE & E-MAIL**

Peter Verchinski, Senior Attorney
Office of the General Counsel
U.S. Government Accountability Office (GAO)
441 G Street, N.W.
Washington, D.C. 20548

Attn: Procurement Law Control Group (PLCG)

Re: **Protest of The Protective Group Under Solicitation No. H92222-07-R-0011 B-310018**

Dear Mr. Verchinski:

In accordance with your prior direction, The Protective Group ("TPG"), through its undersigned counsel, hereby responds today, October 10, 2007, to the submission filed by the Army on October 9 concerning the "Rule of Two" issue. The Army's submission further demonstrates that the Army continues to misapply the requirements of FAR 19.502-2 (b) (1) in this procurement, and that the Agency's reasoning behind its decision not to set aside the procurement in whole or in part for small business concern ("SBC") competition is seriously flawed.

As a predicate to TPG's response, TPG does not disagree for an instant that the Body Armor Load Carriage ("BALCS") Ballistic Plate body armor system is a life-saving, mission-critical item. However, TPG finds nothing in FAR 19.502-2 (b) (1) or in applicable case law which allows an agency to misapply the requirements of the Rule of Two for that reason. Again, the Rule is simple -- is there a reasonable expectation that offers will be obtained from

ALBANY
AMSTERDAM
ATLANTA
BOCA RATON
BOSTON
BRUSSELS*
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON*
LOS ANGELES
MIAMI
MILAN*
NEW JERSEY
NEW YORK
ORANGE COUNTY
ORLANDO
PHILADELPHIA
PHOENIX
ROME*
SACRAMENTO
SILICON VALLEY
TALLAHASSEE
TAMPA
TOKYO*
TYSONS CORNER
WASHINGTON, D.C.
WEST PALM BEACH
ZURICH
*Strategic Alliance
Tokyo-Office/Strategic Alliance

at least two responsible SBCs at fair and reasonable prices? The Rule does not ask, or permit, an agency to base its determination whether to set aside the procurement because of the particular nature of the product or system being acquired, even if, as here, the item may be of the highest war-fighting priority. TPG believes that your Office has already rejected the Army's prior principal argument to justify its decision not to invoke the Rule of Two -- the lack of acceptable offers from SBCs (***and***, we note, from the incumbent large business contractor, Ceradyne as well) under the 2006 solicitation's go-no go criteria. Therefore, TPG's present response will not readdress that issue but instead will directly rebut the new (and rather belated) arguments and assertions of fact made by the Army in its October 9 submission.

The Army argues that since the subject Solicitation has not resulted in any offers from SBCs, its decision not to conduct a set aside is therefore justified. That argument is specious and nothing more than a glaring *post hoc* rationalization. The Army's supplemental submission, particularly the Contracting Officer's latest statement, does not even make clear what information the Contracting Officer actually knew when she made the decision not to set aside the acquisition for SBCs. In addition, while the Contract Specialist's supplemental declaration lists dates that she states depict market research, all but one of the dates listed occurred more than one year *prior* to the release of the subject Solicitation.

In any event, for the same reason that TPG did not submit an offer, it must be presumed that other SBCs did not submit offers because the Solicitation was ***not*** set aside in whole or in part for SBC competition. The Army has produced no evidence that SBCs have not participated in the Solicitation because, as the Army further argues, they lack the necessary

technology and manufacturing capabilities to meet the specific technical requirements of the BALCS system and the associated stringent testing parameters of the procurement. In fact, the Army admits that, during the March 1-2, 2007 Industry Day Conference, ***five*** SBCs "participated in one-on-one discussions with the Government and displayed an ***interest*** in providing body armor to ***meet the requirement***." (Emphasis added.) The five firms were TPG, MSA Paraclete, Dynamic Defense Materials, First Choice Armor, and Armor Works. In all five instances, notwithstanding the admitted "interest" of these SBCs in meeting the BALCS requirement, the Army unilaterally and arbitrarily determined that these SBCs would not be able to do so because their respective catalog and website information did not indicate that their existing products met the specific weight, thickness and ballistic specifications demanded of BALCS armor plates.

According to Richard W. Elder, the Army's Assistant Program Manager for Special Operations Forces Survival Systems, in his declaration submitted as part of the Army's October 9 submission, the Army concluded in all five instances that, "the company did not provide any indication that they could or intended to try to meet the Government's requirements." However, regarding the analysis of First Choice Armor, Mr. Elder uses uncertain phrases such as "did not seem to meet" and "it is doubtful that this product will meet" to describe the substance of the Army's conclusions as to that company's ability to meet the Solicitation requirements. Also, Mr. Elder states that the prospective competition by two other SBCs that did not attend the Industry Day Conference, DefensTech International and Armor Express, was also discounted because information about these companies gleaned from tradeshows and their

catalogs and websites similarly did not indicate they could furnish a BALCS-compliant armor plate product. Again, Mr. Elder uses the rather indefinite phrases "did not seem to meet" and "did not seem to suggest" to describe the Army's analysis of DefensTech's ability to meet the Solicitation requirements. This is yet another instance of the Army's seriously misdirected logic in deciding that an SBC's prospective ability to meet a particular specification for a particular product is the same as the SBC's overall "responsibility" as a contractor having the sufficient technical and financial capabilities and resources to successfully perform the contract. It is not the same criterion for the analysis demanded by the Rule of Two.

The Army by its own admission thus had a total of ***seven*** prospective SBC offerors before it but yet determined months before the Solicitation was even issued that these firms could not meet the BALCS requirements, even though the Army well knew from the very product information it used as a basis to reject a set aside that all firms in fact ***currently produce*** body armor plate products for the U.S. military. The Army here was not conducting a procurement for tanks which the SBCs in question have not manufactured; the requirement was for an enhanced version of armor plate they ***already produce***. The Army has not demonstrated that only a large business manufacturer -- such as the large business incumbent, Ceradyne -- can produce BALCS plates. (To make such a determination moreover would be akin to an unduly restrictive pre-qualification requirement. See FAR subpart 9.2.) While there may be more potential limitations on the capacities of SBCs than large business concerns, the Rule of Two does not permit an agency to make the sweeping generalizations as to prospective

technical compliance as the Army has done here in deciding that none of the seven SBCs it admittedly identified were "responsible" firms for purposes of the BALCs procurement.

As noted above, the Army cannot show that these seven firms did not submit an offer because they decided they could not meet the BALCs specifications as to weight, thickness, and ballistic protection as well as the testing requirements. As Mr. Scott McMichael, the COO of TPG stated during the October 4, 2007 teleconference with your Office , and as he confirms in his attached Declaration, TPG is committed to submitting a proposal compliant with all testing requirements of the subject Solicitation even if they remain unchanged.

Also, the Army overlooks the fact than an SBC may properly subcontract up to 50% of certain contract work to a large business concern in most instances. Even if, for argument's sake, any or all of the seven firms in question needed additional technical or manufacturing support to produce BALCS plates, they presumably could obtain those supporting resources from large business armor plate manufacturers, which, as the Army has repeatedly -- and irrelevantly -- stressed during this protest, appear to have significantly grown in number due to the wartime demands for their products.

For all of the reasons stated above, and incorporating all of its prior arguments, TPG again respectfully requests that your Office conclude that the Army violated the Rule of Two in this procurement and direct the Army to now set aside the procurement in whole or in part for SBC competition under the requirements of FAR 19.502-2 (b) (1).

Respectfully submitted,

Richard L. Moorhouse
John G. Stafford
David T. Hickey
Sean M. Connolly

Enclosure

cc: **Via Facsimile and Overnight FEDEX Mail**

Christine M. Choi
Trial Attorney
U.S. Army Litigation Center
Contract and Fiscal Law Division, Team I
ATTN: JALS-KFLD
901 North Stuart Street
Arlington, Virginia 22203-1837
Tel.: 703-696-2843
Fax: 703-696-1537

THE PROTECTIVE GROUP INC.

Re: **Protest of The Protective Group, Inc. Under Solicitation No. H92222-07-R-0011 B-310018**

**DECLARATION OF SCOTT J. MCMICHAEL**

I, Scott J. McMichael, am over eighteen years of age and hereby declare and state the following based on my personal knowledge and subject to the penalties of 18 U.S.C. § 1001:

1. I am the Chief Operating Officer of The Protective Group, Inc. ("TPG"), 14040 N.W. 58th Court, Miami Lakes, Florida 33014.

2. I am responsible for TPG contract matters, including the submission of an offer in response to Solicitation No. H92222-07-R-0011 ("Solicitation") by the U.S. Special Operations Command ("SOCOM") for the procurement of ballistic plates for the body armor load carriage system ("BALCS").

3. On October 6, 2007, TPG's counsel and I telephonically discussed issues related to TPG's Protest B-310018 with Government Accountability Officer (GAO) Attorney, Mr. Peter Verchinski. Agency Counsel, Ms. Christine Choi and Mr. Raymond Saunders were also present during this teleconference.

4. I reiterate and affirm my statements from the teleconference: TPG is absolutely committed to submitting a proposal that complies with all testing requirements set forth in Solicitation H92222-07-R-0011 should they remain unchanged notwithstanding the outcome of the protest, including Shatter Gap testing and the number of BALCS plates that may be necessary for testing.

9 October 2007
Date

Scott J. McMichael

# Fax Cover Sheet

www.sba.gov

U.S. Small Business Administration

SBA

*Your Small Business Resource*

To: Christine Choi, Esquire

Organization: Dept. of the Army

Phone: Fax:703-696-1537

Date: 10/15/2007 Time:3:51:18 PM

**From:** Kenneth Dodds

Office: SBA

Phone: 202-619-1766 Fax:202-205-6873

No. of pages (including this cover sheet) 7

As America's Small Business Resource, the SBA can connect you with a network of services to fit your needs.

We help small businesses:

- Get funding to grow.
- Open doors to contracts.
- Find local resources.
- Recover from disasters.

And more.

## Message:

The Protective Group, B-310018

CONFIDENTIALITY NOTE: the information contained in this facsimile transmittal sheet and the document(s) that follow are for the exclusive use of the addressee and may contain information protected by the Privacy Act, 5 U.S.C. 552a, or otherwise confidential, privileged, on non-disclosable information. If the recipient of this facsimile is not the addressee or is not the person responsible for delivering this facsimile to the addressee, the recipient may violate the law by reading, photocopying, distributing or otherwise using this facsimile transmission or its contents in any way. If the recipient has received this facsimile transmission in error, call the sending office immediately.

SBA Form 959 (03/04) Previous editions are obsolete.

Federal Recycling Program Printed on Recycled Paper

U.S. SMALL BUSINESS ADMINISTRATION
WASHINGTON, DC 20416

October 15, 2007

**Via Facsimile**

Peter Verchinski, Esquire
Office of General Counsel
U.S. Government Accountability Office
441 G Street, N.W.
Washington, D.C. 20548
fax: 202-512-9749

Re: The Protective Group, Inc., B-310018

Dear Mr. Verchinski:

On August 15, 2007, The Protective Group, Inc. (TPG) filed a protest concerning the U.S. Department of the Army, U.S. Special Operation Command's (SOCOM) failure to set Request for Proposals (RFP) No. H92222-07-R-0011 (RFP No. 0011) aside for competition among small business concerns (SBCs). On October 4, 2007, the U.S. Government Accountability Office (GAO) asked the U.S. Small Business Administration (SBA) to comment on the protest. As discussed below, we believe that SOCOM's set aside decision was unreasonable. Consequently, we urge GAO to sustain the protest.

## I. FACTS

SOCOM awarded a contract for body armor ballistic plates to the incumbent service provider, Ceradyne, Inc. (Ceradyne), in 1998 pursuant to a small business set-aside. Ceradyne is no longer small. SOCOM attempted to re-compete the requirement and issued an unrestricted (full and open) RFP on August 1, 2006. Solicitation No. H92222-06-R-0023 (RFP No. 0023). SOCOM received four offers, including one from the incumbent, Ceradyne. The other three offerors were SBCs. SOCOM rejected one offer as incomplete. After evaluation of the remaining three offers, SOCOM determined that all of the offers were unacceptable, and canceled RFP No. 0023 on January 11, 2007.

On February 9, 2007, SOCOM issued a pre-solicitation synopsis for its requirement. On March 1-2, 2007, SOCOM held a pre-solicitation conference with prospective offerors. Nine companies attended the conference, including five SBCs. SOCOM issued RFP No. 0011 on May 9, 2007. SOCOM required offerors to submit a Notice of Intent (NOI) to submit a proposal in order to be eligible to submit an offer. Eight companies submitted the required NOI on May 23, 2007. SOCOM has not disclosed how many of these concerns were small. Proposals were due August 7, 2007. On August 2, 2007, TPG asked the contracting officer to extend the closing date based on alleged improprieties in the RFP. On August 6, 2007, TPG filed an agency-level protest.

TPG filed the subject protest with GAO on August 15, 2007.

## II. ARGUMENT

An acquisition with an estimated value over $100,000 must be set aside for exclusive competition among SBCs if "there is a reasonable expectation that (1) offers will be obtained from at least two responsible small business concerns...; and (2) award will be made at fair market prices." Federal Acquisition Regulation (FAR) § 19.502-2(b). A small business set-aside determination is "a matter of business judgment within the contracting officer's discretion" that will not be disturbed "absent a showing that it was unreasonable." *Marketing & Management Information, Inc.*, B-283399.4, May 18, 2000, 2000 CPD ¶ 82; *see also Neal R. Gross & Co., Inc.*, B-240924, B-240924.2, Jan. 17, 1991, 91-1 CPD ¶ 53. No particular method for ascertaining the likelihood of receiving at least two offers from SBCs is required. *American Imaging Services, Inc.*, B-246124, B-246124.2, Feb. 13, 1992, 92-1 CPD ¶ 188. Instead, a contracting officer must make reasonable efforts to ascertain whether it is likely that offers will be received from at least two SBCs, and GAO will review a set-aside determination to examine whether it is "based on sufficient facts so as to establish its reasonableness." *Marketing & Management Information, Inc.*, B-283399.4, May 18, 2000, 2000 CPD ¶ 82; *see also CardioMetrix*, B-271012, May 15, 1996, 96-1 CPD ¶ 227.

In its Agency Report dated September 14, 2007, SOCOM offered three rationales or justifications for its decision not to set this acquisition aside for SBCs. First, SOCOM pointed to the fact that it received three unacceptable offers from SBCs under the solicitation that it canceled (RFP No. 0023). Second, SOCOM argued that many concerns in the industry, including the incumbent, have grown to be other than small due to increases in demand brought about by the wars in Iraq and Afghanistan. Third, SOCOM pointed to the fact that its small business specialist (SBS) concurred with its decision to issue the solicitation on an unrestricted (full and open) basis. As discussed below, none of these arguments or facts support SOCOM's decision not to set aside this acquisition aside for SBCs.

SOCOM's contention that it based its set-aside decision on the fact that three SBCs submitted unacceptable offers under RFP No. 0023 does not provide a rational basis for SOCOM's decision, because SOCOM also received an unacceptable offer from the *large business incumbent* that submitted an offer under RFP No. 0023. The fact that SOCOM received no acceptable offers from small or large businesses under RFP No. 0023 only proves that SOCOM's full and open RFP was unduly restrictive, since no commercial source, including the incumbent, submitted an acceptable offer. The fact that three SBCs submitted offers under SOCOM's full and open RFP actually supports a determination that the subsequent procurement should be set aside for SBCs, since the contracting officer should have reasonably expected to receive offers from at least the same three SBC competitors under a less restrictive solicitation.

SOCOM's contention that many concerns in this particular industry have grown to be other than small is an insufficient justification for its decision not to set the acquisition aside for SBCs. The relevant consideration is whether the contracting officer has a reasonable expectation of receiving offers from at least two SBCs. The fact that the incumbent and perhaps one or more other competitors from the small business set-aside competition in 1998 have grown to be other than small has no bearing on whether a small business set-aside is required by law. Here the incumbent contract was awarded pursuant to a small business set-aside. In October, 2006, the contracting officer received three offers from SBCs under a similar solicitation which was subsequently cancelled because it was unduly restrictive. Five SBCs attended the pre-solicitation conference. Thus, the contracting officer should have expected to receive offers from at least two SBCs under the subject solicitation.

While SOCOM's SBS concurred with SOCOM's acquisition strategy, GAO has sustained numerous protests challenging an agency's decision not to set an acquisition aside for SBCs, notwithstanding the concurrence of the agency's SBS or the SBA Procurement Center Representative (PCR). *See Rochester Optical Manufacturing Co.*, B-292247.2, Aug. 6, 2003, 2003 CPD ¶ 138; *Marketing & Management, Inc.*, B-283399.3, Nov. 30, 1999, 99-2 CPD ¶ 105; *Wind Gap Knitwear, Inc.*, B-251411, B-251413, Mar. 31, 1993, 93-1 CPD ¶ 281; *Neal R. Gross & Co., Inc.*, B-240924.2, Jan. 17, 1991, 91-1 CPD ¶ 53. While it is always a good idea to consult an SBS and/or PCR, their recommendations are only as good as the factual information relied upon in reaching their conclusions. Here, SOCOM did not consult the SBA PCR prior to issuing either RFP Nos. 0023 or 0011 on an unrestricted (full and open) basis. An SBA PCR can make recommendations on how to structure a procurement to maximize small business participation, such as setting an acquisition aside for SBCs on a full or partial basis, breaking a procurement up to into smaller discrete procurements, or reserving one or more awards for SBCs under a multiple award procurement. *See* 13 C.F.R. § 125.2(b)(1), (b)(6)(i); FAR §§ 19.402(c)(1)(i), 19.501(f); *see also Information Ventures, Inc.*, B-294267, Oct. 8, 2004, 2004 CPD ¶ 205; *Neal R. Gross and Co., Inc.*, B-249114.2, Oct. 22, 1992, 92-2 CPD ¶ 269. SOCOM contacted the PCR prior to filing its supplement to the Agency Report, but the PCR declined to provide any advice, due to the pending litigation and the late stage of the acquisition.

In its supplement to the Agency Report, SOCOM discloses that five of the eight concerns that attended the pre-solicitation conference in March, 2007, were SBCs. SOCOM basically contends that none of these SBCs could demonstrate that they could meet SOCOM's performance requirements. However, it is unclear how in March, 2007, SOCOM could conclude that any concern could meet SOCOM's performance requirements, since the solicitation had not been issued, and all offerors would have to undergo testing to prove their product met SOCOM's as yet undefined requirements. The incumbent here went through months of testing before it was awarded the small business set-aside contract in 1998, yet its offer under RFP. No. 0023 was rejected as unacceptable. Declaration of Karen Pera, ¶ 2. The fact is, if other buyers in the

marketplace do not require body armor plates that meet SOCOM's specifications, then no concern is going to spend the time and resources developing the ability to manufacture the item without a solicitation and an opportunity to compete. Thus, it was unreasonable for SOCOM to dismiss the capability of the five SBCs that attended the pre-solicitation conference in March and ignore the likelihood of their submission of offers, simply because the SBCs could not demonstrate that they could meet all of SOCOM's undefined, stringent performance requirements months before the solicitation had even been issued. If the incumbent, who was small at the time of award, was able to meet SOCOM's requirements in 1998 after months of testing, it is certainly reasonable to believe that other SBCs will be able to meet SOCOM's performance requirements under this solicitation using the same product testing procedures.

In its supplement to the Agency Report, SOCOM contends that no SBC submitted an offer on August 7, 2007. However, GAO has recognized that the results of a procurement cannot save a contracting officer's unreasonable set-aside determination, because there is no way of knowing whether SBCs would have submitted offers if competition were limited to SBCs. *See USA Fabrics, Inc.*, B-295737.2, Apr. 19, 2005, 2005 CPD ¶ 82 (protest challenging procuring agency's decision not to set solicitation aside for HUBZone SBCs sustained). Here, on every occasion where SBCs had an opportunity to express their intent to submit offers, *more than two* SBCs expressed their intent to participate in SOCOM's procurement - three SBCs submitted offers under the prior solicitation and five SBCs attended the pre-solicitation conference. Further, although SOCOM claims that no SBC submitted an offer, SOCOM does not disclose how many of the eight NOIs it received on May 23, 2007, were from SBCs. SOCOM had an obligation to consider this information before proceeding with its acquisition on an unrestricted (full and open) basis. A contracting officer's obligation to consider information concerning the propriety of a small business set-aside may continue up until the time of offer or beyond. *See Northwest Hydraulic Consultants, Inc.*, B-266211, Nov. 17, 1995, 95-2 CPD ¶ 229 (protest challenging agency's decision to convert unrestricted architect-engineer services solicitation to a small business set-aside after receipt of initial qualifications denied); *Baker Support Services, Inc.; Management Technical Services, Inc.*, B-256192.3, B-256192.4, Sep. 2, 1994, 95-1 CPD ¶ 75 (protest challenging agency's decision to terminate contracts awarded under unrestricted solicitation and re-solicit as a small business set-aside denied); *Ogden Allied Services Corporation*, B-227837.4, Jul. 29, 1987, 87-2 CPD ¶ 115 (protest challenging agency's decision to amend unrestricted solicitation four days before closing date and make it a small business set-aside dismissed, as was claim for proposal preparation costs); *National Steel and Shipbuilding Company; et al.*, B-202399.3, Dec. 15, 1981, 81-2 CPD ¶ 471 (protest challenging agency's decision to amend unrestricted solicitation six days prior to closing and set it aside for SBCs denied); *American Dredging Company*, B-201687, May 5, 1981, 81-1 CPD ¶ 344 (protest challenging agency's decision to amend solicitation four days before bid opening and make it a small business set-aside denied); *Gill Marketing Co., Inc.*, B-194414.3, Mar. 24, 1980, 80-1 CPD ¶ 213 (protest challenging agency's decision to amend solicitation after proposals were received and make it a small business

set-aside denied); *Ampex Corporation; RCA Corporation*, B-183739, Nov. 14, 1975, 75-2 CPD ¶ 304 (protest challenging agency's decision to amend unrestricted solicitation and make it a small business set-aside shortly before the closing date denied). Thus, SOCOM did not reasonably consider all of the factual information at its disposal before proceeding with its acquisition on an unrestricted (full and open) basis.

In declarations provided with its supplement to the Agency Report, SOCOM personnel contend that some of the SBCs that have expressed interest in the procurement or that it has identified through market research are distributors, not manufacturers. Declaration of Richard W. Elder. SOCOM's RFP No. 0011 requires offerors to be the original equipment manufacturer in order to be eligible for award, and the limitations on subcontracting provide that in order to be awarded a small business set-aside contract for manufactured products, an SBC must "perform at least 50 percent of the cost of manufacturing the supplies or products (not including the costs of materials)." 13 C.F.R. § 125.6(a)(2); FAR § 52.219-14(b)(2). The two concerns referenced by TPG in its protest, TPG and ArmorWorks Enterprises, LLC (ArmorWorks), both appear to be manufacturers, not distributors, and both of these firms attended the pre-solicitation conference. The SOCOM contract specialist asserts that the Program Management Officer believes that only two manufacturers exist that can meet its demand. Declaration of Verdetta J. Weaver. However, TPG ($46 million average annual revenue, 170 employees) and ArmorWorks ($100 million average annual revenue, 200 employees) both appear to have substantial manufacturing capacity. Dynamic Small Business Search, Central Contractor Registration database, http://www.ccr.gov. Further, the incumbent was an SBC when it was awarded the body armor contract in 1998, and it was able to meet the substantial increase in demand brought about by the wars in Iraq and Afghanistan. Thus, in our view SOCOM has failed to explain why no SBC could meet its demand from a purely manufacturing capacity standpoint, especially since SOCOM may make multiple awards under the solicitation. SOCOM Memorandum of Law, p. 8. Finally, the SOCOM Deputy Director of Small Business Programs asserts that few manufacturers can meet "NIJ criteria," but does not explain why meeting the criteria is required or important, does not discuss the specific manufacturers that can meet this criteria or their size, and does not explain why SBCs such as TPG and ArmorWorks could not meet this criteria prior to contract award. Declaration of Karen L. Pera, ¶ 4. Thus, SOCOM's supplement to the Agency Report does not establish that its set-aside decision was reasonable.

## III. CONCLUSION

The incumbent contractor was awarded its contract pursuant to a small business set-aside, and there was clear small business interest in the current procurement throughout the process. Three SBCs submitted offers under the prior solicitation which was cancelled, and five SBCs attended the pre-proposal conference for this solicitation. Although SOCOM's apparent desire for the incumbent to have an opportunity to compete is not surprising, the incumbent's ability to compete is not a relevant consideration when

considering whether a small business set-aside is required by law. A concern that was an SBC at the time of award won the previous competition and successfully performed the requirement, and there is no reason to believe that small business manufacturers will not be able to meet SOCOM's technical and capacity requirements if given the opportunity to compete on a small business set-aside basis, as required by law. Consequently, we urge GAO to sustain the protest.

Sincerely,

John W. Klein
Associate General Counsel
for Procurement Law

Kenneth Dodds
U.S. Small Business Administration
Office of General Counsel
409 Third Street, S.W., 5th Floor
Washington, D.C. 20416
tel: 202-619-1766
fax: 202-205-6873

cc: Richard Moorhouse, Esquire
Greenberg Taurig
fax: 703-714-8308

Christine Choi, Esquire
Dept. of the Army
fax: 703-696-1537

**Greenberg Traurig**

## Transmittal Cover Sheet

**From:** Richard Moorhouse **Tel:** 703.749.1311 **E-Mail:** Moorhouser@gtlaw.com

| To: | Fax No: | Company: | Phone No.: |
|---|---|---|---|
| Peter Verchinski, Senior Attorney | (202)512-9749 | U.S. Government Accountability Office (GAO) | (202)512-4788 |
| Christine M. Choi, Trial Attorney | (703)696-1537 | U.S. Army Litigation Center Contract and Fiscal Law Division, Team I | (703)696-2843 |
| Kenneth W. Dodds | (202)481-2950 | Small Business Administration | (202)619-1766 |

**File No.:** 073290.023100 (User No. 015334)

**Re:** Protest of The Protective Group, Inc. Under Solicitation No. USA-SNOTE-070813-005; B-310018

**Date:** October 16, 2007 11:30 AM

**No. Pages:** Including Cover Sheet 3

If you do not receive all pages properly, please call (703) 749-1381.

**Notes:**

Also sent via: ☐ US Mail ☐ Overnight ☐ Messenger ☐ Email ☒ No Other

The information contained in this transmission is attorney privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone collect and return the original message to us at the address below via the U.S. Postal Service. We will reimburse you for your postage. Thank you.

1750 Tysons Boulevard, Suite 1200, McLean, Virginia 22102 Phone: 703.749.1300 Fax: 703.749.1301
MIA 179740786v4 10/10/2007

Greenberg Traurig

Richard Moorhouse
Tel. 703.749.1311
Fax 703.714.8306
Moorhouser@gtlaw.com

October 16, 2007

**VIA FACSIMILE (202)512-9749**

Peter Verchinski, Senior Attorney
Office of the General Counsel
U.S. Government Accountability Office (GAO)
441 G Street, N.W.
Washington, D.C. 20548

Attn: Procurement Law Control Group (PLCG)

Re: **Protest of The Protective Group Under Solicitation No. H92222-07-R-0011 B-310018**

Dear Mr. Verchinski:

On behalf of The Protective Group ("TPG"), we are pleased to receive the Small Business Administration ("SBA's") October 15 submission which concurs with TPG's central protest argument that the Army reached an unreasonable "Rule of Two" determination and improperly failed to set aside the subject Solicitation No. H92222-07-R-0011 for small business competition. SBA's analysis is extensive and clearly correct on the law, and needs no further supplementation by TPG.

SBA urges GAO to sustain the protest, and, based on SBA's October 15 analysis and TPG's prior arguments, TPG indeed respectfully renews its request that the protest be sustained.

Respectfully submitted,

Richard D. Moorhouse
John G. Stafford
David T. Hickey
Sean M. Connolly

ALBANY
AMSTERDAM
ATLANTA
BOCA RATON
BOSTON
BRUSSELS*
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON*
LOS ANGELES
MIAMI
MILAN*
NEW JERSEY
NEW YORK
ORANGE COUNTY
ORLANDO
PHILADELPHIA
PHOENIX
ROME*
SACRAMENTO
SILICON VALLEY
TALLAHASSEE
TAMPA
TOKYO*
TYSONS CORNER
WASHINGTON, D.C.
WEST PALM BEACH
ZURICH
*Strategic Alliance
Tokyo-Office/Strategic Alliance

cc: **Via Facsimile**

Christine M. Choi
Trial Attorney
U.S. Army Litigation Center
Contract and Fiscal Law Division, Team I
Tel.: 703-696-2843
Fax: 703-696-1537

Kenneth W. Dodds
Small Business Administration
Tel.: 202-619-1766
Fax: 202-481-2950

G A O
Accountability * Integrity * Reliability

United States Government Accountability Office
Washington, DC 20548

# Facsimile Transmission Sheet

**Date:** October 16, 2007

Number of pages, including this cover sheet: 1

If transmission problems occur, please call 202-512-4788.
Our fax number is 202-512-9749.

**Re:** B-310018
The Protective Group

**From:** Peter Verchinski, Esq.
(202) 512-6173

**To:**

| Name | Firm/Agency | Phone | Fax |
|---|---|---|---|
| Richard L. Moorhouse | Greenberg Traurig | 703-749-1311 | 703-714-8308 |
| Kenneth W. Dodds | Small Business Administration | 202-619-1766 | 202-481-2950 |
| Christine Choi | Department of the Army | 703-696-2843 | 703-696-1537 |

**Comments:**

Our Office has received the SBA's October 15, 2007 submission in the above-referenced protest. As stated by facsimile cover sheet (dated October 4), the protester has until tomorrow, October 17 to respond to the SBA's submission.

To the extent the Army would also like to respond to the SBA's submission, we ask that it do so by close of business tomorrow, October 17, as well.

**Greenberg Traurig**

**Transmittal Cover Sheet**

**From:** Richard Moorhouse | **Tel:** 703.749.1311 | **E-Mail:** Moorhouser@gtlaw.com

| To: | Fax No: | Company: | Phone No.: |
|---|---|---|---|
| Peter Verchinski, Senior Attorney | (202)512-9749 | U.S. Government Accountability Office (GAO) | (202)512-4788 |
| Christine M. Choi, Trial Attorney | (703)696-1537 | U.S. Army Litigation Center Contract and Fiscal Law Division, Team I | (703)696-2843 |
| Kenneth W. Dodds | (202)481-2950 | Small Business Administration | (202)619-1766 |

**File No.:** 073290.023100 (User No. 015334)

**Re:** Protest of The Protective Group, Inc. Under Solicitation No. H92222-07-R-0011; B-310018

**Date:** October 18, 2007 11:30 AM

**No. Pages:** Including Cover Sheet 3

If you do not receive all pages properly, please call (703) 749-1381.

**Notes:**

**Also sent via:** ☐ US Mail ☐ Overnight ☐ Messenger ☐ Email ☒ No Other

The information contained in this transmission is attorney privileged and confidential. It is intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone collect and return the original message to us at the address below via the U.S. Postal Service. We will reimburse you for your postage. Thank you.

Greenberg Traurig

Richard Moorhouse
Tel. 703.749.1311
Fax 703.714.8308
Moorhouser@gtlaw.com

October 18, 2007

**VIA FACSIMILE (202)512-9749**

Peter Verchinski, Senior Attorney
Office of the General Counsel
U.S. Government Accountability Office (GAO)
441 G Street, N.W.
Washington, D.C. 20548

Attn: Procurement Law Control Group (PLCG)

**Re: Protest of The Protective Group Under Solicitation No. H92222-07-R-0011 B-310018**

Dear Mr. Verchinski:

As counsel for The Protective Group ("TPG"), we understand that the Agency has been given until the close of business today to file a reply to the Small Business Administration ("SBA's") October 15 submission to your Office which concluded that the Agency had improperly failed to set aside the subject procurement for small business competition in accordance with the Rule of Two. Your Office has given us an additional opportunity to comment on the SBA's determination.

In our October 16 reply, we saw no need to comment substantively on the SBA's determination, which was very well-reasoned and clearly correct on the law. All that we might add here is to note that where GAO solicits or receives SBA's views on a particular matter, it customarily gives the SBA's interpretation of the Small Business Act and the implementing regulations, an area of the law SBA is charged with administering, broad deference as long as the interpretation is reasonable. See CMS Information Services, Inc., B-290541, August 7, 2002, 2002 CPD ¶ 132; Rothe Computer Solutions, LLC d/b/a Rohmann Joint Venture, B-299452, May 9, 2007, 2007 CPD ¶ ________, 2007 WL 1556928.

SBA's interpretation of the Rule of Two requirements and its conclusion as to the Agency's failure to observe them could not be more reasonable. Respectfully, your Office should afford SBA's October 15 analysis the "great weight" such an interpretation is usually given. Rothe Computer Solutions, supra, at 3.

ALBANY
AMSTERDAM
ATLANTA
BOCA RATON
BOSTON
BRUSSELS*
CHICAGO
DALLAS
DELAWARE
DENVER
FORT LAUDERDALE
HOUSTON
LAS VEGAS
LONDON*
LOS ANGELES
MIAMI
MILAN*
NEW JERSEY
NEW YORK
ORANGE COUNTY
ORLANDO
PHILADELPHIA
PHOENIX
ROME*
SACRAMENTO
SILICON VALLEY
TALLAHASSEE
TAMPA
TOKYO*
TYSONS CORNER
WASHINGTON, D.C.
WEST PALM BEACH
ZURICH
*Strategic Alliance
Tokyo-Office/Strategic Alliance

Respectfully submitted,

Richard L. Moorhouse
John G. Stafford
David T. Hickey
Sean M. Connolly

cc: **Via Facsimile**

Christine M. Choi
Trial Attorney
U.S. Army Litigation Center
Contract and Fiscal Law Division, Team I
Tel.: 703-696-2843
Fax: 703-696-1537

Kenneth W. Dodds
Small Business Administration
Tel.: 202-619-1766
Fax: 202-481-2950

DEPARTMENT OF THE ARMY
UNITED STATES ARMY LEGAL SERVICES AGENCY
901 NORTH STUART STREET
ARLINGTON, VA 22203-1837
(703) 696-2843; DSN 426; Fax ext. 1537
E-mail: christine.choi@hqda.army.mil

REPLY TO
ATTENTION OF

October 18, 2007

Contract and Fiscal Law Division

Peter Verchinski, Esquire
Office of the General Counsel
U.S. Government Accountability Office
441 G. Street, NW
Washington, D.C. 20548

Subject: Protest of The Protective Group, Inc., B-310018

Dear Mr. Verchinski:

Enclosed please find the Agency's written comments responding to the Small Business Administration's comments of October 15, 2007. Copies of this correspondence and the enclosed written comments have been sent to Richard Moorhouse, Esq., counsel to The Protective Group, Inc. (hereafter "Protester" or "The Protective Group") and Kenneth W. Dodds Esq., Small Business Administration.

Any comments by the Protester regarding our written comments should be sent directly to your office with a copy forwarded to:

Ms. Christine M. Choi
U.S. Army Litigation Center
Contract and Fiscal Law Division, Team I
ATTN: JALS-KFLD
901 North Stuart Street, Suite 500
Arlington, Virginia 22203-1837

**Although the SBA's comments focus on "whether it is likely that offers will be received from at least two SBCs," USSOCOM acted appropriately in also considering the small businesses' capabilities to actually perform the 0011 Solicitation requirements when making the decision not to set aside the 0011 Solicitation for small businesses.**

In its October 15, 2007 comments, the SBA states that "a contracting officer must make reasonable efforts to ascertain whether it is likely that offers will be received from at least two SBCs," and further emphasizes that "[t]he relevant consideration is whether the contracting officer has a reasonable expectation of receiving offers from at least two SBCs." However, USSOCOM submits that the relevant inquiry does not stop with the question of whether USSOCOM is likely to receive offers from at least two SBCs, but must also go on to consider whether the small businesses that might submit proposals also have the "capabilities to perform the contract requirements." Information Ventures, Inc., B-279924, Aug. 7, 1988, 1998 U.S. Comp. Gen. LEXIS 273. See also Belleville Shoe Manufacturing Company, et. al., B-287237; B-287237.2; B-287237.3, May 17, 2001, 2001 CPD ¶ 87 ("In determining the availability of responsible small business concerns for set-aside purposes, the contracting agency's investigation goes not only to the existence of the businesses, but also to their capability to perform the contract." (citation omitted)); ViroMed Laboratories, B-298931, Dec. 20, 2006, 2007 CPD ¶ 4 ("In making set-aside decisions, agencies need not make either actual determinations of responsibility or decisions tantamount to determinations of responsibility . . . rather, they need only make an informed business judgment that there is a reasonable expectation of receiving acceptably priced offers from small business concerns that are capable of performing the contract." (citation omitted)).

In the instant situation, USSOCOM acted appropriately in considering multiple sources of information that caused USSOCOM to conclude that it was not likely to receive offers from at

least two small businesses with the capabilities to perform the contract requirements. As previously indicated in the Agency Report and in its comments submitted on October 9, 2007, USSOCOM considered information from a variety of sources regarding small business capability to meet the BALCS body armor requirements in the 0011 Solicitation.

USSOCOM consulted and coordinated with the USSOCOM Office of Small Business Program (OSBP) representatives who are familiar with the small business body armor industry as well as the requirements that are unique to the body armor products procured for Special Operations Forces. (October 9, 2007 declaration of Karen Pera) The OSBP representative, based on her experience over the past eight years, and regular contact with the body armor industry, determined that there were not two small businesses capable of providing a product that met the requirements of the 0011 Solicitation. The OSBP representative acknowledged in her declaration that USSOCOM procured its first ballistic armor as a small business set-aside. However, that initial procurement occurred in 1998 and the ballistic performance requirements for body armor, as exemplified by the requirement for shatter gap testing, and the amount of ballistic test data required in the 0011 Solicitation, have become more technically complex over the years and therefore, the set-aside of the 1998 initial body armor procurement should not be given much weight in determining whether the 0011 Solicitation issued in 2007 should be set aside for small businesses.

USSOCOM also considered the results of the recent 0023 Solicitation in reaching its determination not to set aside the 0011 Solicitation for small businesses. USSOCOM incorporates the arguments made in its Agency Report legal memorandum regarding this particular issue, and will not repeat those argument herein. However, USSOCOM notes that,

unlike the contracting officer in USA Fabrics, Inc., B-295737.2, Apr. 19, 2005, 2005 CPD ¶ 82,[1] a case cited by the SBA in its comments, the USSOCOM contracting officer did not rely only on the results of the prior 0023 Solicitation in reaching her set-aside decision.

In addition, although the SBA states that "[t]he fact that three SBCs submitted offers under USSOCOM's full and open RFP actually supports a determination that the subsequent procurement should be set aside for SBCs, since the contracting officer should have reasonably expected to receive offers from at least the same three SBC competitors under a less restrictive solicitation," it is unclear how SBA determined that the 0011 Solicitation was less restrictive. In particular, considering the 0011 Solicitation included the shatter gap requirement which, as the Protester asserts in its GAO protest, "is not found in any other DOD body armor solicitation or contract," the ballistic performance requirements in the 0011 Solicitation were not relaxed or made "less restrictive."

The SBA asserts that "a contracting officer's obligation to consider information concerning the propriety of a small business set-aside may continue up until the time of offer or beyond." Although USSOCOM coordinated its decision to use full and open competition for the 001 Solicitation with the OSBP representative on January 30, 2007, as Mr. Elder indicated in his declaration submitted on October 9, 2007, USSOCOM representatives continued to conduct a form of market research through its contacts with small businesses during the Industry Day Conference held in March 2007, and through trade shows and online research. In particular, Mr. Elder, the Assistant Program Manager in support of the Program Manager for Special Operations Forces (SOF) Survival Systems stated as follows:

---

[1] GAO found that "the only market research performed by the contracting officer was a review of one prior FPI procurement." Id.

> Small business market research has been conducted at tradeshows such as The Shotshow, Surefire Antiterrorism Conference, AUSA, American Ceramics Society (ACERS), NDIA Small Arms, etc., as well as online. From the previous solicitation market research, Industry Day market research, online market research, tradeshow market research, and job experience, I am currently unaware of any small business that can meet the USSOCOM body armor requirement. No small business has submitted any data to show that they can satisfy all the necessary requirements to justify a contract award. While small businesses have successfully met the requirements for other services, it is unknown whether small businesses can meet the body armor requirements of USSOCOM. The USSOCOM overall requirements are significantly different in the area of weight, thickness, and ballistics from other services.

The instant situation involves a procurement for body armor for SOF forces. As Mr. Elder explained, the body armor requirements for SOF forces "are significantly different in the area of weight, thickness, and ballistics from other services." The SBA states that "[t]he fact is, if other buyers in the marketplace do not require body armor plates that meet USSOCOM's specifications, then no concern is going to spend the time and resources developing the ability to manufacture the item without a solicitation and an opportunity to compete." However, although the final 0011 Solicitation may not have been available at the Industry Day conference, a draft solicitation had been issued and the Industry Day PowerPoint slides (AR, tab 8) indicate that much of the 0011 Solicitation requirements were disclosed to the participants during the discussions with industry. Accordingly, when USSOCOM representatives continued to conduct their market research during the Industry Day discussions, the information obtained from the small businesses was, in fact, relevant to the determination of whether offers would be received from at least two small businesses that had the capability to perform the 0011 Solicitation requirements.

GAO has upheld agency decisions not to set aside procurements for small businesses where the agency determined that, although a small business might be generally responsible and

capable in the field, it lacked experience with a particular variant of a product. See Belleville Shoe Manufacturing Company, et. al., B-287237; B-287237.2; B-287237.3, May 17, 2001, 2001 CPD ¶ 87 (where GAO denied protester's challenge of agency's determination not to totally set aside a requirement involving boots (which differed from other combat boots used by the services) for small business) and Information Ventures, Inc., B-279924, Aug. 7, 1988, 1998 U.S. Comp. Gen. LEXIS 273 (where GAO denied a protest that RFP should have been set aside for exclusive small business participation in which the contracting officer had conducted market research that led her to conclude that the type of "technical scientific expertise" required under the solicitation was "very different' from skills required to operate various other government hotlines and that there were not two small business "that are technically qualified to do the work required.").

In the instant situation, USSOCOM considered multiple sources of information as part of its market research which led the Contracting Officer and the OSBP representative to conclude that it was not likely that USSOCOM would receive offers from at least two small businesses with the capabilities of meeting the unique requirements for SOF body armor under the 0011 Solicitation. Accordingly, the Contracting Officer acted reasonably and did not abuse her discretion in deciding to use full and open competition for the 0011 Solicitation. ViroMed Laboratories, B-298931, Dec. 20, 2006, 2007 CPD ¶ 4 ("Because a decision whether to set aside a procurement is a matter of business judgment within the contracting officer's discretion, [GAO's] review generally is limited to ascertaining whether that official abused his or her discretion.")

USSOCOM acknowledges that GAO will accord substantial weight to the fact that the contracting officer's determination has been reviewed by the SBA and found not to be reasonable. Nevertheless, because USSOCOM has complied with the "rule of two" as set forth above and in the Agency Report and in USSOCOM's comments of October 9, 2007, USSOCOM respectfully requests that GAO deny this ground of TPG's protest.

Sincerely,

Christine M. Choi

Christine M. Choi
Trial Attorney
Contract and Fiscal Law Division

Enclosures

Copies Furnished (w/encl):

Protester:
Richard Moorhouse, Esq.
Greenberg Traurig, LLP
1750 Tysons Boulevard, Suite 1200
McLean, VA 22102
Telephone: 703-749-1300
Facsimile: 703-749-1301

Small Business Administration
Kenneth W. Dodds, Esq.
Telephone: 202-619-1766
Facsimile: 202-481-2950

Copies furnished (w/out encl):

Installation Attorney:
OSJA
HQ, U.S. Special Operations Command
ATTN: SOJA-AQ (Christopher Kernan, Esq.)
7701 Tampa Point Blvd.
MacDill AFB, FL 33621-5323
Telephone: 813-826-6695

Facsimile: 813-826-7504/3629

Directorate of Contracting
U.S. Special Operations Command
ATTN: SOAL-K (C. Denise Green-Huneke)
7701 Tampa Point Blvd.
MacDill AFB, FL 33621-5323
Telephone: 831-826-4767
Facsimile: 831-826-7504

# B-310018, The Protective Group, Inc., November 13, 2007

Decision

**Matter of:** The Protective Group, Inc.

**File:** B-310018

**Date:** November 13, 2007

Richard L. Moorhouse, Esq., John G. Stafford, Esq., David T. Hickey, Esq., and Sean M. Connolly, Esq., Greenberg Traurig, LLP, for the protester.

Christine M. Choi, Esq., Department of the Army, and John W. Klein, Esq., and Kenneth Dodds, Esq., Small Business Administration, for the agencies.

Peter D. Verchinski, Esq., and John M. Melody, Esq., Office of the General Counsel, GAO, participated in the preparation of the decision.

DIGEST

Agency determination not to set aside body armor procurement for small businesses was proper where record shows agency was familiar with body armor marketplace, and responses from firms participating in "industry day" conference with agency demonstrated that it was not likely to receive proposals from at least two responsible small businesses capable of meeting the unique requirements of the solicitation.

DECISION

The Protective Group, Inc. (TPG) protests the terms of request for proposals (RFP) No. H92222-07-R-0011, issued by the United States Special Operations Command (USSOCOM), for body armor plates for individuals in the special operations forces (SOF). TPG primarily contends that the requirements should be set aside for small business concerns.

We deny the protest.

The body armor being procured here is part of the SOF Personnel Equipment Advanced Requirements (SPEAR) body armor system, a family of integrated body armor and load carriage systems (BALCS) consisting of advanced clothing components and equipment that are tailored to different special operations uses. An important component of this system is the ballistic armor plates, which are specifically designed to stop certain munitions, and

which consist of different sizes, shapes, and plate technologies.

USSOCOM first began procuring ballistic plates to meet the SPEAR requirements in 1998, when it awarded a contract to Ceradyne, Inc., which was a small business at the time. Agency Report (AR), Tab 13, at 3; Tab 19, at 2. In August 2006, the agency issued an unrestricted solicitation for these items, which included detailed ballistic plate specifications, designed to reduce the weight of the body armor while increasing ballistic protection. AR, Tab 2, Legal Memorandum, at 3; AR, Tab 13, at 5. The agency received four proposals--three from small businesses, and one from the incumbent, Ceradyne, which no longer qualified as a small business. One of the proposals was not evaluated because it was incomplete, and the three remaining proposals were found technically unacceptable for failing to meet certain "go/no go" criteria. USSOCOM canceled the solicitation on January 11, 2007. AR, Tab 1, Contracting Officer's Statement, at 1.

On February 9, the agency issued a pre-solicitation notice stating that a new solicitation for the requirement would be released shortly, and that USSOCOM would be holding an open "industry day" conference, during which

> [i]ndividuals cleared at the Secret level will have the opportunity to provide information at that classification during one-on-one meetings about the status of ongoing ballistic technologies that are manufacturable for the upcoming solicitation. During this industry day, potential offerors will have the opportunity to comment on the requirements of the solicitation, and provide perspective on the technologies they have available to meet the requirement.

AR, Tab 7. The notice further provided offerors a detailed explanation of the technical specifications for the ballistic plates. Id.

Nine firms attended the industry day conference. On the morning of the first day of the conference, all firms received a briefing regarding the details of the competition, including configuration and technical specifications for the plates. Firms were then given an opportunity to ask questions in an open forum, and eight of the firms--including the protester and four other small businesses--then participated in individual one-on-one meetings. Thereafter, on May 9, USSOCOM issued the RFP. TPG filed this protest with our Office prior to the August 7 closing time.

TPG maintains that the agency improperly failed to set aside this procurement for small businesses. In this regard, agencies generally are required to set aside for small businesses all procurements exceeding $100,000 if there is a reasonable expectation of receiving fair market price offers from at least two responsible small business concerns. Federal Acquisition Regulation (FAR) sect. 19.502-2(b). TPG asserts that, in addition to itself, at least one of its small business competitors is capable of competing, and that a set-aside therefore was required.

An agency must undertake reasonable efforts to ascertain whether it is likely that it will receive offers from at least two responsible small businesses capable of performing the work in question. Rochester Optical Mfg. Co., B-292247, B-292247.2, Aug. 6, 2003, 2003 CPD para. 138 at 4. No particular method of assessing the availability of capable small businesses is required; rather, the assessment must be based on sufficient facts so as to establish its reasonableness. Id. at 5.

USSOCOM's decision not to set this procurement aside was unobjectionable because the record shows that it reasonably determined that it was not likely to receive offers from two

capable small businesses. As an initial matter, the record shows that USSOCOM is highly familiar with the body armor industry. It has been procuring ballistic plates for the last 8 years, during which time it has worked with industry to modify the plate designs to increase their ballistic capabilities. AR, Tab 2, Legal Memorandum, at 2. Further, USSOCOM's small business advisor--who concurred with the agency's decision not to set the requirement aside--has been attending trade shows and small business innovation research events for the last 10 years. USSOCOM Letter to GAO, Oct. 9, 2007, Declaration of Karen L. Pera, at 1.

The principal basis for the agency's determination was the information obtained through the industry day meetings with prospective offerors prior to the release of the solicitation. As noted, the agency met with five small businesses--including all three of the small business offerors under the first solicitation--in one-on-one sessions and specifically discussed with them their ability to meet the current requirement. In this regard, the agency asserts, and the protester does not dispute, that the required ballistic plates are "completely distinct from any other standard product in the marketplace," USSOCOM Letter to GAO, Oct. 9, 2007, Contracting Officer's Statement, at 1, and are significantly more difficult to produce than other body armor plates--including the "small arms protective inserts" and "enhanced small arms protective inserts" manufactured by the protester and the other small businesses that attended the industry day conference--which do not meet USSOCOM standards for weight, thickness, and ballistic requirements. USSOCOM Letter to GAO, Oct. 9, 2007, Declaration of Richard W. Elder, at 1-4.

The agency asserts--and TPG does not dispute--that none of the small businesses, including the protester and the firm the protester identified as a second likely competitor for the requirement, provided any information during the industry day conference showing that they could or intended to try to meet the government's requirements for this procurement. TPG now asserts that it is has the desire and capability to supply the ballistic plates. However, notwithstanding its current stated intent, again, TPG does not dispute that it failed to furnish the agency any information during the industry day meetings that demonstrated its intent and capability to compete. Since there likewise is nothing in the record refuting the agency's determination that no other small businesses were viable prospective offerors for the requirement, we find the agency reasonably determined that it would not receive two offers from capable small businesses. See Belleville Shoe Mfg. Co. et al., B-287237 et al., May 17, 2001, 2001 CPD para. 87 (set-aside not required where record supports finding that firm had never produced boots of the type and quantity required under the solicitation); MCS Mgmt., Inc., B-285813, B-285882, Oct. 11, 2000, 2000 CPD para. 187 (set-aside not required where there is no indication that small business concerns could perform food service contracts of the scope and complexity required under the solicitation).

The protester maintains that the fact that the agency received three offers from small businesses under the first solicitation was sufficient to establish a reasonable expectation that two small business offers would be received under the current solicitation.[1] TPG goes on to argue, essentially, that the agency's determination of small business firms' capability went beyond FAR sect. 19.502-2(b), which only requires that a small business be "responsible"--which the protester characterizes as having "sufficient technical and financial capabilities and resources to successfully perform the contract," see FAR sect. 9.104-1--in order to be considered a prospective offeror for purposes of a set-aside determination. TPG Letter to GAO, Oct. 10, 2007, at 4.

We do not agree that the agency's actions were improper. In making a set-aside decision, an agency need not make either an actual determination of responsibility or a decision tantamount to a determination of responsibility; however, an agency must make an informed business judgment that there is a reasonable expectation of receiving acceptably priced

offers from two small business concerns that are capable of performing the contract. ViroMed Labs., B-298931, Dec. 20, 2006, 2006 CPD para. 4 at 3-4; Information Ventures, Inc., B-279924, Aug. 7, 1998, 98-2 CPD para. 37 at 3 (in determining the availability of responsible small business concerns for set-aside purposes, the contracting agency's investigation goes not only to the existence of the businesses, but also to their capability to perform the contract). The considerations relevant to this judgment may be similar to responsibility standards. Railroad Constr. Co., Inc., B-249748.3, Dec. 29, 1992, 92-2 CPD para. 446 at 5. In the final analysis, the set-aside decision necessarily entails consideration of whether small businesses can be expected to perform satisfactorily; if the agency reasonably determines that they cannot, a set-aside is not warranted. The agency here determined that, while the protester and other small concerns were in the business of manufacturing body armor, none was capable of furnishing body armor meeting the agency's unique requirements here, and a set-aside therefore was not warranted. We find nothing in the agency's actions or determination that was unreasonable or otherwise improper.

The protester also maintains that there is an ambiguity in the solicitation that should be clarified by incorporating a question and answer generated during the procurement process.[2] We find no ambiguity. Prior to the submission of proposals, a questioner asked whether proposals were only required to include "high-level" approaches for first article testing (FAT) plans, the SPEAR unique quality assurance plan, and the production ballistic lot test (BLT) plan. The agency responded that proposals were to include a formal, complete quality assurance plan and a thorough discussion of the FAT and BLT plans. AR, Tab 15. The information in the agency's response was essentially the same as the information in the solicitation. Specifically, the solicitation states in the "Requirements Matrix" that "the proposal shall thoroughly discuss the offeror's plan for conducting first article testing"; that the contractor "establish, maintain and submit with their proposal a SPEAR Unique Quality Assurance Plan," with the government evaluating "the extent to which the plan is thorough and detailed"; and that the government will "evaluate the extent to which the proposal thoroughly discusses the offeror's Ballistic Lot Test Plan." AR, Tab 12, RFP attach. 2, at 3, 4. Accordingly, this argument is without merit.[3]

The protest is denied.

Gary L. Kepplinger
General Counsel

---

[1] In comments provided in response a request by our Office, the Small Business Administration (SBA) likewise asserts that the small business offers in response to the original solicitation, together with the attendance of five small businesses at the industry day conference, reasonably indicated that offers from at least two responsible small businesses would be received. SBA Comments, Oct. 15, 2007, at 2-3. For the reasons discussed, we disagree with SBA's position.

[2] TPG asserts that it was told at the industry day conference that it would be required to have a separate production facility for the ballistic plates, and that the agency's failure to incorporate this requirement into the solicitation creates an ambiguity. However, oral advice does not operate to amend a solicitation or otherwise legally bind the agency, Shaw Envt'l, Inc., B-297294, Dec. 2, 2005, 2005 CPD para. 218 at 5, and thus does not provide a basis for finding a solicitation ambiguity.

[3] In its protest, TPG also asserted that certain testing requirements and the number of plates required to be submitted with a proposal for testing purposes were unduly restrictive. The agency responded to these assertions in its report, and TPG did not rebut the agency's position in its comments on the report. In these circumstances, we consider these arguments to be abandoned. Planning Sys., Inc., B-292312, July 29, 2003, 2004 CPD para. 83 at 6.

Home About GAO Contact GAO Privacy & Other Site Policies FOIA Site Map E-mail Updates Help

*Accountability Integrity Reliability*