**IN THE UNITED STATES**
**COURT OF FEDERAL CLAIMS**

**BID PROTEST**

| | |
|---|---|
| **THE PROTECTIVE GROUP, INC.** | |
| **Plaintiff,** | |
| **v.** | **Case No. 07-806C** **(Judge Wheeler)** |
| **THE UNITED STATES OF AMERICA** | **Filed Electronically On: November 28, 2007** |
| **Defendant.** | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S RULE 12 (b) (1) MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

Plaintiff, The Protective Group ("TPG"), respectfully files this response to the Defendant's Rule 12 (b) (1) motion to dismiss Plaintiff's bid protest for lack of subject matter jurisdiction as filed by Defendant on November 26, 2007. For purposes of this response, TPG accepts the Statement of the Issue and the Statement of the Case as framed by the Defendant on pages 1-2 of its motion. TPG also accepts the Standard of Review articulated by Defendant on Page 3 of its motion. However, TPG rejects the balance of Defendant's argument that the Court lacks the requisite subject matter jurisdiction to entertain TPG's challenge to the Defendant's failure to set aside Solicitation No. H92222-07-R-0011 in whole or in part for small business competition. The principal cases cited by Defendant in its motion are inapposite to the factual circumstances in the instant matter.

## I. ARGUMENT

Seemingly, Rex Service Corp. v. United States, 448 F.3d 1305 (Fed. Cir. 2006) and McRae Industries, Inc., v. United States, 53 Fed. Cl. 177 (2002) support Defendant's argument that the Court here lacks subject matter jurisdiction because, as was the case with the plaintiffs in those two cases, TPG also did not submit a proposal in the challenged solicitation. However, Rex and McRae are readily distinguishable as to one material fact because they both involved post-award protest actions. In Rex, the plaintiff filed its action with the Court in March, 2005, more than a month after a contract had been awarded in February, 2005, although plaintiff there had filed an earlier agency-level protest on the day before bidding closed the previous November. The agency-level protest was denied in January, 2005. Id., at 1307. In McRae, awards were made in April, 2001. The plaintiff filed a GAO protest in May, 2001, subsequently denied in July, 2001, and then filed its injunctive action with this Court in August, 2001. Id., at 180.

However, TPG's present action filed with the Court on November 19, 2007, is pre-award in nature. Indeed, at the November 20, 2007 TRO hearing, Defendant's counsel represented, as the key thrust of his argument why a TRO was not necessary, that the Defendant did not intend to make any award(s) under the subject Solicitation prior to December 31, 2007. Thus, unlike the Rex plaintiff, TPG in fact filed a "timely" pre-award bid protest with the Court which allows the Court a sufficient opportunity to hear and decide the case on the merits before any award(s) are made, precluding a situation where contracts are already in place which might have to be undone, or performance thereunder suspended or terminated, in light of that decision. Rex, supra, at 1308.

In McRae, the Court clearly based its jurisdictional analysis on the application of 28 U.S.C. § 1491 (b) (1), the statute which, as the Court expressly noted, gives the Court jurisdiction "to entertain objections to a contract after the contract has been awarded..." McRae, supra, at 181. The McRae plaintiff was objecting to two awards made to competitors. The Court held that because the plaintiff had not submitted a bid in the solicitation which resulted in the challenged awards, it was not an "actual" bidder within the meaning of the Competition in Contracting Act, 31 U.S.C. 3555 (2) (1994 & Supp. 1999) ("CICA"), McRae, supra, at 181, nor a "prospective" bidder within the same statutory meaning as well because, given the post-award nature of the action, the plaintiff could not claim that it was "*expecting*" to submit an offer prior to the solicitation's closing date. Id. (emphasis original), citing MCI Telecomm. Corp. v. United States, 828 F.2d 362 (Fed. Cir. 1989).

During oral argument on November 20, TPG through counsel stated that it would certainly submit an offer if the subject Solicitation were reopened and set aside at least in part for small business competition. Thus, within the holding of both McRae and Rex, TPG by that representation meets the "expecting to bid" test. In that regard as well, TPG argues that since it filed a pre-award action with the Court, its "prospective" bidder status should remain intact until the Court decides on the merits whether the Defendant must set aside at least a portion of the challenged procurement.

TPG also notes as a distinguishing feature from Rex and McRae that its first challenge to the Defendant's decision not to set aside the procurement was made in an August 2, 2007 letter to the agency, in which it formally raised objections to the terms of the solicitation and the failure to set it aside for small business competition, but also

expressly stated that it "intends to bid on the solicitation and submitted our notice of intent to submit a BALCS proposal, as required by the RFP" if the agency took immediate corrective action. Administrative Record ("AR"), at 272-274. When the agency ignored TPG's request for corrective action, TPG filed its agency-level protest on August 6, 2007, the day prior to the closing date for the subject Solicitation. AR, 275-284. Nothing in either Rex or McRae indicates that the plaintiffs there had made a similar such statement to the affected agency. In fact, the Rex decision leaves open the question whether "an ***agency*** protest filed before the end of the solicitation period, that establishes that the party expected to bid, but was prevented from doing so by improper agency action, may…secure prospective party status for a subsequent bid protest action." Rex, supra, at 1308, note (emphasis original). TPG respectfully suggests that the Federal Circuit's question is ripe for an affirmative finding in the instant matter. TPG notes that this Court had the opportunity, but did not address that question directly, in the recent case of Shirlington Limousine & Transportation, Inc. v. United States, 78 Fed. Cl. 27 (2007) ("Shirlington II"); see also Shirlington Limousine & Transportation, Inc. v. United States, 77 Fed. Cl. 157 (2007) ("Shirlington I").

In addition, TPG urges that CICA cannot be read as requiring a prospective bidder or offeror to submit a bid or offer unless it can show that the complained-of agency action absolutely "prevented" it from doing so. Rex, supra, at 1308; McRae, supra, at 182, citing ATA Defense Industries, Inc. v. United States, 38 Fed. Cl. 489 (1997). No case clearly defines what actions an agency may take in crafting a solicitation or in conduction a procurement that are so improper as to "prevent" the submission of a bid or offer. If the analysis is continued to be applied this restrictively, and TPG recognizes that the Court

has done so in recent cases such as Shirlington II, this means that the only plaintiffs that possibly could decline to submit a bid or offer and still have standing before this Court to challenge the terms of the solicitation in question are those in which their business status would cause the immediate rejection or disqualification of their bids or offers, such as a non-disadvantaged business attempting to compete in a procurement exclusively reserved for small disadvantaged business competition, the fundamental reverse of the issue here.

In other words, a large business concern challenging an agency's decision to conduct a set aside would have, axiomatically, greater rights before this Court than a small business concern challenging an agency's decision not to conduct a set aside. Since the same legal question is in both present cases -- whether the agency has properly determined the potential presence of small business competition -- this would result in decisional authority addressing only the former situation and disparate precedent on the same legal question.

Moreover, in Shirlington II, the plaintiff challenged the government's decision not to set-aside the procurement for competition by "HUBZone" small business concerns, but apparently did not allege that this failure prevented it from submitting a bid. Id. In contrast here, TPG early on raised numerous issues with the agency besides the set-aside matter now before the Court, asserting that various testing requirements and unresolved ambiguities in the subject Solicitation required immediate corrective action "in order for us to continue our participation in this important program." AR, at 272. These alleged defects, combined with the fact that, as argued during the TRO hearing, TPG could not economically compete against the incumbent large business concern which may had relevant test data not available to TPG, drove TPG's decision not to submit what would

have been a futile proposal. On these facts, Shirlington II and the Court's other decisions holding that a plaintiff must submit a bid or offer to gain "interested party" standing should be distinguishable. TPG respectfully asserts that, as referenced by the Court in Rex, supra, at 1308, note, TPG in fact does meet the test of MCI Telecomm. Corp. v. United States, supra, to show that the challenged agency action prevented it from submitting the bid or offer it had expected -- and, here, told the agency it had expected -- to bid.

To hold otherwise in the instant matter would create an undue narrowing of the Court's jurisdiction and would compel any bidder or offeror materially dissatisfied with the terms of a solicitation to both submit a proposal in a procurement where it believes it has little or no chance of winning because of perceived defects and deficiencies, and likely waste its resources as a result, and then protest those issues to this Court, and nowhere else, prior to the solicitation closing date. This would remove any opportunity to resolve the solicitation issues at the agency level without the need for more extensive litigation. The Federal Acquisition Regulation ("FAR") clearly contemplates the agency-level protest as an effective vehicle to challenge the terms of allegedly defective solicitations. FAR § 33.103. At all times here, at the agency level, before GAO, and before this Court, every action brought by TPG has been preaward in nature, and TPG will actively compete under the subject Solicitation if amended to allow at least a partial small business set aside. TPG notes as well that a similar policy argument was raised by the plaintiff in Shirlington II. It was not expressly repudiated by the Court, although the Court denied the plaintiff's attempt to reargue Shirlington I in the form of a partial motion for reconsideration.

## II. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendant's motion to dismiss this action for lack of subject matter jurisdiction and proceed to schedule this case to be heard on the merits.

Dated: November 28, 2007

Respectfully submitted,

/s/Richard L. Moorhouse
Richard L. Moorhouse
GREENBERG TRAURIG, LLP
1750 Tysons Blvd.
Suite 1200
McLean, VA 22101
Tel.: (703)749-1311
Fax: (703)714-8308

OF COUNSEL:

John G. Stafford
David Hickey
Sean M. Connolly

**CERTIFICATE OF SERVICE**

I hereby certify that on November 28, 2007, Plaintiff's Response To Defendant's Rule 12 (b) (1) Motion To Dismiss For Lack Of Subject Matter Jurisdiction, was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

Timothy McIlmail
Department of Justice
Commercial Litigation Branch
Civil Division
8th Floor
1100 L Street, Northwest
Washington, D.C. 20530
Tel.: (202) 616-0342
Fax.: (202) 514-7965

/s/ Richard L. Moorhouse